1  JOSEPH P. RUSSONIELLO
   United States Attorney
2  THOMAS MOORE
   Chief, Tax Division
3  THOMAS NEWMAN  (NYSBN 4256178)
   Assistant United States Attorney
4   9th Floor Federal Building
    450 Golden Gate Avenue, Box 36055
5   San Francisco, California 94102
    Telephone:   (415) 436-6805
6   Fax:          (415) 436-6748

7  Attorneys for the United States of America

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  UNITED STATES OF AMERICA,            )    No. CR 08-222-WHA
                                         )
13          Plaintiff,                   )    UNITED STATES' OPPOSITION TO
                                         )    DEFENDANT'S SECOND MOTION TO
14      v.                               )    WITHDRAW GUILTY PLEA
                                         )
15  LUKE D. BRUGNARA,                    )    Date:   April 27, 2010
                                         )    Time:  2:00 p.m.
16          Defendant.                   )
    _____  )

17

18

19

20

21

22

23

24

25

26

27

28  *U.S.' Opposition to Motion to*
    *Withdraw Guilty Plea*
    *CR-08-222-WHA*

TABLE OF CONTENTS

I.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Defendant's Tax Returns are Knowingly False. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Plea Agreement and Plea Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  Defendant's Competency Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.  Defendant Lacks a Fair and Just Reason to Withdraw His Guilty Pleas. . . . . . . . . . . . . 7

        1.  Defendant's Current Claims are Contradicted By His Statements
           At the Time He Entered His Guilty Pleas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.  The United States Would Be Prejudiced if Defendant Were
           Allowed to Withdraw His Guilty Pleas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.  Should the Court Be Unwilling to Deny Defendant's Motion on the Papers,
       the United States Requests an Evidentiary Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

TABLE OF AUTHORITIES

2

FEDERAL CASES

3

4

United States v. Castello, 724 F.2d 813, 814 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

5

United States v. Davis, 428 F.3d 802 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

6

United States v. Garcia, 401 F.3d 1008 (9th 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7

United States v. Hyde, 520 U.S. 670 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8

United States v. McTiernan, 546 F.3d 1160, 1167 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . 11

9

United States v. Nostratis, 321 F.3d 1206 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

10

United States v. Ortega-Ascanio, 376 F.3d 879, 883 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 7

11

United States v. Paiz, 2007 WL 4171204 (N.D. Cal. November 27, 2007) . . . . . . . . . . . . . . . 12

12

United States v. Ramos, 923 F.2d 1346, 1359 (9th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . 12

13

United States v. Rios-Ortiz, 830 F.2d 1067 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

14

United States v. Ross, 511 F.3d 1233 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

FEDERAL RULES

15

Fed. R. Crim. P. 11(d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

16

17

18

19

20

21

22

23

24

25

26

27

28

1    On May 15, 2009, Defendant Brugnara pled guilty to Count One of a three-count
2    Indictment for filing false tax returns for 2000 - 2002, respectively, in violation of 26 U.S.C. §
3    7206(1).  The Defendant's guilty plea was subsequently vacated.  On January 26, 2010, the
4    defendant pled guilty to Counts One through Three of the Superseding Indictment for filing false
5    tax returns for 2000 - 2002, inclusive, in violation of 26 U.S.C. § 7206(1).

6    At both plea colloquies, while under oath and before this Court, defendant stated that he
7    was guilty as a matter of fact and law; that he was not pleading guilty because he was being
8    threatened; that he was satisfied with his lawyer's representation; and that he voluntarily wished
9    to waive his right to a trial.  During the plea colloquies, the Court reminded Defendant that he
10   was agreeing, among other things, not to ask to withdraw his guilty pleas, and defendant
11   affirmed in open court that he understood.  At the second plea colloquy, the Court stated it would
12   not let the defendant out of this plea and the defendant testified that he understood and agreed to
13   proceed.

14   Less than two weeks after both pleas, Defendant changed his mind in all respects.
15   Despite having testified he understood he was bound by his plea, he now asks to withdraw from
16   it.  Despite having twice voluntarily waived his right to trial, he now asks to have his plea
17   withdrawn in an attempt to renegotiate some better "settlement."  Despite his assurance of
18   satisfaction with his former lawyers and despite his pledge that he was not pleading guilty due to
19   any threat, the Defendant now claims that his former lawyer failed him.  Despite having assured
20   the Court under oath that he was guilty as a matter of fact and law, Defendant now claims that he
21   pleaded guilty on a whim and seeks to change the "terms" of his unconditional plea.  In the
22   instant motion, the Defendant makes no mention of a desire to proceed to trial.  Rather, the
23   evidence, and his statements, support the conclusion he regrets his decision and just wishes to
24   work out a more favorable disposition.

