JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

MAUREEN C. BESSETTE (CABN 2468254)
THOMAS NEWMAN (NYSBN 4256178)
Assistant United States Attorneys
   1301 Clay Street, Suite 340S
   Oakland, CA, 94612
   Telephone: (510) 637-3691
   Facsimile: (510) 637-3724
   E-mail: maureen.bessette@usdoj.gov

Attorneys for United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR08-00222 WHA |
|     Plaintiff, | ) | |
| | ) | DECLARATION OF CHARLES TONNA |
| v. | ) | |
| | ) | |
| LUKE D. BRUGNARA, | ) | |
|     Defendant. | ) | |

I, Charles Tonna, being duly sworn, hereby depose and state as follows:

1.    I am an IRS Revenue Agent in the Small Business/Self-Employed Division. I was noticed as a summary-expert in this matter.

2.    I have personal knowledge of the facts set forth in this declaration and I am competent to testify on the matters stated in this declaration.

3.    I prepared tax computations related to Luke Brugnara's 2000 - 2002 federal income tax returns. In preparing those computations, I reviewed, among other things, the escrow files related to the purchase and sale of: (1) 171 2nd Street, SF, (2) 810-814 Mission Street, SF, (3) 935-939 Market Street, SF, (4) 490 Post Street, SF, (5) 3025 S. Las Vegas Boulevard, Las Vegas, (6) 36 San Jacinto Way, SF, and (7) 38 San Jacinto Way, SF. For each of these

properties, I used the purchase escrow files to determine the purchase price and any expenses or other fees related to the purchases.  I reviewed and used the sales escrow files related to the same properties to compute the gain on the sales after subtracting any selling expenses that were reported on the escrow statements.

4.      I also reviewed Luke Brugnara's 1998 - 2003 federal income tax returns.  I used and reviewed the 1998 and 1999 federal income tax returns because Mr. Brugnara claims a net operating loss carryforward on his 2000 - 2002 federal income tax returns.  The net operating loss carryforward, as claimed by Mr. Brugnara, is from 1999.  However, his 1998 federal income tax return also shows a net operating loss that affects the tax calculation for 2000 - 2002.

5.      I have attached schedules to this declaration that calculate the tax loss for 2000 - 2002.  Attached as Schedule 1 ("Sch 1") is a summary of the tax computations for each year, 1998 - 2003.

6.      As stated on Sch 1, I noted when the information on Mr. Brugnara tax return was accepted as reported.  As indicated, I made no adjustments to any claimed expense or deduction reported on Mr. Brugnara's 1998 federal income tax return except to depreciation.  As explained in Schedule 3 ("Sch 3"), I calculated depreciation for each property Mr. Brugnara owned or controlled for 1998 based on a 39-year recovery period (and 31.5-year period for one property).  Mr. Brugnara claimed depreciable expenses in the amount of $1,112,551 for 1998.  I recalculated depreciation for each property Mr. Brugnara used in a trade or business that year.  That includes: (1) 351 California Street, (2) 171 2nd Street, SF, (3) 810-814 Mission Street, SF, (4) 935-939 Market Street, SF, (5) 490 Post Street, SF, and (6) 201 Sansome Street, SF.  Depreciation is not allowed for 36 or 38 San Jacinto Way because Mr. Brugnara resided at those properties, which were not placed in service as part of a trade or business that year.  I performed this calculation because Mr. Brugnara's 1998 tax return did not specify what properties were depreciated or how depreciation was calculated.  I recalculated depreciation for 1998 as $959,126, a difference of $153,425.

7.      This same procedure was used for each year.  In other words, for 1999 through 2003, I determined which properties Mr. Brugnara had in service and allowed depreciation using

the cost of the property as reported in the escrow files. In each case, I allocated 70% of the cost of the purchase to the improvements (except where a prior audit had determined a greater amount).

8.      As related to the 1998 tax return, after adjusting the depreciation, the remaining income and expenses were accepted as true. As shown in Sch 1, this resulted in a $5,701,943.45 net operating loss for 1998, rather than the $5,855,368.27 loss reported on the return. The $5,701,943.45 loss was carried forward to offset any gain in 2000, which is shown in the "net operating loss deduction" section of Sch 1. In performing this calculation, I am noting that Mr. Brugnara did not report this carryforward loss on either his 1999, 2000 or any other tax return. Rather, it was reported in 1998 and my schedules carry the loss forward to 2000 despite the fact this was not done on any tax return. A portion of the unused loss was also carried forward to 2001 ($418,482.27).

