IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LUKE D. BRUGNARA,

    Defendant.

No. CR 08-0222 WHA

**ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

## INTRODUCTION

Defendant Luke Brugnara moves to withdraw his guilty plea. For the following reasons, the motion is **DENIED**.

## STATEMENT

Defendant Luke Brugnara has pled guilty *twice*. After the first plea, the Court let him withdraw the plea. On the eve of trial, he pled guilty again. Now he moves to set the second guilty plea aside. Sufficient cause has not been shown to allow it.

On April 3, 2008, defendant, a real-estate businessman, was indicted for filing false tax returns for the calendar years 2000, 2001 and 2002 in violation of 26 U.S.C. 7206(1). At his initial appearance on April 17, 2008, he was represented by Attorney Harris Taback and released on his own recognizance. Shortly thereafter Attorney Taback withdrew and was replaced by Attorney Kenneth Wine. Attorney Taback, however, continued on as counsel of record for defendant in a separate criminal prosecution before Judge Chesney, No. 08-CR-0236, in which defendant faced charges of knowingly taking and attempting to take a threatened

species (steelhead fish) in violation of the Endangered Species Act and making false statements to a California Department of Fish and Game officer.

Because the present action was a complex tax prosecution with a large amount of discovery, Attorney Wine asked for and received additional time to prepare in August 2008 and again in September 2008 (Dkt. Nos. 11, 14). Trial was eventually set for June 15, 2009. Defendant was out of custody.

On the eve of trial, defendant pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement. The plea was taken on May 15, 2009. Soon after the trial date was vacated, however, he fired Attorney Wine and on June 9 asked for a CJA lawyer to aid him in rescinding his plea agreement. By that point, it was impossible to reinstate his previous trial date both because the calendar spots had been taken by other matters and because new counsel would have needed time to prepare anew. Again, at all times, defendant remained out of custody.

Instead of obtaining CJA counsel, defendant re-engaged Attorney Taback to represent him in this action and to move to vacate the plea. At the hearing on that motion, the Court made clear that it was concerned how much time Attorney Taback would need to "come up to speed on a tax case" to prepare for trial if defendant's motion were granted, given the complex nature of the action and the previous continuances that had been given to Attorney Wine (Brugnara Suppl. Br. Exh. 3 at 10–11). Attorney Taback assured the Court that if a new trial date were set in mid- to late-February 2010, "that would give me enough, five or six months or so to get on top of this case and satisfy my responsibilities to various other clients that I have to service as well" (*id.* at 30). All agreed that the plea colloquy had been adequate. It was doubtful that grounds to withdraw were shown but an order allowed him to withdraw his plea on September 2, 2009. This was done in reliance on Attorney Taback's express and unqualified assurance that he would try the case in February 2010 and the motion was not merely a delay tactic. Trial was promptly set for February 2010, later continued to March 1.

Despite his prior assurances, Attorney Taback moved to withdraw as counsel of record in October 2009. In support of the motion, Attorney Taback declared under oath that he was retained and paid specifically to prepare and file a motion to withdraw defendant's guilty plea

2

and, if that motion were not granted, to represent defendant at sentencing. He stated under oath that after the motion to withdraw defendant's guilty plea was granted, he entered another written contract with defendant to be paid a trial fee and monies needed for investigation and trial preparation. He further declared, however, that no additional payments of any kind were provided by defendant since that date (Taback Decl. 2–3).

Criminal Local Rule 44-2 states that an attorney who wishes to withdraw must show good cause, and that "[f]ailure of the defendant to pay agreed compensation may not necessarily be deemed good cause." The motion to withdraw was denied on the grounds that the only reason Attorney Taback wished to withdraw was because of his client's alleged failure to pay. Although Attorney Taback claimed in his motion that defendant's failure to pay had created an irreconcilable conflict between them, at a hearing on November 3, 2009, defendant did not agree and in fact agreed that he "loved" his attorney (Brugnara Suppl. Br. Exh. 1 at 7). When asked by the Court whether he wanted Attorney Taback to continue to represent him, defendant answered, "Absolutely. I have no problem with Mr. Taback" (*ibid.*). Attorney Taback's motion to withdraw was also denied in No. 08-CR-0236. It was quite clear that defendant was happy with Attorney Taback's representations and that only Attorney Taback was unhappy because he was having to work for free, or so it appeared to him the time. Eventually, they evidently worked out their differences.