25   The Defendant is vexatiously gaming the judicial system – he is temporizing.  That is not
26   a basis to withdraw his plea even once.  The United States respectfully asks the Court to reject
27   the Defendant's second eleventh-hour effort to withdraw his guilty pleas because he has failed to

28
*U.S.' Opposition to Motion to*
*Withdraw Guilty Plea*
*CR-08-222-WHA*                           -1-

1   present a fair and just reason for withdrawing his pleas.  Defendant is engaging in dilatory tactics

2   to put off trial so that he can pursue pointless attempts to "settle" his case.  The Defendant's

3   change-of-heart does not constitute a fair and just reason for withdrawing a knowing and

4   voluntary guilty plea.

5         The evidentiary record is sufficient for the Court to deny Defendant's motion.  It is not

6   sufficiently developed to support granting Defendant's motion, principally because of the

7   numerous conflicts between Defendant's current claims and the statements and assurances he

8   presented under oath at his change-of-plea hearing.  Accordingly, if the Court is not prepared to

9   deny Defendant's motion on the papers, the United States respectfully requests an evidentiary

10  hearing, for several reasons.  First, there is a contemporaneous record of the call the Defendant

11  made before and after he pleaded guilty.  In those calls he spells out he was "happy," understood

12  what he was doing, and that he could not withdraw.  Should the Court find any merit to

13  Defendant's claims, those calls should be heard to dispel any doubts about Defendant's

14  competence.  Second, in his own words, the Defendant has attempted to "settle" this case, while

15  he was in custody and out of custody repeatedly since pleading guilty.  Revisiting the

16  Defendant's guilt for the sole purpose of bettering his status is nothing more than an attempt to

17  game the system.

18                          **I.  FACTS**

19        A.      <u>Defendant's Tax Returns Are Knowingly False.</u>

20        On April 3, 2008, a three-count Indictment was filed alleging, *inter alia*, that Defendant

21  acquired, leased, and sold various commercial buildings in 2000 - 2002, but failed to accurately

22  report his income in violation of 26 U.S.C. § 7206(1).  (<u>Indictment</u> at pp. 2-7).  On January 12,

23  2010, a Superseding Indictment was filed with the same false tax return charges and an

24  additional count alleging the Defendant obstructed the due administration of the IRS in violation

25  of 26 U.S.C. § 7212(a).  (Dkt. No. 68).  Each Count in the Superseding Indictment alleges that

26  the Defendant failed to report the sale, exchange, or disposition of various properties.  <u>Id</u>.

27        On May 15, 2009, the Defendant pleaded guilty to willfully signing a 2000 tax return that

28  *U.S.' Opposition to Motion to*
    *Withdraw Guilty Plea*
    *CR-08-222-WHA*         -2-

was false as to a material matter.  (<u>Plea</u> ¶ 2; Tr. 31).[1]  On that date, the Defendant was placed

under oath and warned that "you have to tell the truth" because "if you don't tell the truth you

can be prosecuted for perjury."  Following the warning, the Court asked "do you understand?",

and the Defendant replied "Yes." (Tr. 7:16-25).  The Defendant then testified he was "thinking

clearly" and that he understood the plea agreement presented by the parties.  (Tr. 9:11-13; 10:16-

25).  During the plea colloquy, the Defendant re-affirmed that "I'm doing this plea with full,

sound mind... That's the honest to God – I'm here under penalty of perjury.  I'm being honest

with you, your Honor."  (Tr. 11:14-18).

Next, the Court advised the Defendant of the elements of a violation of 26 U.S.C. §

7206(1).  Specifically, that the Defendant: (1) subscribed to a tax return containing false

information, (2) knew the information was false, (3) signed the return under penalties of perjury,

and (4) acted willfully.  (Tr. 13:5-25).  In addressing the elements, the Defendant acknowledged

the following was true:

> As part of that investigation, I hired an independent accounting firm to prepare an
> opening cash statement to review my individual income tax returns for 1993-1999.  On
> those returns, I attached to the IRS Form 1040 a copy of a document entitled "Schedule
> E," which I prepared.  On that form, I listed total rental income for all properties, and did
> not specifically account for each individual property that was rented.  After reviewing
> these returns, in March 2001 the accountants I hired prepared a detailed report stated that
> I was required to: (1) to file partnership tax returns even if that entity earned no income,
> (2) file corporate tax returns even if the corporation earned no income, (3) prepare Forms
> Schedule K, (4) file a Form Schedule E with my tax returns, and (5) report the sales of
> any business property I sold during any year, including the Market Street, Post Street,
> and Mission Street properties.