9.      For 1999, I made two adjustments to Mr. Brugnara's federal tax return. Using the same procedure noted above, I adjusted depreciation and allowed all depreciation for the properties placed in service that year. That includes: (1) 351 California Street, (2) 171 2nd Street, SF, (3) 810-814 Mission Street, SF, (4) 935-939 Market Street, SF, (5) 490 Post Street, SF, (6) 3025 S. Las Vegas Boulevard, Las Vegas, and (7) 201 Sansome Street, SF. The schedule for depreciation is calculated on Sch 3 which is attached. In each case, the basis was calculated using the amounts reported on the escrow files. As noted on Sch 3, I calculated depreciation for 1999 as $1,094,414, while $1,205,589 was reported on the tax return. Mr. Brugnara's 1999 tax return reported depreciation but did not report that deduction on a property-by-property basis, which is one reason it was recalculated. The difference is $111,175.

The remaining adjustment for 1999 is related to a sale of property that year. Property records show that the real property located at 171 2nd Street was purchased in 1993 for $500,000. That property was sold in 1999 for $4,300,000, and there were some expenses yielding a net gain of $3,669,906.92 (as shown on Sch 2a). The net gain of $3,669,906.92 was not reported on the 1999 return and it reduces the net operating loss reported on the 1999 tax return from $9,851,377.70, or $9,740,202.70 as adjusted for the corrected depreciation, to a $6,070,295.31

1    loss in 1999.

2        10.    For 2000, I made four adjustments. First, I recalculated depreciation and included

3    deductions for depreciation based on the method described above for the following properties in

4    service that year: (1) 351 California Street, (2) 810-814 Mission Street, SF, (3) 935-939 Market

5    Street, SF, (4) 490 Post Street, SF, (5) 3025 S. Las Vegas Boulevard, Las Vegas, and (6) 201

6    Sansome Street, SF. The depreciation is calculated for each property on Schedule 3. The

7    depreciation is recalculated as $1,439,668 for these properties, while $1,670,779 is reported on

8    the 2000 tax return. The 2000 tax return does not list depreciation on a property-by-property

9    basis, which is one reason it is recalculated. Depreciation is not allowed for 36 or 38 San Jacinto

10    Way because those properties were not placed in service as part of a trade or business. The

11    difference between the recalculated amount and the reported amount is $231,111 in 2000.

12        I also added in the sales of the real properties located at 810-814 Mission Street, SF, and

13    935-939 Market Street, SF, which were not reported on the tax return. The information from the

14    purchase and sales were obtained from escrow files and summarized on Schedule 2b and 2c. The

15    recalculated gain from the sale of 810-814 Mission Street, after allowing all purchase and sales

16    expenses shown on the escrow statements, was $9,069,282.34 (as shown on Sch 2b). The

17    recalculated gain from the sale of 935-939 Market Street, SF, after allowing all purchase and

18    sales expenses shown on the escrow statements, was $6,522,399.14 (as shown on Sch 2c). The

19    expenses from the escrow files are listed on subsidiary schedules 12a and 12b. Since the

20    property sales were not reported on his 2000 return, the net gains from the sales are added back

21    to Mr. Brugnara's tax return and the remaining deductions and income (as shown on the return)

22    are accepted (except for the depreciation deduction as explained earlier). This yields total

23    income of $5,283,461.17. Then I subtracted the $5,701,943.45 net operating loss from 1998,

24    which resulted in -$418,482.27 in adjusted gross income.

25        Mr. Brugnara had an Alternative Minimum Tax liability in 2000. The Alternative

26    Minimum Tax calculation is summarized on Schedule AMT-1, which is attached. Mr. Brugnara

27    had alternative minimum taxable income in 2000 in the amount of $524,537.59, and an

28    Alternative Minimum Tax of $104,907. The reason there is an Alternative Minimum Tax

1  liability in 2000 is that, in that year, a net operating loss carryforward could only offset up to 90%

2  of Alternative Minimum Taxable Income  Mr. Brugnara's tax returns do not include schedules

3  for calculating the Alternative Minimum tax.

4        11.    For 2001, I made three adjustments.  First, I recalculated depreciation and

5  included deductions for depreciation based on the method described above for the following

6  properties in service that year: (1) 351 California Street, (2) 490 Post Street, SF, (3) 3025 S. Las

7  Vegas Boulevard, Las Vegas, and (4) 201 Sansome Street, SF.   The depreciation is calculated

8  for each property on Schedule 3.  The depreciation is recalculated as $1,168,015 for these

9  properties, while $1,427,847 is reported on the 2001 tax return.  The 2001 tax return does not list

10  depreciation on a property-by-property basis, which is one reason it is recalculated.  Depreciation

11  is not allowed for 36 or 38 San Jacinto Way because those properties were not placed in service

12  as part of a trade or business.  The difference between the recalculated amount and the reported

13  amount is $259,832 in 2001.