On January 22, 2010, defendant was arrested on a complaint for threatening to kill witnesses in No. 08-CR-0236 which was set to begin trial on January 26. On January 26, shortly before jury selection began, defendant pleaded guilty to all charges in that matter. *Later that day, he again pleaded guilty in the present matter to Counts 1–3.* The government agreed to dismiss Count 4. The government also agreed that defendant should be released from custody on January 28, 2010, and that the United States Attorney's Office for the Northern District of California would not file any additional tax charges related to this investigation or known to exist at that time (Brugnara Suppl. Br. Exh. 8 at 5–6). Sentencing was set for May 4, 2010.

3

On January 28, 2010, defendant was released subject to conditions agreed upon by defendant and the prosecution in both this matter and in No. 08-CR-0236, including that (1) his mother Vicki Brugnara act as his custodian, (2) he reside 24 hours a day, 7 days a week at his mother's residence in San Francisco, (3) he have electronic monitoring, (4) he not leave his mother's residence except that with approval from Pretrial Services he was permitted to leave for medical reasons and to visit his attorneys, Pretrial Services, and court (Dkt. No. 73).

On March 2, 2010, defendant was allowed to substitute Attorneys Brian Getz and Eric Krebs for Attorney Taback in both this matter and in No. 08-CR-0236. Three days later, defendant was remanded to custody for violating the terms of his pretrial release (Dkt. No. 88). Specifically, on February 8, 2010, federal agents had observed and photographed defendant and his mother at an unauthorized location — a residence he owns in San Francisco — without approval from the Court or Pretrial Services.

**ANALYSIS**

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a guilty plea after its acceptance but before sentencing if the defendant shows "a fair and just reason for requesting the withdrawal." "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005). Defendant does not contend that the Rule 11 colloquy was inadequate. Nor does he assert the discovery of new evidence.

Defendant asserts four reasons that he should be allowed to withdraw his plea for the second time. *First*, he argues that he had an "irreconcilable and actual conflict" with Attorney Taback at the time of his entry of plea. *Second*, he argues that he did not receive the "benefit of his bargain" in exchange for his guilty plea because the terms of his plea agreement were materially breached. *Third*, he argues that his plea application is null and void because the fifth paragraph of the application was allegedly not executed in his own handwriting. *Fourth*, he argues that at the time of his entry of plea, he was suffering from a manic episode due to his

4

incarceration. These claims are without merit and do not offer fair or just reasons to allow him to withdraw his plea.

Defendant has not shown that he was prejudiced by any deficiency on the part of Attorney Taback. Inadequate assistance of counsel requires that defendant show that his attorney's representation fell below the normal standard of representation and that this deficient representation prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). In support of his argument that he had an irreconcilable and actual conflict with his attorney, defendant relies entirely on the same evidence that was already rejected in Attorney Taback's motions to withdraw in this matter and in No. 08-CR-0236. But at the November hearing on that motion, defendant told the Court he was very pleased with Attorney Taback's representation. Moreover, at the plea colloquy in January, defendant said that he was satisfied with Attorney Taback's advice and counsel (Brugnara Suppl. Br. Exh. 2 at 11).