(<u>Plea</u> ¶ 2; Tr. 26:5-15).  Next, the Defendant testified that: (1) he signed his 2000 tax return

under penalties of perjury, (2) the sales of the Market Street and Mission Street properties were

omitted, and (3) the defendant knew he had to report those sales on the 2000 tax return.  (<u>Plea</u> ¶

2; Tr. 27:1-18).

The Defendant then re-affirmed that he was required to report these sales, that his

---

[1]References to "Tr." are to the transcript of the May 15, 2009 Change of Plea Hearing.
References to "Tr. II" correspond to the June 9, 2009 hearing, and "Tr. III" refers to the January
26, 2010 hearing.

1   statements were "under penalties of perjury," and he then pleaded "guilty." (Plea ¶ 2; Tr. 29:23-

2   25; 31:3).  Thereafter, the Court found the Defendant was competent, and capable of entering an

3   informed plea; that his "plea of guilty [was] knowing and voluntary and supported by an

4   independent basis in fact." (Tr. 31:4-17).  Consistent with that finding, Kenneth Wine, the

5   Defendant's attorney at the time, and Brugnara signed the plea agreement acknowledging the

6   Defendant's plea was "knowing and voluntary." (Plea ¶ 23; p.7).

7          On August 5, 2009, the Defendant moved to withdraw his guilty plea. (Dkt. No. 43).  In

8   the declaration submitted with his motion, the Defendant maintained that the factual statements

9   in the brief were "both true and accurate," which included an assertion that "he understood what

10  he was agreeing to when he entered his guilty plea." (Dkt. No. 43, Br. at 3:2-3).  The Defendant

11  did not assert his innocence. Id.  The guilty plea was vacated on September 2, 2009. (Dkt. No.

12  48).

13         On January 26, 2010, the Defendant pleaded guilty a second time after reading and

14  signing an "Application for Permission to Enter Plea of Guilt" to the first three Counts of the

15  Superseding Indictment. (Dkt. No. 70).  The application contained the affirmation that the

16  Defendant understood his statements made "in open court were under oath and that any false

17  statements may be used against [him] in a prosecution for perjury." Id. at ¶ 19.

18         In addressing the false return charge for 2000 during the Rule 11 plea colloquy, the Court

19  asked the Defendant "tell me what it is you did wrong."  The Defendant confirmed that "the

20  income reported for the Market and Mission Street – the sale of those office buildings was –

21  should have been shown on the 2000 return, and they were shown on the 2002 return." (Tr. III

22  p. 31:12-17).[2]  Next, the government proffered that at trial the evidence would show that the

23  defendant (1) "signed and filed a 2000 federal income tax return under penalties of perjury;" (2)

24  "the return required [the Defendant] to disclose the sale or exchange of the properties located at

25

26         [2]The Defendant went on to say that "They were shown two years later, but they should
27  have been shown in 2000.  So I did that... The sales price on those two.  I don't know.  Twenty
    million dollars." (Tr. III p. 31:12-17).
28

1 ... 810-814 Mission Street," and "935-939 Market Street;" (3) the sales were not "reported on the

2 income tax return;" and (4) the Defendant's accountants asked him for the sales information to

3 include on his tax return. (Tr. III p. 31-33). When asked if this was true, the Defendant only

4 commented that the accountants were engaged to do the "pre-cash statement" and reaffirmed that

5 he prepared his "false" tax return.

6      As proffered, on February 28, 2001, the accounting firm hired by the Defendant

7 requested "Estimated net income or loss for 2000 that will be reported on your tax returns;" and

8 "Estimated net income or loss that you will have in 2001 that will be reported on your tax return,

9 including the sale 490 Post." (Nelson Decl. ¶¶2-4). The Defendant replied by fax on March 1,

10 2001, with estimates of tax owed on the sale of 814 Mission Street and 939 Market. The

11 Defendant provided, a month before his 2000 tax return was due – a year after the properties

12 were sold – that he realized a "$9.6" million gain and owed "$1.92" million in "tax." (Nelson

13 Decl. ¶4).

14      On March 1, 2001, the accountants asked the Defendant how the gains from the sales of

15 814 Mission Street and 939 Market were calculated. (Nelson Decl. ¶¶5-6). On March 3, 2001,

16 the Defendant provided information related to his purchased and estimated sales prices for the

17 two properties. (Nelson Decl. ¶¶5-6). Prior to these communications, the accountants told the

18 Defendant he needed to report the "sale or exchange" of any of these properties. (Nelson Decl.

19 ¶7; Crowther Decl. ¶¶3-4). As he testified, his 2000 return makes no mention of a sale or

20 exchange.

21      As related to Count 2, the Defendant acknowledged it is true that he willfully left the sale

22 of 490 Post off the tax return he signed and filed for 2001. (Tr. III p. 35:16-24). Consistent with

23 the government's proffer, the Defendant was asked about gain he will realize on the sale of 490

24 Post that will be reported on his tax return for 2001. (Nelson Decl. ¶¶3-4). The Defendant

25 reports gain to the accountants but not on his tax return despite estimating $2.5 million tax due.

26 (Nelson Decl. ¶¶3-4). The Defendant acknowledged the same willful omission related to the

27 casino he sold in 2002. (Tr. III p. 36:3-9).

28 *U.S.' Opposition to Motion to*
*Withdraw Guilty Plea*
*CR-08-222-WHA*        -5-

1    After some equivocation on the Defendant's part, the Court "went through it again" and

2    asked "For each of those years, did you willfully and knowingly file a false return?"  The

3    Defendant again admitted, under oath, "The return is false, as it states here.  And I filed it

4    willfully, yes."  Before having the guilty plea entered the Defendant answered affirmatively that

5    he knew the returns were "false when [he] filed it."  (Tr. III p. 39:1-8).

6        B.    Plea Agreement and Plea Application.

7    After being provided with a copy of the plea agreement the Defendant discussed the

8    agreement with Mr. Wine, his attorney at that time.  (Tr. 10:16-25).  In the plea agreement, the

9    Defendant:

10   Explains in detail why he is factually guilty of the charged crime of filing a false federal

11   income tax return for 2000 (Plea ¶ 2);

12   Confirms that he had "adequate time to discuss this case, the evidence, and this

13   Agreement with my attorney, and that he has provided me with all the legal advice that I

14   requested." (Plea ¶ 21);

15   Confirms that his decision to plead guilty is made with knowledge of "the charges that

16   have been brought against [him and] any possible defenses" available to him and with

17   knowledge of "the benefits and possible detriments of proceeding to trial" (Plea ¶ 23);

18   Confirms that "my decision to plea guilty is made voluntarily, and no one coerced or

19   threatened me to enter into this Agreement" (Plea ¶ 23); and

20   Mr. Wine, who had been representing the Defendant in this matter for more than a year

21   affirmed the Defendant "fully explained to [the Defendant] all the rights that a criminal

22   Defendant has and all the terms of this Agreement" and "based on the information now known to

23   me, [the Defendant's] decision to plead guilty is knowing and voluntary." (Plea p. 7).

24   On January 26, 2010, Attorney Taback signed a Certificate of Counsel acknowledging

25   that the Defendant understood, *inter alia*: (1) the allegations in the Indictment, (2) understood

26   the rights he was waiving, (3) the contents of the application to plead guilty, and (4) that the

27   Defendant's plea was voluntarily and understandably made.  (Dkt. No. 70, p. 8).

28

1    Around March 19, 2010, the defense repeatedly called the government to discuss a

2    "global resolution" of these cases.  The "global resolution" involved withdrawing this motion in

3    exchange for certain benefits to the Defendant.  On or about March 22, 2010, a similar

4    discussion took place in which the defense offered to withdraw the instant motion in exchange

5    for benefits to the Defendant.  (Newman Decl. ¶¶3-4).

6    C.    Defendant's Competency Status.

7    The parties stipulated to have the Defendant examined to determine his mental

8    competency, and he was examined by David Kessler, M.D.  (Dkt. No. 98).        Dr. Kessler

9    was asked to determine the Defendant's competency on January 26, 2010, when he plead guilty,

10   and his present mental competence.  (Kessler Decl. ¶ 1).  Dr. Kessler spoke with both parties,

11   and reviewed numerous documents, including, among other things: (1) the plea agreement, (2)

12   transcript of the court proceedings on January 26, 2010, (3) taped phone calls of the Defendant

13   from January 22-28, 2010, (4) Defendant's criminal history, (5) the letter from the Defendant's

14   mother to the Court, (6) transcripts of statements made by the Defendant at a hearing before the

15   Nevada Gaming Commission, and (7) alleged threats made by the Defendant.  (Kessler Decl. ¶

16   3).

17   Dr. Kessler also interviewed the Defendant while he was in custody.  (Kessler Decl. ¶ 3).

18   Following his review of these materials, and after meeting with the Defendant, Dr. Kessler

19   concluded that Mr. Brugnara "currently displays no sign of a mental disorder which would

20   impair his ability to understand the nature and consequences of the legal proceedings;" and "on

21   January 26, 2010, the Defendant was not impaired by any mental disorder from being able to

22   understand the nature of the proceedings and consequences of his decision."  (Kessler Decl. ¶ 4).

23

24                            **II.  ARGUMENT**

25   A.    Defendant Lacks a Fair and Just Reason to Withdraw His Guilty Pleas.

26   Prior to sentencing, a defendant can withdraw his guilty plea if he or she demonstrates a

27   fair and just reason for withdrawal.  Fed. R. Crim. P. 11(d)(2)(B).  "'Fair and just reasons for

28

*U.S.' Opposition to Motion to*
*Withdraw Guilty Plea*
*CR-08-222-WHA*                    -7-

1   withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening

2   circumstances, *or any other reason for withdrawing the plea that did not exist when the*

3   *defendant entered his plea*.'"   United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005) (quoting

4   United States v. Ortega-Ascanio, 376 F.3d 879, 883 (9th Cir. 2004)) (emphasis added in Davis).

5   "[T]he decision to allow withdrawal of a plea is solely within the discretion of the district court."

6   United States v. Nostratis, 321 F.3d 1206, 1208 (9th Cir. 2003).  Here, the Defendant does not

7   contend the Rule 11 colloquy was inadequate, or that he has discovered new evidence.

8       The Defendant contends four other reasons support his withdrawal.  Those are: (1) that

9   he had a conflict with his then attorney, (2) he alleges that he had a mental defect, (3) he violated

10  his release conditions and his subsequent detention warrants release from his pleas so he can

11  self-surrender, and (4) he read, reviewed, and testified regarding the plea application but did not

12  fill it out so it is "void."  The Defendant has the burden of demonstrating it would be fair or just

13  to allow a second withdrawal from his pleas for one of these reasons.  See United States v.

14  Castello, 724 F.2d 813, 814 (9th Cir. 1984).  Defendant's reasons do not support withdrawal as

15  the first two are unproven, and even if the final two allegations were true it would not be fair or

16  just to permit withdrawal based on Defendant's violation of his conditions of supervised release

17  or that the Defendant did not strictly adhere to an application that is not even required.  As

18  addressed below, the Defendant's motion should be denied.

19      As a separate matter, the United States would suffer prejudice if the Court granted

20  defendant's motion due to, among other reasons, another half-year trial delay that would result if

21  defendant were allowed to withdraw his guilty pleas.  Indeed, it appears that the Defendant

22  currently wishes to revisit his plea and does not even seek a trial.

23      1.   Defendant's Current Claims are Contradicted By His Statements At the Time He
             Entered His Guilty Pleas.

24

25      Each of Defendant's current arguments is undermined and contradicted by the written

26  record and by the statements he made at his change-of-plea hearing.  In deciding a motion to

27  withdraw a plea of guilty, "statements made by a defendant during a guilty plea hearing carry a

28  strong presumption of veracity in subsequent proceedings attacking the plea."  United States v.

*U.S.' Opposition to Motion to*
*Withdraw Guilty Plea*
*CR-08-222-WHA*                    -8-

Ross, 511 F.3d 1233, 1236 (9th Cir. 2008).  Defendant asserts four reasons to withdraw this time, nearly all of which are contradicted by his sworn testimony.  None of the Defendant's "reasons" are new.  Most of his "reasons" offered existed when he pleaded guilty and therefore do not support withdrawal.  United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005) (permitting withdrawal for *"any other reason for withdrawing the plea that did not exist when the defendant entered his plea*.").  Each of the Defendant's claims are addressed in turn.

First, the Defendant claims that when the pleas were entered there was a conflict with his then attorney, Harris Taback.  However, Defendant's claim is misguided in several respects.  First, in support of his assertion, the Defendant points to motions to withdraw as counsel that were heard on November 3 and 4, 2009, not when he pled guilty.  His current claims are inconsistent with his November 4, 2009 statements and at the change-of plea hearings.[3] Moreover, this matter was already decided twice.  Judge Chesney denied the motion to withdraw as counsel after finding that "there is not [] a breakdown in the relationship" to warrant relieving Mr. Taback.  (Dkt. No. 104-4, p. 41:24-25).  On November 5, 2009, this Court found an absence of "good cause" or "conflict" between Attorney Taback and the Defendant.  Nothing changed when the cases were set for trial.  On January 22, 2010, Attorney Taback stated that "Mr. Brugnara clearly understands the nature and consequences of this proceeding.  He is also able to and is, in fact, meaningfully participating with me in his defense and, frankly, has come up with some very useful insights and ideas in the past week or two."  (Dkt. No. 104-6, p. 12:1-6).  Consistent with the Defendant's testimony, Attorney Taback's statements confirm there was no breakdown.

In fact, at the plea colloquies in both cases, the Defendant testified that he was satisfied

---

[3]The Defendant stated then that "Harris is a phenomenal attorney I have a lot of respect for him.  I have nothing but good things to say about him."  (Dkt. No. 104-4, p. 21:2-5).  On November 3, 2009, in addressing the conflict issue the Defendant maintained he was "happy with his representation" and he "loved" his attorney.  (Dkt. No. 104-1, p. 10:23). At both hearings, the defendant stated he did not want his attorney to "pull out of the case." (Dkt. No. 104-4, p. 26:18-19).

*U.S.' Opposition to Motion to*
*Withdraw Guilty Plea*
*CR-08-222-WHA*                                    -9-

1    with Mr. Taback's advice and counsel. (Tr. III 11:8-9). The Defendant also signed two

2    applications to plead guilty, which confirmed that his statements were made under oath, stating

3    he was satisfied with the advice he received from his attorney. In his brief, Defendant fails to

4    point to any erroneous advice he received. To withdraw, he must demonstrate some bad advice

5    and show that proper advice "could have at least plausibly motivated a reasonable person in

6    [Defendant's] position not to have pled guilty." United States v. Garcia, 401 F.3d 1008, 1011-12

7    (9th Cir. 2005). He has failed to do so. In fact, Defendant's bald assertions that a conflict

8    existed with his then-counsel is further undermined by his testimony that the guilty plea was the

9    product of his decision-making and his current desire to have the same agreement.[4]

10      Second, Defendant's assertion that he suffered from a "manic" episode is unfounded.[5]

11    There is no evidence to support that assertion. Fed. R. Evid. 1101(d).[6] To the contrary, Dr.

12    Kessler, who the parties stipulated to have examine Mr. Brugnara, concluded that the Defendant

13    "currently displays no sign of a mental disorder" and the Defendant was not impaired by "any

14    mental disorder on January 26, 2010." Moreover, the Defendant's claims that the parties all had

15    concerns regarding the Defendant's competency is simply wrong. Rather, the government had

16    an interest in having the issue conclusively resolved by an expert, as opposed to having the

17    Defendant attempt to re-litigate this issue on appeal – as was threatened. The issue is now put to

18

19      [4]At the change-of-plea hearing, the Defendant repeatedly testified this "was my idea" to

20    plead guilty. (Tr. III 27:5) ("it was my idea," "my proposal.") (Tr. III 7:23-25). United States v.
Castello, 724 F.2d 813, 815 (9th Cir. 1984) ("The court was entitled to credit [the defendant's]

21    testimony at the Rule 11 plea colloquy over [his] subsequent affidavit.").

22      [5]The government objects to the defense's invitation to review Dr. Patterson's hearsay

23    report. The defense, in it's opening brief, alluded to a follow-up declaration to prove this
"manic" episode assertion. The parties jointly sought out an expert to analyze the Defendant's

24    mental state. A declaration has been filed by that expert. The Rules of Evidence, while
inapplicable to detention hearings, apply to this motion. For that reason, the report is proper for

25    the Magistrate Judge to review, but not in the context of this hearing. Fed. R. Evid. 1101(d). In
the event it is reviewed, the Dr. Kessler's declaration led to doubt of the Patterson report which

26    is addressed the report for completeness *only*. Notably, only Kessler reviewed Defendant's
January 26, 2010 statements.

27

28      [6]The Patterson report is not admissible.

*U.S.' Opposition to Motion to*
*Withdraw Guilty Plea*
*CR-08-222-WHA*           -10-

1   rest.  The sole declaration filed regarding the Defendant's competence shows that he knew

2   exactly what he was doing when he pleaded guilty, just as his numerous lawyers attested to, and

3   as the Court found.

4          Third, the Defendant claims that the terms of the plea were breached is nonsensical.  The

5   Defendant pleaded open.  As the parties stated at the change-of-plea hearing, there was "no

6   settlement."  The Court confirmed as much in noting "there is not settlement in front of me" and

7   the Defendant confirmed he understood.  As the Defendant notes, he violated the terms of his

8   release.  In response, Judge Spero detained him.[7]  While the government agreed to the

9   Defendant's release on January 29, 2010, this was not a "get-out-of-jail-free card."  Along those

10  lines, the Defendant has engrafted an unstated provision into plea application that the Defendant

11  shall be released no matter what.  That claim is preposterous, and is decidedly not some "*other*

12  *[fair and just] reason for withdrawing the plea that did not exist when the defendant entered his*

13  *plea*."  United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005).  The requirement that he abide

14  by the terms of his release conditions has always existed.  Further, the claim he should be

15  allowed to withdraw on this basis – that he violated a Court Order – is neither fair nor just.

16         As a subpart to this claim, the Defendant apparently argues that the Court's treatment of

17  the plea applications warrants withdrawal.  A Rule 11 plea hearing is "designed to ensure that

18  the criminal defendant who pleads guilty understands exactly what the plea means."  United

19  States v. Rios-Ortiz, 830 F.2d 1067, 1069 (9th Cir. 1987).  Consistent with that principle, the

20  Court advised the Defendant of the elements of the offense, the procedure for computing a

21  sentence, and because there was no "settlement" that the plea was unequivocal.  Defendant's

22  claims that he was "rebuffed" by this Court when he tried to interject qualifications only

23

24

25

26         [7]Notably, it was the Defendant who requested a deviation from the Application to Plead
27  Guilty, not the government.  Aside from violated his release conditions, he sought to broaden his
    release conditions based on a false premise.
28  *U.S.' Opposition to Motion to*
    *Withdraw Guilty Plea*
    *CR-08-222-WHA*                          -11-

1   underscores the problem he tried to create.[8]  The Defendant wants make conditional

2   commitments so that he can get out later.  Nothing is ever binding.

3        In that regard, Defendant's contention that he should be allowed to qualify his plea is the

4   central problem with his request.  Defendant's motion violates that oft-stated principle that a

5   defendant cannot withdraw a guilty plea "simply on a lark," because he wants to renegotiate his

6   status as that would "debas[e] the judicial proceeding at which a defendant pleads and the court

7   accepts his plea." Rios-Ortiz, 830 F.2d 1067, 1069.  That is exactly what the Defendant is doing.

8        In that regard, courts uniformly analyze motions to withdraw guilty pleas in "the context

9   in which the motion arose to determine whether" a "fair and just reason exists." United States v.

10  McTiernan, 546 F.3d 1160, 1167 (9th Cir. 2008).  Among the factors considered is the reason

11  and timing for the request.  United States v. Nostratis, 321 F.3d 1206 (9th Cir. 2003).  While an

12  immediate request to withdraw combined with a justifiable reason is understandable, here the

13  Defendant pled guilty and had three trial dates vacated.  In addition, the Defendant's reasons for

14  withdrawal have never been concrete or cogent and are more aptly characterized as a moving

15  target.  It changed from allegations of poor advice regarding his sentence[9] to stress.  He has

16  never professed innocence.  After pleading the second time in this case, the Defendant again

17  attempted to make demands regarding his sentence, custody, or other benefits.  He is using this

18  motion as a bargaining chip and playing games with the judicial system.  Granting Defendant's

19  request given his conduct would render an unjust result especially given the "great care with

20  which" the Court accepted the Defendant's plea in the first place.  United States v. Hyde, 520

21  U.S. 670, 672-73 (1997).

22

23

24        [8]In doing so, the Court's Rule 11 plea colloquy was not only adequate, but it also makes
    Defendant's current claims meritless.  United States v. Davis, 428 F.3d 802, 807-09 (9th Cir.
25  2005) (collecting cases where a defendant's motion to withdraw was denied because the court
    cleared up any misconceptions, poor advice, or uncertainty at the time of the Rule 11 hearing.)

26
        [9]A defendant "cannot plead guilty to 'test the weight of potential punishment' and then
27  withdraw their plea if the sentence is "unexpectedly severe." United States v. Ramos, 923 F.2d
    1346, 1359 (9th Cir. 1991), *overruled on other grounds by* Ruiz, 257 F.3d at 1032.
28
    *U.S.' Opposition to Motion to*
    *Withdraw Guilty Plea*
    *CR-08-222-WHA*                          -12-

1    Unlike other defendants, Mr. Brugnara is keenly aware of the consequences of making

2    this decision to plead guilty under oath.  He is uniquely experienced in this procedure having

3    pled guilty three times.  The Defendant's conduct more than suggests he views his guilty plea as

4    completely "ephemeral" with "no lasting effect."  Rios-Ortiz, 830 F.2d 1067, 1069.  Numerous

5    Court's have rejected similar motions on that basis alone.  Id.  Likewise, the Defendant's motion

6    should be denied even in the absence of prejudice to the government.

7    Lastly, without citing any authority, the Defendant claims the plea applications he signed

8    are void.  Defendant makes this assertion based on his failure to fill out the application.  Rule 11

9    does not require a written application in order for a Defendant to plead guilty.  Moreover, as this

10   Court has noted, an application to plead guilty is "a mere supplement to ensure that any plea was

11   voluntary and knowing."  United States v. Paiz, 2007 WL 4171204 (N.D. Cal. November 27,

12   2007), Case No. 06-710-WHA.  As noted above, the Defendant read and understood the

13   application as each issue was discussed in open court.  The application, combined with the

14   numerous other documents the Defendant signed, including the plea agreement, simply

15   demonstrates his plea is knowing and voluntary.

16          2.     The United States Would Be Prejudiced If Defendant Were Allowed to Withdraw
                   His Guilty Pleas.
17

18   If the Court were to grant Defendant's motion, the United States would suffer prejudice

19   in several respects.  Nearly twelve months have elapsed since the Defendant's first guilty plea.

20   The events underlying Defendant's crime took place nine years ago and are insignificant in the

21   lives and memories of many potential witnesses.  That is now known to the government – a party

22   that has prepared for trial twice.  Moreover, at least two witnesses who were going to testify at

23   the first trial have since retired and moved.  The government went through significant efforts to

24   locate one of these individuals.  The government's current expert witness, who spent significant

25   time preparing for trial, will also retire and a new expert will have to review the numerous

26   property sales and years of tax returns in order to testify at trial.

27   Further, the fact that this case involves property sales poses an additional problem.  At

28   least one title company involved in the sales no longer exists along with one bank.  For that

*U.S.' Opposition to Motion to*
*Withdraw Guilty Plea*
*CR-08-222-WHA*                    -13-

1  reason, the government will now be required to search for some "other qualified" person to serve

2  as a business record custodian.

3          Lastly, the Defendant was admonished, as a release condition, not to contact witnesses.

4  This was put on the record because the government has had an undiminished concern the

5  Defendant would do so, and attempt to influence others.  He has done so and now the

6  government, who has the burden of proof at trial, must determine the nature and extent of those

7  communications.

8          Stated simply, allowing Defendant here to take another year-long detour by entering and

9  then reversing a knowing decision to plead guilty, because he changed his mind and decided

10 belatedly that he wants to renegotiate a plea or go to trial would disadvantage the United States

11 by effecting a delay in trial and by frustrating interests of finality and the efficient use of

12 prosecutorial resources.

13          B.      Should the Court Be Unwilling to Deny Defendant's Motion on the Papers, the
                   United States Requests an Evidentiary Hearing.

14

15         The Court can and should deny Defendant's motion on the papers, since the text of the

16 plea agreement, the transcript of the plea colloquy, and Dr. Kessler's declaration provide more

   than enough basis to deny the motion on any of the grounds described above.

17

18         If the Court is not prepared to deny Defendant's motion on the papers, the United States

19 respectfully requests an evidentiary hearing on the motion.  The Defendant has been in custody

20 since Mach 5, 2010.  Dr. Kessler relied on Defendant's contemporaneous statements in

   concluding he knew what he was doing then.

21

22         At an evidentiary hearing, the Court would be able to view Defendant's statements when

23 he entered the plea, and the numerous occasions when he sought to abandon this motion.  In

24 Defendant's parlance, to "settle" rather than pursue this motion.  Those actions are inconsistent

25 with the motivation asserted in his brief and simply demonstrate the Defendant is only pursing

   the least prejudicial outcome.  But that is not a basis to withdraw his plea.

26

27

28 *U.S.' Opposition to Motion to*
   *Withdraw Guilty Plea*
   *CR-08-222-WHA*                        -14-

1

### III.  CONCLUSION

2

      Defendant knowingly and voluntarily entered a guilty plea on January 26, 2010.  For a

3

second time he asks to withdrawal in order to renegotiate another outcome.  In essence, the

4

Defendant is treating his plea as "ephemeral," having no effect but as a bargaining chip.  That is

5

not a permissible basis to withdraw from a plea no matter how the arguments are recharacterized.

6

Defendant's motion should be denied.  If the Court is not prepared to deny Defendant's motion

7

based on the papers, the United States respectfully requests an evidentiary hearing.

8

9

DATED: April 19, 2010          Respectfully submitted,

10

11

                        JOSEPH P. RUSSONIELLO
United States Attorney

12

                              /s/

13

                        THOMAS M. NEWMAN
Assistant United States Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*U.S.' Opposition to Motion to*
*Withdraw Guilty Plea*
*CR-08-222-WHA*              -15-