14        I also added in the sale of the real property located at 490 Post Street, which was not

15  reported on the tax return.  The information from the purchase and sales were obtained from

16  escrow files and summarized on Schedule 2d.  The recalculated gain from the sale of 490 Post

17  Street, after allowing all purchase and sales expenses shown on the escrow statements, was

18  $21,534,993.88.  The expenses from the escrow files are listed on the subsidiary Schedules 13a

19  and 13b.  Since the net gain from the sale was not reported on his 2001 return, it is added back to

20  Mr. Brugnara's tax return and the remaining deductions, and income, are accepted as shown on

21  the return (except for the depreciation deduction as previously explained).  The 1999 net

22  operating loss carryforward was subtracted in the amount of ($6,070,295.31) along with the

23  unused portion of the net operating loss of ($418,482.27) from 1998.  Following the reductions

24  for the 1998 and 1999 net operating losses, the adjusted gross income was calculated as

25  $6,221,572.44.  The tax on this amount is $1,241,295 (as calculated on Sch 4a) and there is no

26  Alternative Minimum tax in 2001.

27        12.    For 2002, I made three adjustments.  Those adjustments were for depreciation and

28  the sales of the two properties located at 3025 S. Las Vegas Boulevard and 36 San Jacinto Way.

1    First, I recalculated depreciation and included deductions for depreciation based on the method

2    described above for the following properties in service that year: (1) 351 California Street, (2)

3    3025 S. Las Vegas Boulevard, Las Vegas, and (3) 201 Sansome Street, SF.  The depreciation is

4    calculated for each property on Schedule 3.  The depreciation is recalculated as $798,042 for

5    these properties, while $1,012,000 is reported on the 2002 tax return.  The 2002 tax return does

6    not list depreciation on a property-by-property basis, which is one reason it is recalculated.

7    Depreciation is not allowed for 36 or 38 San Jacinto Way, or 224 Sea Cliff because those

8    properties were not placed in service as part of a trade or business.  The difference between the

9    recalculated amount and the reported amount is $213,958 in 2002.

10        I also adjusted the gains from the sales of the real properties located at 3025 S. Las Vegas

11   Boulevard and 36 San Jacinto Way.  On his 2002 tax return, Mr. Brugnara reported a gain of

12   $31,494,000 from the sales of properties at 814 Mission St., 171 2nd St., 939 Market St., and 490

13   Post St.  All those properties were sold in years prior to 2002.  He also reported a gain of

14   $570,000 from the sales of 36 San Jacinto Way and 38 San Jacinto Way.  The property at 38 San

15   Jacinto Way was sold in 2003 (as discussed below).  He did not report any gain from the sale of

16   3025 S. Las Vegas Blvd.

17        The information from the purchases and sales of the two properties sold in 2002 were

18   obtained from escrow files and summarized on Schedules 2e and 2f.  The recalculated gain from

19   the sale of 3025 S. Las Boulevard, after allowing all expenses shown on escrow statement, was

20   $10,850,111.41.  The expenses from the escrow files are listed on Schedules 14a and 14b.  The

21   recalculated gain from the sale of 36 San Jacinto Way, after allowing all expenses shown on

22   escrow statement, was $441,107.  The expenses from the escrow files are listed on the Schedules

23   15a and 15b.  The net gain from the sales are added back to Mr. Brugnara's tax return for 2002

24   and the remaining deductions, and income, are accepted.  The 1998 and 1999 loss carryforward

25   amounts are now depleted.  The adjusted gross income after adding the sales, and accepting the

26   remaining income and deductions, except depreciation, equals $5,616,176.59.  As calculated in

27   Schedule 4a, the regular tax based on tax tables equals $1,120,115.  There is an Alternative

28   Minimum Tax of $447.32 in 2002 as shown on Sch AMT-1.

13.     For 2003, I made two adjustments.  I added the sale of 38 San Jacinto Way, which was not reported, and recalculated depreciation.  It should be noted that the income for this year does not add to the tax loss and this year is not charged as false.  The information from the purchase and sales were obtained from escrow files and summarized on Schedules 16a and 16b. The recalculated gain from the sale of 38 San Jacinto Way, after allowing all expenses shown on escrow statement, was $305,689.80.  The net gain from the sale is added back to Mr. Brugnara's tax return for 2003 and the remaining deductions, and income are accepted, but not the claimed loss carryforward which was depleted in 2001.  I also recalculated depreciation for 2003, which equaled $672,384, a difference of $2,384 from the $670,000 claimed on the return.  After subtracting the deductions claimed on the 2003 tax return, the net taxable income equals -$2,828,744.66.

14.     The tax loss based on the tax due for 2000 - 2002, without carrying back the 2003 net operating loss equals $2,465,764.72.  The tax due after carrying back the 2003 net operating loss for 2003 equals $1,904,625.35.

I declare under the penalty that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 27 day of April 2010, at San Francisco, CA.

Revenue Agent Charles Tonna

Declaration of Charles Tonna
(No. CR-08-00222-WHA)                                7