Defendant submitted a sworn declaration in support of his motion to again withdraw his plea, but the declaration does not support his contention that Attorney Taback's representation was somehow deficient. In his declaration, defendant stated that he was taken into custody on January 22, 2010 (Brugnara Decl. at 1). He described at length the unpleasant conditions he encountered in jail (Brugnara Decl. at 1–6). He then averred that when he met with Attorney Taback before his trial began, he told Attorney Taback that he would sign anything to get out of jail (Brugnara Decl. at 6). Attorney Taback told him that he could be released immediately if he pleaded guilty (*Ibid.*). Defendant's sworn declaration therefore supports a finding that he pleaded guilty on his own initiative, not due to the coercion or deficient representation of Attorney Taback.

At the hearing on this motion, defendant made a lengthy statement but none of it was under oath. No declaration from Attorney Taback was submitted. The record unequivocally shows that Attorney Taback was prepared to provide an adequate defense for defendant.

Defendant's argument that the terms of his plea were somehow breached is also without merit. Defendant argues that he did not receive the "benefit of his bargain" because he was returned to custody even though the government agreed that he should be released prior to

5

sentencing. But defendant's release before sentencing was explicitly subject to specified conditions, and he was only returned to custody after violating one of them. Unconditional pre-sentence release was not part of defendant's "bargain."

Defendant also argues that he did not receive the benefit of his bargain because the Court stated during the colloquy that it would not accept any qualifications or conditions regarding his plea. This argument is without merit because defendant entered an open plea after agreeing to plead without any such qualifications or conditions. The Court repeatedly stated during the colloquy that defendant did not have to plead guilty, but if he did, he would be entering an "open" plea, meaning without conditions or limitations on his sentence. (*id.* at 4–5, 8, 13, 20–21). In response to defendant's innuendos that he wished to settle the entire affair, the Court stated, "There is no settlement in front of me. I'm telling you that I — if you all think you have some kind of a settlement, let's forget it and go to trial" (*id.* at 20). Defendant stated that he understood (*ibid.*).

The plea application form stated regarding paragraph 5: "In the above space defendant must set out in detail in his/her own handwriting what he/she did. If more space is needed, add a separate page" (Brugnara Suppl. Br. Exh. 8 at 2). Defendant argues (without citing any authority) that his plea application is void because in fact Attorney Taback wrote the paragraph in question. This argument fails because defendant acknowledged the substance of paragraph 5 — including the acts he committed in connection with the charges against him — during the colloquy (Brugnara Suppl. Br. Exh. 2 at 31–39). An application to plead guilty is a mere supplement to ensure that any plea was voluntary and knowing. A plea application is not necessary for defendant to enter an open plea.

Finally, defendant argues that his plea was involuntary because he was suffering from a manic episode at the time. This contention is directly contradicted by defendant's statements at the plea colloquy. The following exchange took place at the hearing (*id.* at 10):

> Q. Are you thinking clearly today?
> A. Yes.

6

1         Q. Are you under the influence of any medicine, alcohol, or
2 narcotic?
3         A. No.
4         Q. Are you being treated for any kind of mental illness?
5         A. No.
6         Q. Are you mentally ill?
7         A. No.

Moreover, by the stipulation of the parties, defendant was examined by Psychiatrist David Kessler. Psychiatrist Kessler concluded that "on January 26, 2010, the defendant was not impaired by any mental disorder from being able to understand the nature and consequences of his decision or to cooperate rationally and meaningfully with counsel in preparing a defense" (Kessler Decl. at 3).

Based upon all of the above, there is no credible basis for defendant's claim that his plea was not knowing and voluntary due to his mood disorder. After reading the transcript of the plea colloquy, the Court is convinced and so finds that defendant's plea was, indeed, knowing and voluntary and that he was not impaired by any mental disorder that rendered his plea incompetent.

The record clearly shows that defendant has repeatedly attempted to game the system in this action for purposes of delay by changing attorneys and changing his plea multiple times. He will not be permitted to do so any longer. Defendant's motion to withdraw his guilty plea is **DENIED**. His sentencing shall go forward on **MAY 4, 2010, AT 2:00 P.M.**, as previously scheduled.

**IT IS SO ORDERED.**

Dated: May 3, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE