# EXHIBIT M

Pages 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

THE UNITED STATES OF AMERICA, )
                            )
       Plaintiff     )
                            )
        v.        )     NO. CR 08-00222 WHA
                            )
LUKE D. BRUGNARA,        )
                            )
       Defendant.    )
_____)

San Francisco, California
Friday, May 15, 2009

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff            United States Attorney's Office
                      9th Floor Federal Building
                      450 Golden Gate Avenue
                      Box 36055
                      San Francisco, CA 94102
        BY:   **THOMAS M. NEWMAN**
             **Assistant United States Attorney**

For Defendant           Law Offices of Hallinan & Wine
                      345 Franklin Street
                      San Francisco, CA 94102
        BY:   **KENNETH HOWARD WINE**
             **Attorney at Law**

Reported By:            CHRISTINE TRISKA, CSR, RPR
                      Pro-Tem Reporter

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page3 of 76
Case: 10-10286   01  2/2011   Page: 3 of 34   ID: 76561   DktEntry: 27-14

2

```
 1   Friday, May 15, 2009

 2                                          10:03 AM

 3                     P R O C E E D I N G S

 4           THE CLERK:  Calling criminal case CR08-0222, United

 5   States versus Luke Brugnara.

 6           Counsel, please state your appearance.

 7           MR. NEWMAN:  Good morning, your Honor.  Tom Newman for

 8   the United States.

 9           THE COURT:  Good morning.

10           MR. WINE:  Good morning, your Honor.  Ken Wine for

11   Mr. Brugnara, who is present.

12           THE COURT:  All right.  Good morning.

13           THE DEFENDANT:  Good morning.

14           THE COURT:  All right.  What have we got to do today?

15           MR. WINE:  Change of plea, your Honor.

16           THE COURT:  Is there a signed agreement?

17           MR. WINE:  There is.

18           THE COURT:  Can I see that?

19           MR. WINE:  You may.

20                    (Whereupon, counsel hands

21                 the document to the Court.)

22           THE COURT:  So what do you think the Criminal History

23   Category is?

24           MR. WINE:  We believe it's a one, your Honor.

25           MR. NEWMAN:  I believe it's a one.  I don't know for
```

Case3:08-cr-00222-WHA  Document159  Filed03/22/11  Page4 of 76
Case: 10-10286  01  2/2011  Page: 4 of 34  ID: 76561  DktEntry: 27-14

3

1    sure, but I believe it is a one.

2             THE COURT:  And if it's a one, what does that

3    correspond to?

4             MR. WINE:  A sentence of 18 to 24 months with both

5    parties asking for the low end there.

6             THE COURT:  It doesn't say "low end" here, does it?

7             MR. WINE:  It does on paragraph 19.

8             THE COURT:  Well, let's be clear on that.  This is not

9    worded the way I'm used to seeing it.

10            This says it's a Rule 11(c)(1)(C).

11            So what if I were to give a high-end sentence?

12            MR. WINE:  Well, the plea agreement contemplates a

13   Level 15, your Honor; Criminal History Category One with a range

14   of 18 to 24 months.  And it's up to the Judge to decide -- the

15   Court to decide what he wants to do between that range.

16            The government has agreed to recommend the low end,

17   and we will certainly be asking for the low end.

18            THE COURT:  I understand that, but I have no way of

19   telling you whether or not I can accept that now.  I have to go

20   through the process.

21            MR. WINE:  That's correct.

22            THE COURT:  So if I go through the process and decide

23   that it ought to be the high end, then we need to have an

24   understanding of whether or not this is going to be at

25   11(c)(1)(C) that allows the defendant to withdraw his guilty

4

1  plea.

2          MR. WINE:  It does not, your Honor, at 24 months.

3  Anything over 24 months it would.

4          THE COURT:  All right.

5          Is that the way you understand it, Mr. Brugnara?

6                  (There was a discussion off the record.)

7          THE COURT:  I want you to take a moment, and we're

8  going to take a five-minute recess, and you talk to your client

9  about this.

10          MR. WINE:  Fine.  Thank you very much, your Honor.

11                  (A recess was taken at 10:07 a.m.)

12          THE COURT:  All right.  Back on the record.  Everyone

13  is here.  Be seated, please.

14          So Mr. Wine, are we okay on this?

15          MR. WINE:  Yeah.

16          THE COURT:  So state again what the -- what would be

17  the right to withdraw from this plea.

18          MR. WINE:  The -- if the government does not recommend

19  the low end of the guidelines or fulfill any of its promises,

20  then the Court would sentence over 24 months.

21          THE COURT:  All right.  What if it turns out to be --

22  I know you're probably right; it's Criminal History Category

23  One, but I have been surprised before.

24          What if it's Criminal History Category Two?

25          MR. WINE:  According to this agreement -- we haven't

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page6 of 76
Case: 10-10286   02/22/2011   Page: 6 of 34   ID: 7656100   DktEntry: 27-14

5

1    discussed that to be frank.  We don't know of any criminal

2    history, your Honor.

3              THE COURT:  Well, I know that.  But the way this is

4    worded seems to me that you'd just be taking your chances.  If

5    it turns out that it's Number Two then we'd be at the next

6    level, whatever that is.

7              MR. NEWMAN:  Which is correct.  But I don't have any

8    reason to believe that Mr. Brugnara is a Criminal History

9    Category Two.  I don't think there's anything to even suggest

10   that.  But that is correct.

11             THE COURT:  Well, is that the way you see it, Mr.

12   Wine?

13             THE DEFENDANT:  Excuse me.  Why don't we come back on

14   Tuesday?  You need to do your homework.

15             MR. WINE:  Your Honor, believe me, we nagged the

16   government for every detail we got on this plea.  We think Mr.

17   Newman will confirm that, and push it for every advantage.

18             We are both assuming that it is Criminal History

19   Category One.  If it's Criminal History Category Two we'd ask

20   to withdraw, I suppose, and if Tom has a problem with that --

21             MR. NEWMAN:  I'll agree to that, because I am

22   confident that he is a one.

23             THE COURT:  Okay.

24             MR. WINE:  So we are exactly where we expected to be,

25   your Honor.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page7 of 76
Case: 10-10286   0(   2/2011   Page: 7 of 34   ID: 76561   DktEntry: 27-14

6

1          THE COURT:  All right.  I guess I can go along with

2  that if it's -- so you're assuming that it's Criminal -- so I'm

3  just going to treat this as Sentencing Guideline 15, Criminal

4  History Category One.

5          MR. NEWMAN:  Yes.

6          MR. WINE:  Fine.

7          THE COURT:  And if it turns out to be greater than

8  that -- that's something the Court would normally not do, is

9  gamble on this and take all this extra time.

10          But since you both seem to be confident it's going

11  to turn out that way -- one out of ten times somehow the

12  defendant has got some -- some conviction that the lawyers

13  don't know about.  I'm not saying that's true here, but I've

14  seen it happen.  And believe me, the probation people will

15  find it if it's there.

16          MR. WINE:  Your Honor, the intent of the parties in

17  this agreement, and it's very clear I think, at least, from the

18  way I read this -- the Court has discretion between 18 and 24

19  months.

20          So the criminal history, or the guideline range is

21  not what's critical here.  What is critical is that the

22  government agrees to recommend the low end.  We'll ask for

23  the low end, and the Court has discretion between 18 and 24

24  months.

25          THE COURT:  All right.

Case3:08-cr-00222-WHA Document159 Filed03/22/11 Page8 of 76
Case: 10-10286 0, 2/2011 Page: 8 of 34 ID: 7656 DktEntry: 27-14

7

1          So Mr. Brugnara, do you want to go forward today?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Please stand in the middle and raise your

4  right hand.

5          THE DEFENDANT:  (Complies.)

6          THE COURT:  Please administer the oath.

7          THE CLERK:  You do solemnly swear that the answers you

8  shall make shall be the truth, the whole truth, and nothing but

9  the truth, so help you, God?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  Mr. Brugnara, please tell us your

12  full and complete name.

13          THE DEFENDANT:  Luke Dominic Brugnara.

14          THE COURT:  All right.  And where do you live?

15          THE DEFENDANT:  224 Sea Cliff Avenue, San Francisco.

16          THE COURT:  Okay.  Now, you know you're under oath;

17  correct?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And that means you have to tell the truth;

20  you understand?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And I have to warn you that if you don't

23  tell the truth you can be prosecuted for perjury.

24          So you understand that?

25          THE DEFENDANT:  Yes.

1    THE COURT:  All right.  So how old are you?

2    THE DEFENDANT:  Forty-five.

3    THE COURT:  And how far did you go in school?

4    THE DEFENDANT:  Eighteen years.

5    THE COURT:  Okay.  So you graduated from college, or

6    --

7    THE DEFENDANT:  Yes.

8    THE COURT:  What college was that?

9    THE DEFENDANT:  San Diego State University.

10   THE COURT:  And what was your degree in?

11   THE DEFENDANT:  Communications.

12   THE COURT:  Do you have an occupation?

13   THE DEFENDANT:  I do.

14   THE COURT:  What is your occupation?

15   THE DEFENDANT:  I'm president of Brugnara Corporation,

16   and Brugnara Properties One and Brugnara Properties Six.

17   THE COURT:  All right.  Are you thinking clearly

18   today?

19   THE DEFENDANT:  Yes.

20   THE COURT:  Are you under the influence of any

21   alcohol, medicine or narcotic?

22   THE DEFENDANT:  No.

23   THE COURT:  Is there any medicine you should be taking

24   but forgot to take?

25   THE DEFENDANT:  No.

1      THE COURT:  Are you being treated for any kind of

2   mental illness?

3      THE DEFENDANT:  No.

4      THE COURT:  Do you think you are mentally ill?

5      THE DEFENDANT:  No.

6      THE COURT:  I have to ask these questions, because

7   sometimes people plead guilty and then try to get out of their

8   guilty plea on the ground that they were mentally ill.

9      So you're feeling fine?  You're thinking clearly

10  and so forth?

11     THE DEFENDANT:  I'm feeling as fine as one could feel

12  under these circumstances.

13     THE COURT:  Are you thinking clearly?

14     THE DEFENDANT:  Yes.

15     THE COURT:  All right.  That's the key.

16     Now, I want to turn to this case for a moment.  You

17  were charged here, it looks like with filing false tax

18  returns for the year 2000.

19     Were you aware of that?

20     THE DEFENDANT:  Yes.

21     THE COURT:  Are you aware of the charge, and did you

22  discuss the charges with your lawyer, Mr. Wine?

23     THE DEFENDANT:  Yes.  The government cited it was

24  17-and-a-half million dollars.

25     THE COURT:  But have you gone over with your lawyer

Case3:08-cr-00222-WHA Document159 Filed03/22/11 Page11 of 76
Case: 10-10286 02/22/2011 Page: 11 of 34 ID: 7656 5 DktEntry: 27-14

10

1    all the possible ways to defend against the case?

2              THE DEFENDANT:  Sadly, yes.

3              THE COURT:  All right.  And are you fully satisfied

4    with the advice and counsel from your lawyer?

5              THE DEFENDANT:  I am.

6              THE COURT:  I understand your willingness to plead

7    guilty is the result of your discussion between your lawyer and

8    the government lawyer that led up to that this agreement.

9              Is that right?

10             THE DEFENDANT:  Valentino.

11             MR. WINE:  "Yes."

12             THE DEFENDANT:  Valentino.

13             THE COURT:  What does that mean?

14             THE DEFENDANT:  Oh, just Valentino.

15             You want to know what it means?

16             THE COURT:  No.  The answer is either yes or no.

17             I understand your willingness to plead guilty is

18   the result of a discussion between your lawyer and the

19   government lawyer that led up to this agreement --

20             THE DEFENDANT:  Yes.

21             THE COURT:  -- plea agreement; right?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And did you read this agreement?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Did you understand it?

Case3:08-cr-00222-WHA  Document159  Filed03/22/11  Page12 of 76
Case: 10-10286  02/22/2011  Page: 12 of 34  ID: 7656775  DktEntry: 27-14

11

1          THE DEFENDANT:  Yes.

2          THE COURT:  Did you talk it over with your lawyer?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Wine, you don't have to shake your

5    head yes or no.

6          MR. WINE:  I'm sorry.  I know.

7          THE COURT:  Mr. Brugnara is the CEO of a company.  If

8    I can't ask a clear question he will ask me to repeat it.

9          Right?

10          THE DEFENDANT:  Yes, sir, your Honor.

11          THE COURT:  So you answer this -- it's important to me

12    that you understand what you're doing.

13          THE DEFENDANT:  And that's why I said what I said, and

14    I'm doing this plea with full, sound mind.

15          I was surprised the way criminal tax court

16    sentences if they are found guilty.  That's the honest to

17    God -- I'm here under penalty of perjury.  I'm being honest

18    with you, your Honor.

19          THE COURT:  Look -- all right.

20          THE DEFENDANT:  And that's part of the plea.

21          THE COURT:  Okay.  Now, did you -- does this

22    agreement -- did you sign this agreement?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you understand the agreement?

25          THE DEFENDANT:  I do.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page13 of 76
Case: 10-10286   02/^2/2011   Page: 13 of 34   ID: 7656^^5   DktEntry: 27-14

12

1        THE COURT:  Did you talk it over with your lawyer?

2        THE DEFENDANT:  I did.

3        THE COURT:  Does this agreement contain your full

4   agreement with the government, or do you think you have some

5   side deal with the government?

6        THE DEFENDANT:  Well, there were two items in here.

7   One was -- well, you just brought up to the attention -- well,

8   one that should have been included about the --.

9        THE COURT:  With the caveats of what we've talked

10  about --.

11       THE DEFENDANT:  There's one -- your Honor, there was

12  one about self-surrender --

13       MR. WINE:  We were going to put that on the record,

14  your Honor.

15       THE DEFENDANT:  -- that was supposed to be on the

16  record.  It wasn't --

17       THE COURT:  Other than that, does this agreement have

18  your full agreement with the government?

19       THE DEFENDANT:  Yes, your Honor.

20       THE COURT:  All right.  So what I want to do now -- by

21  the way, are you CJA in this case?

22       MR. WINE:  No, your Honor.

23       THE COURT:  You're retained?

24       MR. WINE:  I am.

25       THE COURT:  So I want to go through the -- what will

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page14 of 76
Case: 10-10286   02/??/2011   Page: 14 of 34   ID: 7656?^5   DktEntry: 27-14

13

1    happen if you do plead guilty.  That's step one.  Step two,

2    we'll back up and go through your right to go to trial to make

3    you understand you've got the right to go to trial; all right?

4                THE DEFENDANT:  Yes.

5                THE COURT:  So let's go through step one.

6                Step one is that you -- it says here that you want

7    to plead guilty to violating -- filing false tax returns for

8    the year 2000 in violation of 26 U.S.C. 72061.  And here are

9    the elements of this offense:

10               One, that the defendant made and subscribed to income

11   tax returns that contained false information as to a material

12   matter;

13               Number two, that the defendant knew the information

14   was false;

15               Number three, that the return contained a written

16   declaration that it was being signed subject to penalties of

17   perjury;

18               And four, in making and filing the tax return the

19   defendant acted willfully.

20               So those are the elements; okay?

21               The maximum prison term under the statute is three

22   years; maximum fine of 250,000; maximum supervised release term,

23   one year.  Has a mandatory special assessment of $100, and

24   restitution has been calculated here at three forty-three zero

25   thirty-eight, plus interest.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page15 of 76
Case: 10-10286   02/??/2011   Page: 15 of 34   ID: 7656?^5   DktEntry: 27-14

14

1          You understand all that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now, even though the maximum prison

4   sentence is three years, you have kind of a special deal in your

5   plea agreement, and that is, if I -- if you get a sentence

6   within 18 to 24 months, you're stuck with it.  But if it's more

7   than 24 months -- and I don't know what it'll be yet because

8   we've got to go through the sentencing hearing -- but if it is

9   more than 24 months then you would have the right to get out of

10  this plea agreement and go to trial -- go back to square one.

11         Understand?

12         THE DEFENDANT:  Yes.

13         THE COURT:  So, I want you to understand the procedure

14  that we've got to go through to decide on what is the right

15  sentence.

16         I know that the government had agreed to recommend

17  the low end.  That's fine.  That's a recommendation, and your

18  lawyer is going to recommend that too.

19         But the judge also has a duty here, and the judge

20  and probation -- probation first will do a report on you

21  called a "presentence report."  I wish I had one here to show

22  you, but it's a pretty thick document, maybe 20 pages, single

23  spaced.  It's a big write-up about you, your history, what

24  happened in this case, your entire criminal history, which

25  hopefully will be very -- nothing.  And then we come back

Case3:08-cr-00222-WHA  Document159  Filed03/22/11  Page16 of 76

1  here and we go over any errors in there.  We hear from

2  everyone, including you, on what is the right sentence in

3  your case.

4          So let's say that at the end of the day I decide that

5  it's a sentence that falls within 18 to 24 months, which may

6  happen.  Then you would be stuck with that sentence, because

7  that's what you -- you pled guilty, and you don't have a right

8  to get out of your plea if the sentence comes out in that range.

9          On the other hand, if the Court were to give you 25

10 months or even 24 months and one day, then you would have the

11 right automatically to say, "I don't want that sentence.

12 I'll take my chances at trial" -- take back your guilty plea

13 and go to trial.

14          Okay?  You got that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  I need -- I cannot tell you what the

17 sentence is going to be because I haven't read the presentence

18 report for the obvious reason it hasn't even been prepared, so I

19 don't know what the underlying facts and circumstances here

20 were.  I don't know what other considerations need to be taken

21 into account.

22          I have to -- here's what I have to take into account.

23 I have to take into account the guidelines.  So we got to do a

24 guideline calculation.

25          THE DEFENDANT:  I know too much about the guidelines.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page17 of 76
Case: 10-10286   03/22/2011   Page: 17 of 34   ID: 7656715   DktEntry: 27-14

16

1      THE COURT:  All right.  All right.

2      But in addition I have to take into account the

3  need for deterrence, the need to promote serious respect for

4  the law.  There's a laundry list of things that Congress has

5  come up with that I have to take into account, and I do it in

6  every case.  A careful consideration goes into each one.

7      So, while you cannot count on being sentenced in this

8  range, what you can count on is that if you're not sentenced in

9  that range or you get a worse sentence for some reason you can

10  say, "I want out of that.  I want to go to trial."  We'd allow

11  you then to take back your plea of guilty and take your chances

12  at trial.

13      I guess the government has the right to -- in one

14  case I decided it was too harsh.  I went below the agreement.

15  So the government, I guess, would have a right in that case

16  to take back the -- and go to trial; understand?  So they

17  have the right to go the other way if I decide to go below

18  the indicated range; all right?

19      THE DEFENDANT:  Yes, your Honor.

20      THE COURT:  So it works both ways.

21      This is a felony that you would be pleading guilty

22  to.

23      Do you understand that?

24      THE DEFENDANT:  Yes, your Honor.

25      THE COURT:  All right.  You would be known the rest of

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page18 of 76
Case: 10-10286   03/22/2011   Page: 18 of 34   ID: 7656705   DktEntry: 27-14

17

1   your life as a convicted felon; you understand that?

2              THE DEFENDANT:   (Nods head.)

3              THE COURT:   It may be a hard thing to digest, but if

4   you've never been convicted of anything I want you to be aware

5   of that.

6              THE DEFENDANT:   Your Honor, that's why I said the word

7   "Valentino," because sadly -- please -- and I'm a CEO.   I'm a

8   businessman in this criminal tax court, and my real estate

9   attorney is also a judge.   He was shocked by the Valentino

10  ruling, where tax loss is not calculated by actual tax loss but

11  gross income without the benefit of any deductions.   And that

12  was upheld in the Ninth Circuit like three or four times.

13             I've made 50, 60 million dollars in one year.   I'd

14  be looking at nine years under the federal sentencing

15  guidelines if I'd lost in a jury as opposed to the actual

16  loss, which they said was 17-and-a-half million dollars.

17  It's a hundred grand.

18             I have four little children.   I don't have the

19  luxury of sitting here and gambling seven years of my life

20  with four small children irrespective of any of this.

21             And that's the law; you know, it's a Ninth Circuit

22  law for Federal Sentencing Guidelines.   I know you can go

23  below the guidelines, but my understanding is judges usually

24  stay within the guidelines, so, you know, I'm stuck.

25             That's the why life goes, you know.   That's the way

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page19 of 76
Case: 10-10286   02/22/2011   Page: 19 of 34   ID: 7656^^5   DktEntry: 27-14

18

1  it is, and they said I owed seventeen five -- I owe a

2  hundred, but if I get convicted I go for eight years under

3  the guidelines.

4          Is it fair?  I don't think it's fair, but it's the

5  way the law is, and I take this plea based on the law --

6  based on my full understanding of the law.

7          Sadly, I understand it probably better than a lot

8  of attorneys now, because I've studied it.  It's

9  unbelievable.  It's incredulous.  Two judge friends of mine

10  said it's a -- Valentino is an incredulous ruling, because

11  you take what is an actual tax loss, which is a hundred

12  grand, and you calculate it based upon the fact that it's

13  8,000 percent higher for guideline purposes, and those are

14  the guidelines.

15          So that obviously wasn't intended for somebody who

16  had 50 million dollars of income with a

17  hundred-thousand-dollar loss, but sadly, I'm stuck with that

18  ruling in the Ninth Circuit.

19          THE COURT:  All right.  There's no such thing as

20  parole, so if you get sentenced to X months in prison you serve

21  all X months unless you get a tiny little bit of a discount for

22  good behavior.

23          Do you understand that part?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Okay.  Being convicted of a felony

Case3:08-cr-00222-WHA    Document159    Filed03/22/11    Page20 of 76
Case: 10-10286  0?/?2/2011   Page: 20 of 34   ID: 7656??5   DktEntry: 27-14

19

1    might --- might -- it will certainly have some collateral

2    consequences.

3            You could not serve on a jury.  There are certain

4    public offices you cannot hold.  You can never have a gun

5    again.  You can never have ammunition the rest of your life.

6            Do you understand that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Okay.  Now, let's change the subject.

9            If -- you don't have to plead guilty.  You have the

10   right to go to trial and make the government prove its case.

11   And you get to be here to see and hear all the witnesses

12   against you.

13           If you can't afford a lawyer we would appoint one

14   at no cost to you.  You would work with your lawyer for the

15   best possible cross-examinations of those witnesses.  The

16   government could not call you as a witness in the case.

17           You understand that?

18           THE DEFENDANT:   (Nods head.)

19           THE COURT:  You don't have to prove anything.  You

20   don't have to prove you're innocent.  They have to prove you're

21   guilty beyond a reasonable doubt.

22           Understand?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  When the government has rested its case

25   you have the right to put on a defense, but you don't have to,

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page21 of 76
Case: 10-10286   03/22/2011   Page: 21 of 34   ID: 7656105   DktEntry: 27-14

20

```
 1  because the burden is never on you.  It's always on the
 2  government.
 3            But if you chose to put on a defense, that would be
 4  fine.  We would subpoena whoever you wanted.  We would
 5  obligate them to tell the truth by putting them under oath.
 6  In addition, you could testify in your own defense.
 7            You understand that part?
 8            THE DEFENDANT:  Yes.
 9            THE COURT:  And if you chose to testify, that'd be
10  fine, too, and we would go to the extra step of telling the jury
11  that you have a constitutional right not to testify, and that
12  the jury cannot use it against you in any way because you
13  exercise that right.
14            Understood?
15            THE DEFENDANT:  Yes, your Honor.
16            THE COURT:  All right.  At the end of all the evidence
17  then the jury has got to go into the jury room and decide
18  whether the government has proven its case beyond a reasonable
19  doubt as to each and every element of the offense.
20            If even one person on the jury thought that you --
21  the government had not proven its case as to even one
22  element, that jury could not convict you.
23            Do you understand?
24            THE DEFENDANT:  Yeah.  The jury instructions we were
25  given a copy of.
```

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page22 of 76
Case: 10-10286   03/22/2011   Page: 22 of 34   ID: 76565   DktEntry: 27-14

21

1           THE COURT:  You what?

2           THE DEFENDANT:  We were given a copy of the jury

3    instructions.

4           THE COURT:  You do?

5           THE DEFENDANT:  We were given -- yes.

6           THE COURT:  I haven't done any jury instructions.

7           MR. WINE:  These are the proposed jury -- he's -- the

8    proposed jury instructions the government filed -- a copy was

9    given to Mr. Brugnara.  So he understands the jury's duties in a

10   case like this.

11          THE COURT:  Well, those are just the government's

12   versions.  Those aren't all the versions.

13          MR. WINE:  That's true.  That's true.

14          THE COURT:  I don't know whether I would adopt those

15   or not.

16          MR. WINE:  That's correct.  He knows that.

17          THE COURT:  All right.

18          If the jury -- on the other hand if the jury did

19   decide the government had proven its case beyond a reasonable

20   doubt to the satisfaction of all 12 people, then the jury

21   would be obligated to convict you; right?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  So then you would have the right to appeal

24   both the verdict as well as any sentence.

25          So do you understand all of those rights?

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page23 of 76
Case: 10-10286   02/22/2011   Page: 23 of 34   ID: 7656175   DktEntry: 27-14

22

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Now, here's one of the key

3    things:  If you plead guilty today there will be no trial and

4    you will be giving up all of those rights.

5          Understand?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  So you would be going straight to guilty

8    and giving up your right to go to trial.

9          THE DEFENDANT:  With eight years in the balance if we

10   go to trial with the sentencing guidelines.

11         THE COURT:  I don't know what the sentence would be,

12   but, you know, you would have to make whatever calculated

13   decisions you want to make.

14         THE DEFENDANT:  That's what it is.

15         THE COURT:  Fine.  But is this a guilty plea or a nolo

16   plea, Mr. Wine?

17         MR. WINE:  It's a guilty plea.

18         THE COURT:  So then you would also be giving up your

19   right to take any appeal.

20         Understand?

21         THE DEFENDANT:  Yes.

22         THE COURT:  So if you got the high end of this range

23   you would be stuck with it and there would be no appeal;

24   understand?

25         THE DEFENDANT:  Yes.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page24 of 76
Case: 10-10286   02/22/2011   Page: 24 of 34   ID: 7656   5   DktEntry: 27-14

23

1          THE COURT:  You would also be unable to even file a

2   habeas corpus.  The only thing you could file would be a

3   collateral attack saying that you didn't get adequate advice

4   from counsel.  It's very hard to prove.

5          So you're basically out of luck if you plead

6   guilty.

7          Understand?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Okay.  Do you want to give those rights up

10  to go to trial freely and voluntarily?

11         THE DEFENDANT:  Give up -- sorry, your Honor?

12         THE COURT:  All right.  You understand your right to

13  go to trial and all those rights that I described to you a

14  moment ago?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And you know that if you plead guilty you

17  will be giving those rights up?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you want to do that freely and

20  voluntarily?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Is anyone putting pressure on you to plead

23  guilty?

24         THE DEFENDANT:  No.

25         THE COURT:  All right.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page25 of 76
Case: 10-10286   02/  /2011   Page: 25 of 34   ID: 76561^5   DktEntry: 27-14

24

1           I'm now going to read to you what's in this

2   statement about what you did wrong.  I have to go through and

3   paraphrase, and you tell me if it's correct or not.

4           It says here that you've been the sole shareholder

5   and owner of Brugnara Corporation since 1994.

6           Is that true?

7           THE DEFENDANT:  Yes.

8           THE COURT:  From its inception Brugnara Corporation

9   has been in the business of acquiring and renting real property

10  in the San Francisco area and elsewhere through several other

11  entities that you created called "Brugnara Properties One

12  through Six"; true?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Starting in February '98 the IRS requested

15  copies of your individual income tax returns from 1990 through

16  '96; true?

17          THE DEFENDANT:  Yes.

18          THE COURT:  That was in addition to copies of tax

19  returns for Brugnara Corporation; true?

20          THE DEFENDANT:  Yes.

21          THE COURT:  You returned those notices to the IRS with

22  a notation indicating that the tax returns were already filed.

23          True?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Around the same time you applied for a

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page26 of 76
Case: 10-10286   02/22/2011   Page: 26 of 34   ID: 7656175   DktEntry: 27-14

25

1    gaming license to operate a casino after acquiring the Silver

2    City Casino in Las Vegas; true?

3              THE DEFENDANT:  Yes.

4              MR. WINE:  Is that true?

5              THE DEFENDANT:  Yes.

6              THE COURT:  In March 2000 an investigation was

7    commenced by the Nevada Gaming Control Board as part of your

8    application for a Nevada gaming license; true?

9              THE DEFENDANT:  Yes.

10             THE COURT:  The background investigation included an

11   inspection of your federal and state tax files; true?

12             THE DEFENDANT:  Yes.

13             THE COURT:  During the background check the

14   investigating officers were told by the IRS that you had not

15   filed tax returns from 1991 through '98; true?

16             THE DEFENDANT:  Initially, yes.

17             THE COURT:  As part of that investigation you hired an

18   independent accounting firm to prepare an opening cash statement

19   to review -- to review your individual income tax returns for

20   1993 to 1999; true?

21             THE DEFENDANT:  Yes.

22             THE COURT:  On those returns you attached to the IRS

23   form 1040 a copy of a document entitled "Schedule E," which you

24   prepared; true?

25             THE DEFENDANT:  Yes.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page27 of 76
Case: 10-10286   02/??/2011   Page: 27 of 34   ID: 76561??   DktEntry: 27-14

26

1           THE COURT:   On that form you listed total rental

2    income for all properties and did not specifically account for

3    each individual property that was rented; true?

4           THE DEFENDANT:   Yes.

5           THE COURT:   After reviewing those returns in March of

6    2001 the accountants you hired prepared a detailed report

7    stating that you were required to one, file partnership tax

8    returns even if that entity earned no income; two, file

9    corporate tax returns even if the corporation earned no income;

10   three, prepare forms Schedule K; four, file a form Schedule E

11   with your tax returns; and five, report the sales of any

12   business property you sold during any year, including the Market

13   Street, Polk Street, and Mission Street properties.

14          Is that all true?

15          THE DEFENDANT:   Yes.

16          THE COURT:   Now, turning to the year 2000 Federal

17   Income Tax Return.

18          You filed with the Internal Revenue Service a copy of

19   your 2000 Federal Income Tax Return, a 1040, on or about

20   April 18, 2002; true?

21          THE DEFENDANT:   Yes.

22          THE COURT:   You signed under penalty of perjury under

23   a jurat confirming that the information was true and correct.

24          Is that right?

25          THE DEFENDANT:   Yes.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page28 of 76
Case: 10-10286   02 /2011   Page: 28 of 34   ID: 76561 5   DktEntry: 27-14

27

1          THE COURT:  On January 5 and 13, 2000, you sold real

2    properties located at 810 through 814 Mission Street and 935 to

3    939 Market Street respectively; true?

4          THE DEFENDANT:  Yes.

5          THE COURT:  You did not list the sales on these

6    properties -- I'm sorry -- you did not list the sales -- I think

7    that should be "of these properties" on your 2000 Federal Income

8    Tax Return that was filed with the IRS; true?

9          THE DEFENDANT:  It was shown on the 2002 return.

10         THE COURT:  I'm sorry?

11         THE DEFENDANT:  They were shown on the 2002 return.

12         THE COURT:  On the 2002.  But how about the 2000?

13         THE DEFENDANT:  No.  They weren't shown on the 2000

14   return.

15         THE COURT:  All right.  And this you knew that you

16   were required to provide on the form 1040 for 2000.

17         Did you know that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  Well, if you sold them in the

20   year 2000, you know, that's in the year that you're supposed to

21   report it; right?

22         THE DEFENDANT:  Well, at the exchange that --

23   apparently it was done wrong on the 1031 exchange.  It wasn't

24   done properly.

25         THE COURT:  Well, look, it says here -- and you got to

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page29 of 76
Case: 10-10286   02/22/2011   Page: 29 of 34   ID: 7656105   DktEntry: 27-14

28

1    tell me if it's not true.  It says here that you sold the real

2    properties in 2000; in fact, in January of 2000.

3              THE DEFENDANT:  Correct.  January 2000.

4              THE COURT:  So are you going to stand by that, or are

5    you going to back away?

6              THE DEFENDANT:  No, no.  Absolutely.

7              THE COURT:  So if you sold it in the year 2000, that's

8    the tax year you've got to account for; right?

9              THE DEFENDANT:  Well, that's -- as I understand it

10   that's what it has to be unless it --

11             THE COURT:  All right.  And you knew at the time that

12   you were required to report that on your 1040 for 2000?

13             Yes or no?

14             THE DEFENDANT:  Well, I understand that now.

15             THE COURT:  It says here that you knew it then.

16             Did you know it then?

17             THE DEFENDANT:  This is the plea that I accept here,

18   your Honor, and I understand that that's what it needs to show.

19   It's shown on the 2002 returns.  It should have shown on the

20   2000 return.

21             THE COURT:  Do you acknowledge that you knew back then

22   that your 1040 form for 2000 was supposed to list those sales in

23   question?

24             THE DEFENDANT:  That's what I understand.

25             THE COURT:  Did you understand that then?

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page30 of 76
Case: 10-10286   02 ?/2011   Page: 30 of 34   ID: 7656? ?   DktEntry: 27-14

29

```
 1              THE DEFENDANT:  That was ten years ago.  I guess
 2  that's what I understood then.
 3              THE COURT:  All right.  Number -- next -- I guess
 4  that's the end of it.
 5              Anything more you want to add to this, Counsel?
 6              MR. WINE:  No, your Honor.
 7              MR. NEWMAN:  No, your Honor.
 8              THE COURT:  Do you have any questions for me, Mr.
 9  Brugnara?
10              THE DEFENDANT:  No, your Honor.
11              THE COURT:  You want more time to think about it, or
12  do you want to go ahead?
13              THE DEFENDANT:  I mean, if I can make any comment on
14  the record I think the case precedent for sentencing guidelines
15  since Valentino and its -- you know, it just makes this a
16  non-starter.
17              You've got guidelines based upon 15 million dollars
18  of tax loss when the actual tax loss is a hundred grand, so
19  how can anybody with any common sense who is a CEO, who has
20  four small children expose himself to a sentencing guideline
21  of eight years?  You'd have to be nuts to do that.
22              (There was a discussion off the record.)
23              THE DEFENDANT:  No, listen.  I respect you.  I'm just
24  telling you the truth.  I mean, this is under penalty of
25  perjury.
```

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page31 of 76
Case: 10-10286   02/22/2011   Page: 31 of 34   ID: 7656105   DktEntry: 27-14

30

 1          THE COURT:  Listen, there's some things about the
 2   guidelines I don't like either.  There's some aspects of the law
 3   that sometimes I think personally is misguided.  But I've taken
 4   an oath to uphold the law, and that's what I do.
 5          So, you know, what can I say?  You're here to
 6   either plead guilty or not.  You know you have the right to
 7   go to trial.
 8          THE DEFENDANT:  I know, your Honor.
 9          THE COURT:  Nobody here is twisting your arm --
10          THE DEFENDANT:  I understand that, your Honor.
11          It was like -- watching the move with Mel Gibson,
12   "The Patriot," the other night with my kids, it's like, you
13   know, when you have four small children a lot of times you
14   don't have a lot of luxuries that you might otherwise have.
15          I do have four small children, so that's just the
16   way life goes.  I mean, you have to look at the facts, the
17   guiding laws and -- you know, you have to do what's best for
18   your family, and that's what I'm doing.
19          THE COURT:  All right.  You're prepared to go forward
20   now?  I'll ask you the official question.
21          You want to go forward?
22          THE DEFENDANT:  Yes.
23          THE COURT:  All right.
24          So, I am going to ask you now:  How do you plead to
25   Count One of the indictment charging you with filing false

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page32 of 76
Case: 10-10286   0? `?/2011   Page: 32 of 34   ID: 7656′ `5   DktEntry: 27-14

31

1    tax returns for the year 2000 and in violation of 26 U.S.C.

2    72061 -- guilty or not guilty?

3              THE DEFENDANT:  Guilty.

4              THE COURT:  Mr. Brugnara, I'm going to do what you

5    asked me to do.  I'm going to find that you're fully competent

6    and capable of entering an informed plea; that you are aware of

7    the nature of the charge against you and the possible

8    consequences of pleading guilty; that your plea of guilty is

9    knowing and voluntary and supported by an independent basis in

10   fact.

11             So that part is now done, and I'm going to accept

12   your plea of guilty and adjudge you convicted of violating

13   72061 as charged, and so that step is out of the way.

14             I will now refer you to the Probation Department

15   for the preparation of the presentence report, and you'll get

16   a chance to go over that and comment on it.  We'll come back

17   here for a full hearing to decide what the right outcome is.

18             So what is our sentencing date?

19             THE CLERK:  August 18th, your Honor, at 2 p.m.

20             THE COURT:  Is that a date that I'm here?

21             THE CLERK:  Yes, your Honor.

22             THE COURT:  Okay.  August 18th.

23             Did you say the 18th at 2 p.m.?

24             THE CLERK:  Yes, your Honor.

25             THE COURT:  Does that work for you?

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page33 of 76
Case: 10-10286   0/   2/2011   Page: 33 of 34   ID: 7656   DktEntry: 27-14

32

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now, you got to be here that day.  Your

3   lawyer has to be here --

4          THE DEFENDANT:  Your Honor, I also want to apologize

5   about what happened on Tuesday.

6          I was not -- my understanding was that the

7   designated court date wasn't on Tuesday.  It was later.  And

8   there was a mix-up as to the mandatory nature of it.  I would

9   never disrespect you or the Court, not being at a mandatory

10  date.

11         THE COURT:  All right.  I accept that, but you're on

12  an order to be at your sentencing date.  So please, no confusion

13  on that.

14         Mr. Wine, you make sure that Mr. Brugnara gets

15  plenty of notice and plenty of reminder to be here, and so

16  we'll see you on that occasion.

17         MR. WINE:  Great.  Thank you, your Honor.

18         MR. NEWMAN:  Thank you, your Honor.

19         (The proceedings were concluded at 10:47 a.m.)

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, CHRISTINE TRISKA, Pro-Tem Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in CR08-00222 WHA, USA v. Brugnara, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_/S/ Christine Triska___

Christine Triska, CSR 12826, CSR, RPR

Tuesday, June 9, 2009

# EXHIBIT N

Pages 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR. 08-0222-WHA |
| ) | |
| LUKE BRUGNARA, ) | |
| ) | San Francisco, California |
| Defendant. ) | Tuesday |
| ) | January 26, 2010 |
| ) | 4:00 p.m. |

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:          United States Attorney's Office
                        9th Floor, Federal Building
                        450 Golden Gate Avenue
                        San Francisco, CA  94102
                        (415) 436-6805
                BY:  THOMAS M. NEWMAN

For Defendant:          Law Offices of Harris B. Taback
                        235 Montgomery Street - Suite 942
                        San Francisco, California  94104
                        (415) 565-0110
                BY:  HARRIS BRUCE TABACK

Reported By:    Lydia Zinn, CSR #9223, RPR
                Official Reporter - U.S. District Court

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page37 of 76
Case: 10-10286   03/22/2011   Page: 3 of 39   ID: 76561   DktEntry: 27-15

2

1          THE CLERK:  Calling Criminal Number CR. 08-222,

2    United States versus Luke Brugnara.  Counsel, can you please

3    state your appearances?

4          MR. NEWMAN:  Good afternoon, your Honor.  Tom Newman,

5    on behalf the United States.

6          MR. TAYLOR:  Harris Taback, appearing on behalf of

7    Mr. Brugnara, who's in custody, and will be brought out here

8    momentarily.  He is now you present before your Honor.

9          THE COURT:  Mr. Brugnara, welcome back.

10          All right.  We're here in which matter?  Which matter

11    are we -- Dawn, which case number did you call?

12          THE CLERK:  08-222, which is the only one we have.

13          THE COURT:  All right.  All right.  Very well.  So

14    what are we here for?

15          MR. TABACK:  Your Honor, it's my understanding that

16    Mr. Brugnara wishes to essentially enter into an open plea to

17    Counts One through Three.  The Government will be dismissing

18    Count Four at the time of sentencing.

19          There are other aspects to this that are in the

20    change of plea form that, once Mr. Brugnara signs, I will then

21    provide to the clerk.  So you could proceed.

22          THE COURT:  All right.  Is is that basically correct,

23    Mr. Brugnara?

24          THE DEFENDANT:  Yes.  Basically, I wanted to put a

25    few things on the record.  I'm sure we we'll get into it.

3

1        THE COURT:  Well, I -- before you sign some document,

2   if you have a speech that you want to make, you'd better make

3   it.

4        I don't know.  Do you want your client to be making

5   statements on the record?

6        MR. TABACK:  No.  I think what -- the way it would be

7   appropriate is, assuming he signs this, my recommendation would

8   be that we proceed.  And if there be -- if there are any issues

9   that come up, you first bring it to my attention, and we'll

10  deal with it, but I'm expecting --

11       THE COURT:  All right.  Fine.  We'll do it that way.

12       THE DEFENDANT:  I'm just telling you what I was told.

13       MR. TABACK:  We'll get to that.

14       THE DEFENDANT:  Okay.  I understand.

15       MR. TABACK:  If you want to sign it, sign it.

16       THE DEFENDANT:  I want to see how you want to deal

17  with it; whether you want it written, or how you want to deal

18  with it.

19       Essentially, the terms are correct in this document.

20       I was, just to let you know, taken from

21  Judge Chesney's courtroom on Friday, the eve of the trial --

22  the eve of the fish trial -- for purportedly some secondhand

23  comment that someone said I made.  And I still don't know what

24  the facts are of that, but I just wanted to explain this,

25  because, as you know, for two years I've come to you properly

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page39 of 76
Case: 10-10286   03/22/2011   Page: 5 of 39   ID: 76561   DktEntry: 27-15

4

1  dressed.  And, you know, I take a lot of pride in, you know,
2  who I am.  So I just wanted to let you know that.
3        Now, this is basically a global resolution, as I
4  understand it.  And it is settles the fish case.
5        Whatever this new charge is -- again, I haven't even
6  seen it.
7        And -- and the tax case -- I was told by Tom Newman
8  that essentially, because -- you know, because I'm pretty adept
9  at -- because we've been doing this for so long, that -- I
10  asked him what the tax loss was, for the sentencing-guidelines
11  purposes.  And he said, you know, where we're at now, it was
12  the same as it was a few months ago when it was that number;
13  you know, that was the guidelines of 18 to 24 months, when
14  there was a protective plea.  I understand this isn't a
15  protected plea, because you said you won't accept that.  And I
16  understand that, but I just wanted to make sure that, from a
17  guideline standpoint, that there wasn't any change.  I haven't
18  had any communication with my attorney over whether there's any
19  been new information.
20        THE COURT:  We're not going to do this, Mr. Brugnara.
21        THE DEFENDANT:  I'm sorry?
22        THE COURT:  I'm not going to take any --
23        You either plead guilty to the indictment against
24  you, or we go to trial.  None of these qualifications will
25  matter.

5

1          You are -- how many years is he looking at in prison?

2          MR. NEWMAN:  With a superseding indictment, it's 12

3   years, your Honor.

4          THE COURT:  You're looking at 212 years in prison.

5   I'm not going to be bound on the guidelines.  I'm not going to

6   be bound by anything that you've just said.  And if you don't

7   like it, you don't have to plead guilty; but if you plead

8   guilty, you're going to be pleading open, meaning:  no

9   conditions.

10          THE DEFENDANT:  And it could be zero.  It could be at

11   the highest.

12          THE COURT:  It could be zero.  You could go get

13   probation.

14          THE DEFENDANT:  Yeah, I know.  And that's --

15          THE COURT:  But -- but you could get twelve years,

16   and you need to realize that.

17          MR. TABACK:  Well, your Honor, if I may, what the

18   Government will be doing at the time of sentencing is

19   dismissing Count Four.

20          He's pleading guilty as to Counts One, Two, and

21   Three, so it's a nine-year max.

22          THE COURT:  Let's assume that it's nine years; that

23   the Government did that, if it's an open plea to Counts One,

24   Two, and Three.  And the Government says that they will dismiss

25   Number Four.  Is that right?

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page41 of 76
Case: 10-10286   03/22/2011   Page: 7 of 39   ID: 76561   DktEntry: 27-15

6

1          MR. NEWMAN:  That is correct.

2          THE COURT:  All right.  Okay.  I'm going to put it

3  this way.  You're looking at up to nine years.

4          I am not going to be bound by anything having to do

5  with guidelines.

6          THE DEFENDANT:  But it also could be zero, like you

7  just said.  Also --

8          THE COURT:  It could be zero, yes.

9          THE DEFENDANT:  I mean, it could be zero.  It could

10  be nine, but, you know, I mean, they could bring five more

11  charges tomorrow, and it could be 35.  I mean, listen.  I'm not

12  going to fight the Government anymore.  Okay?  That's really

13  the gist of why we're here.  I'm not fighting anymore -- okay?

14  -- because I'm not going to win.  And that is the one thing I

15  wanted.

16          You cannot beat the federal government.  If they're

17  going to want their way, that's just the way it's going to be.

18  Okay?

19          And I'm a pretty good businessman.  And I've done a

20  billion dollars of deals from scratch.  And I'll tell you,

21  you're not going to -- you can't -- you can't -- you can't

22  conduct it that way, because it just -- it's just -- it's

23  futile.

24          THE COURT:  I see people.  When they're truly

25  innocent, they win their cases.  The Government can't prove

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page42 of 76
Case: 10-10286   0?  2/2011   Page: 8 of 39   ID: 76561   DktEntry: 27-15

7

1    somebody guilty when they're really innocent.

2         **MR. TABACK:**  Could I have one moment, your Honor?

3         **THE COURT:**  Yes.

4         (Discussion off the record)

5         **THE DEFENDANT:**  You don't need to tell me.  I know

6    what I'm saying.

7         No.  I understand what you said, your Honor.  And

8    that may be true.  And it may be true on one case; but then if

9    there's another case, how many times do you have to win?

10        And the bottom line is, if you've done as much

11   business as I've done -- I mean, you know, you're talking about

12   a billion dollars of deals.  You back if you, I mean, if you

13   have enough time, and go through every single thing --

14        Listen.  I'm here to plea this out and to say,

15   "Listen.  If you think it's zero, it's zero.  If you think it's

16   nine, it's nine."  I trust you; that you're a fair judge.

17   That's one thing that I honestly, a hundred percent -- I

18   believe you're a fair person.  I think you're -- and you'll do

19   what you know is right.

20        So I'm prepared to sign this; that it's guilty, as

21   this document says.  I'm going to sign it right now.  Here's my

22   name on it.

23        It was -- just to let you know, it was my idea.

24   This -- you know, just so there's no -- this wasn't done

25   coming -- I said it.  It was my proposal, just to wrap this up.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page43 of 76
Case: 10-10286   03/22/2011   Page: 9 of 39   ID: 7656105   DktEntry: 27-15

8

1   And, you know, it was my -- it was -- you know, it was my idea.

2   Just, you know, that's it.

3        (Whereupon a document was tendered to the Court)

4        THE COURT:  I have to ask you some questions.  So

5   stand in the middle and raise your right hand and be sworn.

6                    LUKE DOMINIC BRUGNARA,

7        having been duly sworn, testified as follows:

8        THE COURT:  Well, first I have some questions for the

9   Government.  Let me make sure that the Government is okay with

10  what this says in paragraph 13 of the application.

11        And there is no plea agreement here.  So I want to --

12  there's just an application.  It's written in by hand.

13        Government will dismiss Count Four of the superseding

14  indictment at sentencing.  Government will dismiss criminal

15  information filed against defendant on January 25, 2010, and

16  will not seek indictment in that matter.

17        So far okay?

18        MR. NEWMAN:  Yes.

19        THE COURT:  Then it says Defendant will be released

20  from present custodial status on January 28th, 2010; and the

21  Government will recommend at sentencing that Defendant be

22  permitted to voluntarily surrender to the appropriate

23  Bureau of Prisons designated facility if a prison sentence is

24  imposed.

25        Is that part true?

9

```
 1              MR. NEWMAN:   That is correct.

 2              THE COURT:   And then, finally, it says that the

 3   Government will not file any additional tax charges related to

 4   this investigation or known to exist at this time.   This binds

 5   only U.S. Attorney for the Northern District of California.

 6              Is that true also?

 7              MR. NEWMAN:   That's correct, your Honor.

 8              THE COURT:   All right.   May I have the indictment?   I

 9   don't have that with me.

10              MR. NEWMAN:   Your Honor, I have a copy of the

11   superseding indictment here.

12              THE COURT:   All right.   Oh, I do.   I do have it here.

13   Okay.

14                            EXAMINATION

15   BY THE COURT

16   Q.   Mr. Brugnara, state your full name, please.

17   A.   Luke Brugnara.

18   Q.   Do you have a middle initial?

19   A.   "D."

20   Q.   All right.   What does that stand for?

21   A.   Dominic.

22   Q.   And you know you're under oath now?

23   A.   Yes, I do.

24   Q.   That means you have to tell the truth.   You understand

25   that?
```

Examination by the Court                                    10

1  A.   Yes.

2  Q.   And you can be prosecuted for perjury if you don't tell

3  the truth.  Do you understand that?

4  A.   Yes.

5  Q.   All right.  How old are you?

6  A.   Forty-six.

7  Q.   How far did you go in school?

8  A.   Postgraduate year and a half.

9  Q.   What is your occupation?

10 A.   Real-estate investor.

11 Q.   Are you thinking clearly today?

12 A.   Yes.

13 Q.   Are you under the influence of any medicine, alcohol, or

14 narcotic?

15 A.   No.

16 Q.   Are you being treated for any kind of mental illness?

17 A.   No.

18 Q.   Are you mentally ill?

19 A.   No.

20 Q.   Is there any medicine you should have taken, but forgot to

21 take?

22 A.   No.

23 Q.   All right.  Did you read the charges against you in the

24 superseding indictment?

25 A.   Yes.

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page46 of 76

Examination by the Court                    11

1  Q.   And did you discuss those with your lawyer?

2  A.   Yes.

3  Q.   Is that Mr. Taback?

4  A.   Yes.

5  Q.   And did you go over all of the possible ways to defend

6  against this case?

7  A.   Yes.

8  Q.   Are you fully satisfied with his advice and counsel?

9  A.   Yes.

10  Q.   All right.  Now, other than what is contained in this --

11  this application for permission to plead guilty, have any

12  representations at all been made to you by the United States

13  government or by anyone else as to what the United States

14  government will do in connection with sentencing?

15  A.   I was told today that, again, even though some part of

16  this plea -- that their position as of today was that the tax

17  laws was what it was when we had the last plea.  And there

18  might be some pencil sharpening, you know, fine-tuning, if you

19  want to call it; but it shouldn't affect the guideline from

20  where it was before; not -- as you indicated, it doesn't really

21  matter, because it's an open plea, but you asked for the --

22  what was said, and that was what was said.

23       THE COURT:  Mr. Newman, what assurances or

24  representations do you make on that point?

25       MR. NEWMAN:  It was not an assurance.

Examination by the Court                    12

1          It was that that the number was what it was on that

2    day, and it may change some, but I don't expect that it may

3    change that more.   I've represented that was an offense level

4    18.   It may go up some, but I don't know what to.   This was an

5    open plea.   The Court can either follow -- the Court will find

6    what the tax law is itself.   So it was not a representation,

7    other than that was an offense level 18 then, and it may very

8    well change because I'm coming out with final numbers.

9    **BY THE COURT**

10   Q.   Is that any different from what you understood,

11   Mr. Brugnara?

12   A.   Well, what he said to me was that -- he -- it went

13   further.   He said to get to the next level, it would have to

14   be, like, a million dollars more.   And they don't expect that

15   to be the case.   And there might be some adjustment one way or

16   another, but not to that extent.

17        **THE COURT:**  Do you have anything -- what do you say

18   to that, Mr. Newman?

19        **MR. NEWMAN:**  The next level was a million-dollar tax

20   loss, but the only thing I said was I don't know if it will

21   change, and to what extent it would change.

22   **BY THE COURT**

23   Q.   All right.   Well, here's what we have to do on this,

24   Mr. Brugnara.

25        I am not going to let you out of a plea or be bound

Examination by the Court                    13

1   by anything that the Government has said on this point.

2        If you don't want to go forward, that's fine.  We'll

3   go to trial.  That's okay with me; but I am -- I am not going

4   to let this be a he-said-she-said situation, which is --

5        So did you hear and understand what Mr. Newman just

6   said?

7   A.   Yes, I heard and understood what he said.  And I also

8   heard what you said, where it's basically irrelevant anyway,

9   because you said you can go --

10  Q.   No.  It's not irrelevant.

11       I listen to what people argue.  If the Government

12  argues for one thing, I pay attention to it, just like I would

13  pay attention to what you argued, or your lawyer argues.

14       And I don't want you later coming and saying that the

15  Government stabbed you in the back by making a stronger

16  argument than they told you about prior to this plea, even

17  though I am free to make my own decision, of course.  So you

18  cannot rely upon anything you remember them telling you prior

19  to entering your plea.

20       If you don't want to go forward, that's fine.  We

21  won't.  All you can rely upon is with a counsel has said on the

22  record today.

23  A.   I understand.  And -- and I believe that Tom Newman has

24  been straight shooter for two years as far as what he has said

25  with Ken Wine and with the new counsel.  And I don't suspect

Examination by the Court                                      14

```
 1   that there will be any surprises, I mean, just based on how
 2   he's acted so far for two years.
 3   Q.   But if there is is a surprise, you're stuck with what he
 4   said today.
 5   A.   Well, but I mean if there is a surprise, I assume that you
 6   would consider it a surprise also, and take that --
 7   Q.   I won't.
 8   A.   Okay.
 9   Q.   I am going to listen to all of the arguments on the
10   merits.  And I am not going to be hamstrung by what you think
11   or the Government thinks was some deal out in the hallway.
12   A.   Mm-hm.
13   Q.   I'm going to -- if they come in and argue for three
14   billion dollars more in loss, I'm going to pay attention to it.
15   And I will not take into account that you think that they were
16   somehow not supposed to make that argument.
17           You understand that?
18   A.   I understand that.  You know, I'm in no position to really
19   negotiate, your Honor.  I'm sitting here, sitting in a dungeon
20   in Oakland, so -- I -- you know, I understand.
21           One thing I can assure you is I understand what
22   you're saying.  And I understand what he says.  And, you know,
23   I'm prepared to --
24   Q.   So are you saying that because you're in jail, that you
25   are unable to make a voluntary and informed decision?
```

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page50 of 76
Case: 10-10286   02/??/2011   Page: 16 of 39   ID: 76567 5   DktEntry: 27-15

Examination by the Court                    15

1  A.    No.   No, I'm not saying that.

2          My -- in fact, this decision was my -- my doing.   I

3  mean, this was my suggestion to resolve these matters.

4          And obviously, whatever anyone's circumstance is is

5  going to weigh how they make decisions and -- in anyone's life

6  on any matter, especially something as important as this.   And

7  people have to look globally, you know, to resolve matters such

8  as this that seem to be never ending.   As you know, when we

9  started this two years ago, it was a couple of matters.   And,

10  you know --

11  Q.    What else, if anything, has the Government promised you or

12  given you assurances on that you haven't mentioned so far?

13  A.    Nothing.   That I would be out of custody by Thursday.

14          MR. TABACK:   That's already been said.

15          THE DEFENDANT:   That's pretty much it.

16          The other case -- Judge Chesney has the resolution in

17  that case.

18  BY THE COURT

19  Q.    All right.   Now I want to go through with you what will

20  happen if you plead guilty today.   You would be pleading guilty

21  to three counts:  One, Two, and Three.   And those counts are --

22  charge you with various tax crimes.

23          The first one is filing a false tax return for the

24  calendar year 2000.

25          Count Two charges you with filing a false tax return

1   for 2001.

2          Count Three charges you with the same thing for 2002.

3          Are you familiar with those counts?

4   A.   I am.

5          THE COURT:  All right.  And a maximum per -- is three

6   years per count?

7          MR. NEWMAN:  Three years per count, your Honor.

8   BY THE COURT

9   Q.   So if you're pleading guilty to things where you could

10  get -- three plus three plus three equals nine.

11  A.   Yes.  And you also said you can do zero, too.  I mean, I

12  understand that you have the authority to do either one.

13  Q.   Yes, but I want to make sure that you understand the

14  procedure that the Court and the lawyers and you will go

15  through to arrive at what is the right sentence, but first I

16  want to make sure you understand the maximum.

17  A.   I do.

18  Q.   All right.  The minimum is zero.  So you would get between

19  zero -- something between either zero -- could be zero -- all

20  the way up to nine years.

21          How would we decide what the right answer?

22          Well, first thing is I would refer you to the

23  Probation Department.  And they would prepare a presentence

24  report.  And you would be interviewed by them.  They would do a

25  whole work-up on your life history.

Examination by the Court                           17

1          Then you would have a chance to review that to make

2    sure it was as accurate as possible.  Then the Government

3    would, too.  Everyone would have a chance at making sure that

4    it was accurate.

5          Then we would come back here for another hearing.

6    And at that hearing the issue on the table is:  what is the

7    right sentence?

8          And here are the two basic categories that I have to

9    consider.  First is what the guideline range is.  That is a

10   factor.  Two things that drive that.  One is what the offense

11   conduct here is, and the other is your life history.  For

12   example, if you've had prior run-ins with the law, that has to

13   be taken into account.  That would even include the fish case.

14         MR. TABACK:  Let him finish first.

15   BY THE COURT

16   Q.   I'm telling you the way it normally works.

17         If there's some prior a different understanding,

18   you'd better let me know.

19   A.   I want to check now.  So we -- my understanding of the

20   resolution is that you're making the sentencing prior to

21   Judge Chesney.  So it's a category one based on whatever you

22   decide.

23         MR. TABACK:  May I address the Court, your Honor, at

24   this time?

25         THE COURT:  Sure.

1        MR. TABACK:  Thank you.

2            What Mr. Brugnara is referring to is that his

3   understanding -- and he understands that it is just my advice

4   to him -- is that if he comes to your Honor prior to being

5   sentenced in the matter before Judge Chesney, and Judge Chesney

6   has agreed that you could proceed first, that what he pled

7   guilty to before Judge Chesney is -- it was my conclusion, but

8   he's not relying on my conclusion as part of his global

9   resolution; it was just advice.  And he understands it's up to

10  the Court to make a guideline determination -- but that it was

11  my conclusion that if he comes to your Honor first, without

12  having been sentenced yet by Judge Chesney, he likely would be

13  in a Criminal History Category One.  I did inform him of that,

14  but he understands that he is not relying on that in entering

15  this plea before your Honor, and that you will determine both

16  the appropriate --

17        THE DEFENDANT:  No.  That's not true.

18        MR. TABACK:  -- offense level and his criminal

19  history category at sentencing.

20        THE COURT:  I don't know the answer to whether or not

21  somebody who has pled guilty, and the plea's been accepted, but

22  they haven't been sentenced yet -- why shouldn't I take that

23  into account for a criminal history?

24        MR. TABACK:  As I understand it --

25        THE COURT:  What if he had been convicted of murder?

Examination by the Court                                      19

1    I wouldn't be able to take that into account?

2            MR. TABACK:   No.  You will do what you feel

3    appropriate.   It is my understanding that that would count as

4    one criminal history point, which would put him in a

5    criminal-history category of one, if he has no additional

6    criminal history.

7            THE COURT:   I don't know what it is.

8            MR. TABACK:   I understand that.

9            THE COURT:   -- make up all kinds of things.

10           MR. TABACK:   Your Honor, I'm trying to tell you that

11   my understanding is that Mr. Brugnara is going forward with the

12   understanding that you will make the final guideline

13   determination.   It is completely up to you.

14           THE DEFENDANT:   Your Honor, in Judge Chesney's court,

15   just to let you know, this -- I mean, you can confirm with her.

16   This took four hours.   It wasn't, you know, like, out in the

17   hallway, writing on a napkin.   Four hours, from 8:00 to noon --

18   8:15 to 12:15.   And there was conferencing between

19   Harris Taback, Tom Newman, and the other U.S. Attorney.   And

20   they all agreed that it was a level one, because it's going to

21   be -- like you said, you're saying the basis of your

22   sentencing -- so that's what they all agreed upon.

23           THE COURT:   I'm not bound by that.

24           And if it turns out to be level 2 or 3 because you

25   have some convictions that -- I'm going to --

Case3:08-cr-00222-WHA   Document159   Filed03/22/11   Page55 of 76
Case: 10-10286   02/?/2011   Page: 21 of 39   ID: 7656? 5   DktEntry: 27-15

Examination by the Court                                           20

1          **THE DEFENDANT:**  No, no, no.  I'm talking about based

2    on what's in the settlement.  I mean, there is no other ---

3          **THE COURT:**  There is no settlement in front of me.

4          I'm telling you that I -- if you all think you have

5    some kind of a settlement, let's forget it and go to trial.

6          **MR. TABACK:**  We don't.

7          **MR. NEWMAN:**  Your Honor, I don't.

8          **THE COURT:**  All right.

9    Q.   So I am going to take into account the fish case,

10   probably.  So you've got to just accept that, or take back your

11   plea.

12         I'm not forcing you to plead guilty, but you're not

13   going to -- you're not going to dictate to the Court what I'm

14   going to consider under the guidelines or not.  I'm going to do

15   it right under the guidelines.  And if I have to take into

16   account the fish case, I'm going to take it into account.  If

17   it's in improper to do that, I will not take it into account;

18   but because you had some hallway four-hour discussion, no way

19   that's going to bind the Court.  Do you understand that?  If

20   you don't want to go forward --

21   A.   No.  I understand that.

22   Q.   Mr. Brugnara, I've learned my lesson with you.  You went

23   through a whole plea once before.  And I am not taking any

24   chances.  This time I'm going to make it very clear.

25   A.   Your Honor, you know, there are always two sides to

Examination by the Court                                21

1  everything.  So, you know, I mean, I think we both know that.

2  So I understand what you're saying.

3  Q.  All right.  So don't come back to me later --

4  A.  No.  I understand.

5  Q.  And say, "Oh, wait a minute.  I didn't understand what the

6  Judge was saying."

7          All right.  Now, I want to go back to where I was.  I

8  was trying to explain to you how I will arrive at the right

9  sentence.

10          We'll have a whole hearing.  I've got to do the

11  guideline calculation.  I don't know what it's going to be.

12  Once we figure out what the guideline range is, that's our

13  starting point.

14          Then I have to take into account what Congress has

15  said are the factors.  They are the need to -- to reflect the

16  seriousness of the offense.  It's important that people pay

17  their taxes.

18  A.  Of course.

19  Q.  It's a serious offense when somebody doesn't.

20          To promote respect for the law, so people out there

21  will think that they -- the system is being respected; that

22  people are paying their taxes; or, if they're not paying their

23  taxes, they're punished; to provide just punishment for the

24  offense.

25          To afford adequate deterrence to criminal conduct.

Examination by the Court                                    22

1 | That's a factor here.  That's a factor.

2 | **A.**   Oh, yeah, of course.

3 | **Q.**   People -- if people get off easy when they cheat on their

4 | taxes, well, then other people will do it.

5 | **A.**   I understand.

6 | **Q.**   If people go to prison, then there will be some

7 | deterrence.

8 | **A.**   You have to understand the volume of deals I do, too.

9 |        **MR. TABACK:**  This is not the sentencing hearing.

10 |        **THE DEFENDANT:**  I mean, do you want my interjection?

11 | **BY THE COURT**

12 | **Q.**   No.  I don't think you should be interjecting here,

13 | because I'm trying to explain to you how I'm going to decide on

14 | the sentence.

15 |        Next is to protect the public from further crimes of

16 | the defendant, to provide the defendant with needed education

17 | and vocational training, medical care, or other correctional

18 | treatment.

19 |        Then I need to take into account the kinds of

20 | sentences that are available.  That would include probation,

21 | but it also includes a prison sentence.

22 |        So anyway, that is -- there's no way I can tell you

23 | what it will be.  I have to go through the process.  And A very

24 | important part of that process is I'm going let you, at the end

25 | of the sentencing hearing, make as long a speech as you would

Examination by the Court                                      23

1   like to make.  And I will listen to all of it and take it into

2   account.  I will let the lawyers make their speeches.  I will

3   ask questions.  And then it's the duty of the Court to

4   decide -- duty of the Court to decide what is the right

5   sentence under the law.

6            And I will be as fair as I can humanly be, but what I

7   have -- what you need to know is if you don't like the

8   sentence, you can't take back your guilty plea and say, "Oh, I

9   want to go to trial after all."

10  A.   No I understand that.

11  Q.   Once you plead guilty today, you can't take it back.

12  Period.  You will be stuck with your guilty plea.  You

13  understand that?

14  A.   Yes.

15  Q.   That is part of what I want to say.

16           These are felonies.  You know these are felonies,

17  right?

18  A.   I understand.

19  Q.   You will be a convicted felon the rest of your life.  You

20  understand?  You can't have a gun.  You can't hold certain

21  jobs.  You can't have ammunition.  So it's a pretty heavy-duty

22  thing to be a convicted felon.  Do you understand that?

23           Is that fish case a felony, too?

24           MR. NEWMAN:  Yes, it is, your Honor.

25           THE DEFENDANT:  Yes.

Examination by the Court                                    24

1   **BY THE COURT**

2   Q.   You'll be a convicted felon four times over.

3        All right.   There's no such thing -- if you get

4   prison time, you're going to serve almost all of it, because

5   there's no parole in the federal system.   You got that?

6        So if you've got nine years, you would serve nine

7   years, except for a little bit that you would get for good

8   behavior.   Understand?   No parole.   Got it?

9   A.   Yeah.

10  Q.   All right.   When you come out of prison, there's something

11  called "supervised release."It's kind of like what you were on

12  in some ways prior to coming here, but it's more restrictive.

13       You've got to report to the probation officer for

14  three or four years.   They make sure you're not on drugs; that

15  you're getting a job; that you're paying your taxes; that

16  you're -- any number of conditions; that you are subject to

17  searches.   They could come in at a moment's notice and search

18  your house, all those things, until your supervised release is

19  up.

20       Do you understand that part?

21  A.   Yes.

22  Q.   Okay.

23  A.   And you know, your Honor, you have the discretion to -- on

24  this to do whatever you see fit, correct?

25  Q.   No.   I have to do what is right under the law; not what I

Examination by the Court                              25

1  see fit.  I can't just willy-nilly say, "Oh, I like

2  Luke Brugnara, so I'm going to be easy on him," nor could I say

3  that I don't like Luke Brugnara, and go hard on him.  I have to

4  do what's right under the law, but there's -- it's not easy to

5  tell whether nine years is right or zero years or five years or

6  three years.  I don't know the right answer; but you should be

7  thinking -- be prepared for at least the possibility that you

8  will spend time in prison.

9           All right.  I want to change the subject to your

10  right to go to trial.

11           You ever been in a trial?

12           MR. TABACK:  You're talking about a criminal trial?

13           THE DEFENDANT:  Not a criminal trial.

14           THE COURT:  All right.

15  Q.   But you've been in a civil trial?

16  A.   A long time ago.

17  Q.   All right.  Let me go through.  I want -- it's important

18  for you to know your rights.

19           A great thing about a trial, from your point of view,

20  is that you don't have to prove you're innocent.  That is not

21  the way it works.  The Government has got to prove you're

22  guilty.

23           And you could be guilty as sin, and it's still your

24  right to make them prove that you're guilty, because under our

25  system, the burden is always on the Government to prove guilt.

Examination by the Court                                    26

1   It's never on the defendant to prove innocence.

2            Do you understand that?

3   A.   I understand; but you know, as I indicated earlier, there

4   are so many factors also, you know, that -- that make the

5   determination of resolving this situation, you know, because

6   you can't say, "Oh, well, everything's black and white."  It's

7   not.

8            You know, you have somebody who's, you know, in a

9   room the size of your -- probably -- closet for 23 hours a

10  day -- let's see how long you can last in your closet.  Right.

11  Now try it for five days, six days.  If you have anything in

12  your head, you go insane, basically, but --

13  Q.   Mr. Brugnara, are you saying that you're being coerced

14  into pleading guilty?

15  A.   No.  I'm just trying to say that --

16  Q.   If you are, I'm not going to take a plea.  We're just

17  going to go to trial.  And, you know, your trial is soon.

18  You'll have the opportunity.  You had your trial date today in

19  the other case.  You had every right.  You weren't going to be

20  in any five-foot-square room.  You were going to be in a

21  courtroom every day, yet you chose to plead guilty.

22  A.   Yeah.  And your trial is in March.

23  Q.   Yeah.  March one.  It's about a month away.

24            You'd be here in this big courtroom every day.  And

25  the burden would be on the Government.

Examination by the Court                                    27

```
 1              Now, if you're saying --

 2              You cannot come back later and say, "Oh, I want to

 3    change my mind. I was forced to do this."

 4    A.   No.  No one's forced me.  I already indicated to you that

 5    this was my idea, but I'm just telling you I don't want -- you

 6    know, I understand everything on -- on -- on what -- you've

 7    already told me about this before.  And if you -- I remember

 8    what you said.

 9    Q.   Do you feel you're building coerced into pleading guilty?

10    A.   I don't think I'm being coerced.  I think it is what it

11    is.  And you can -- everyone knows what the facts are of my

12    case.  You know, that's the way it is.

13    Q.   All right.  Let me go back to the trial.

14              The great thing about a trial is you don't have to

15    prove you're innocent.  They've got to prove you're guilty.

16              And the person that knows the most about what you did

17    wrong is yourself; but the good thing -- another good thing

18    about a trial is that they can't call to the stand to testify

19    against yourself.  They've got to do it the hard way.  And a

20    tax case -- it's not that easy.  They've got to call other

21    witnesses to prove that you're guilty.

22              You get to be here and see all of the witnesses

23    against you; hear them; work with your lawyer, Mr. Taback, for

24    the best possible cross-examinations of all of those witnesses.

25              And if you couldn't afford Mr. Taback, I would
```

Examination by the Court                               28

1   require him to represent you as a C.J.A. lawyer, so that you

2   would not -- you would always have a lawyer.  You would --

3   whether you could afford it or not, you would always have a

4   lawyer.  Do you understand that?

5   A.   Yes.

6   Q.   All right.  When the Government rested its case, you can

7   put on a defense, but you don't have to because, again, you

8   don't have to prove anything.  They've got to prove everything;

9   but if you chose to put on a defense, you'd have the option.

10  And you could call witnesses in your defense, subject to

11  cross-examination.  We would issue subpoenas to make them come.

12  We would obligate them to tell the truth by putting them under

13  oath.

14           In addition, you could testify in your own defense,

15  subject to cross-examination.  If you chose not to do that,

16  that's fine.  We would then tell the jury you have a

17  constitutional right never to testify or not to testify.  And

18  you'd have -- they can't in any way hold it against you because

19  you exercised that right.

20           Do you understand all of that?

21  A.   I do.

22  Q.   All right.  Now, the jury would be twelve people.  The

23  Government would have to prove each and every element of the

24  offense beyond a reasonable doubt to the satisfaction of the

25  all twelve people on the jury.

Examination by the Court                                      29

1              Do you understand that?

2  A.    Yes.

3  Q.    If even one person on the jury thought the Government had

4  fallen short by even one element of proof, then that jury could

5  not convict you.

6              Do you understand that?

7  A.    Yes.

8  Q.    On the other hand, if the Government did satisfy beyond a

9  reasonable doubt all twelve members of the jury as to each and

10 every element, then you would be convicted as to those counts.

11 Do you understand that?

12 A.    Yes.

13 Q.    Then you would have the right to appeal both the verdict

14 as well as any sentence that was imposed.   Do you understand

15 that?

16 A.    Yes.

17 Q.    If you plead guilty, though, today, there will be no

18 trial.   You will be going straight to guilty.

19              Understand?

20 A.    Yes.

21 Q.    You could still appeal the sentence.   That part you can.

22 Because you don't have any plea agreement here, you could still

23 appeal the sentence, but you would not be able to appeal from

24 your plea.   That's a conviction.   Do you understand that?

25 A.    Yes.

Examination by the Court                                    30

1   Q.   So you would be giving up all of your rights to go to

2   trial.   And you'd be giving up all those great constitutional

3   rights that I just described to you.   Do you understand that?

4   A.   I understand what you said, but the way you describe it --

5   I wouldn't describe it that way.   I don't think

6   Thomas Jefferson would approve of this; but that's my opinion,

7   and everyone is entitled to their opinion.

8   Q.   Well, okay; but do you understand you'd be giving up those

9   rights?

10  A.   Oh, I know I've already given them up.   They're -- they're

11  gone.

12  Q.   Do you understand the rights that I just described --

13         You haven't given them up yet.

14         Do you understand the rights that I've described to

15  you?

16  A.   Yes.

17  Q.   Do you want to freely and voluntarily give those rights

18  up?

19  A.   Yes.

20  Q.   Is anyone making threats against you that cause you to

21  give up those rights and plead guilty?

22  A.   I don't know what you mean by that.

23  Q.   Is anyone threatening you in some way that makes you --

24  twisting your arm to get you to plead guilty?

25  A.   I'm pleading guilty on my to these charges to resolve

Examination by the Court.                                       31

1   globally this whole mess.

2   Q.   Are you doing that freely and voluntarily?

3   A.   Yes.

4   Q.   Are you giving up your rights to go to trial freely and

5   voluntarily?

6   A.   Yes.

7   Q.   All right.  Now, I want to ask you if this is true.

8        And I'm going to ask the Government to -- I'm going

9   to ask you, Mr. Newman, to tell me what your offer of proof --

10  your -- the evidence would be at trial with respect to Count

11  Number One, but I'm going to start by asking the defendant.

12       Say with respect to Count One, which is the year

13  2000 -- calendar year 2000 -- tell me what it is you did wrong.

14  A.   Well, the income reported for Market and Mission Street --

15  the sale of those office buildings was -- should have been

16  shown on the 2000 return, and they were shown on the 2002

17  return.

18  Q.   And how much was that?

19  A.   I -- I don't know.  They were shown two years later, but

20  they should have been shown in 2000.  So I did that.  You know.

21  Q.   And what was the dollar amount, roughly?

22  A.   The sales price, or the profit?

23  Q.   Well --

24  A.   The sales price on those two?  I don't know.  Twenty

25  million dollars.

1  Q.    What was the profit?

2  A.    I don't think there was any profit on them.

3        THE COURT:  All right.  Mr. Newman, what would be

4  your evidence with respect to the year 2000?

5        MR. NEWMAN:  With respect to the year 2000, the

6  defendant signed and filed a 2000 federal income tax return

7  under penalties of perjury.  That return required him to

8  disclose either the sale or the exchange of the properties

9  located at 18 -- excuse me, your Honor -- 810 to 814 Mission

10 Street, and the sale of a property located at 935 to 939 Market

11 Street; and that those properties were -- that with respect to

12 the Mission Street property, it was purchased in 2000.  And the

13 defendant sold the property in -- sorry.  It was purchased in

14 1994.  The defendant sold the property in 2000, realizing a

15 gain of $8 million.  And the Market Street property was sold in

16 2000.  And the defendant realized a gain of $6 million.

17        The last element of that offense is willfulness,

18 your Honor.  With respect to willfulness, the defendant engaged

19 independent accountants when he pursued a gaming license in

20 Las Vegas.  Those accountants were hired for two purposes:  to

21 examine his past tax returns -- those being before the year

22 2000 -- and to prepare his 2000 and 2001 federal income tax

23 returns.

24        During an exchange between January and March of

25 2001 -- in other words, the period when this return in Count

1   One would be prepared -- they asked the specific questions of

2   when the Market and Mission Street properties were sold; what

3   the purchase price was; and what the amount of the gain was.

4           The express purpose for the questions, which was

5   relayed seven times over a month-and-a-half period, was to

6   prepare the federal income tax return charged in Count One.

7           That return was eventually prepared by the defendant,

8   rather than the accountants.  And, despite disclosing that he

9   realized a gain on these properties, it was not reported on the

10  income tax return.

11          **THE COURT:**  All right.

12  Q.    Is all that true, Mr. Brugnara?

13  A.    Actually, the account was a Coopers & Lybrand offshoot.

14  When they broke up back in 2000, they actually were engaged to

15  do the precash statement required by the Gaming Commission.

16  They weren't engaged to do the tax returns.  They were only

17  engaged to do the report for the Gaming Commission.

18          And I don't know what letters he's talking about

19  here.  It's ten years ago; but I did prepare those returns.

20  And I prepared the, you know, previous ten years' returns also

21  before that.  So I prepared them.  And the information was

22  false on them, according to this indictment.

23  Q.    No.  You got to tell -- the indictment is not -- it's --

24          You're charged with filing a false income tax return

25  for 2000 -- federal return.  Do you admit that that's what you

Examination by the Court                          34

1  did?

2  A.    Yes.

3  Q.    And it was willful?

4  A.    I filed it, yes, willfully.  Yeah.

5  Q.    And you willfully omitted that sale involving

6  Market Street and Mission Street properties, true?

7  A.    It was put on the 2002 return.  It was willfully omitted

8  from the 2000 return.   And --

9  Q.    And there was an $8 million profit?

10  A.    It was shown on the 2002 return.

11  Q.    That there was an $8 million profit?

12  A.    Well, whatever the sales price was reflected.  We had a

13  lot of losses from interest payments and, you know --

14  Q.    Was there is a profit?

15  A.    Well, they weren't single-purpose assets.

16        There were several office buildings that were pooled

17  into one corporation -- the Bugnara Corporation.  So there

18  were, like, six or seven of them.

19        So, for instance, the interest and the expenses of

20  all of the buildings would offset, as I understood it, the

21  capital gains held within that corporation, but --

22        So, again, I don't have the -- Harris Taback didn't

23  bring the case book today, so I don't see the notes on that

24  here.   It was ten years ago; but I'm pleading guilty based upon

25  what this says here.

Examination by the Court                              35

1   Q.   No.

2           I want you to tell me; not "based upon what it says

3   here."  Is it correct, as charged, that you willfully filed a

4   false return for the calendar year 2000?  Is that true?

5   A.   The statements here are accurate (indicating).

6   Q.   And when you say "the statements here," you're talking

7   about Count One?

8           MR. TABACK:  Say "Yes" or "No."

9           THE DEFENDANT:  Excuse me; please.

10          He has his side, your Honor.  I have mine.  I -- I'm

11  an expert.

12  BY THE COURT

13  Q.   Mr. Brugnara, it's a simple question.  Do you admit that

14  the charge against you in Count One is true?

15  A.   True.

16  Q.   All right.  Turning to Count Two, have you had -- I want

17  you to look at that.  This one is for the year 2001.

18          It says that you reported no income related to the

19  disposition of the Post Street property, among other things.

20  Is that Count Two true?

21  A.   Again, your Honor, it's the same explanation as the first

22  one.  It was deferring the sale profit erroneously, willfully;

23  however you want to categorize it.  And I say "True" to that as

24  well.

25  Q.   All right.  Did you willfully and knowingly file a false

Examination by the Court                               36

1  return for 2001?

2  A.   As they describe it as false, that's correct.

3  Q.   Count Three --- it's for 2002.  This is dealing, among

4  other things, with the Las Vegas property.  Did you knowingly

5  and willfully file a false federal return for the year 2002, as

6  alleged in Count Three?

7  A.   As they describe it.

8  Q.   That's not a good enough answer.

9  A.   Yes.  Yes.

10          THE COURT:  All right.  Thank you.

11          Now, I'd like for the Government to give me your

12  factual basis for Counts Two and Three.

13          MR. NEWMAN:  Yes, your Honor.

14          Now, addressing the elements in turn, the first

15  element of the offense is that the defendant signed a written

16  declaration under penalties of perjury that the tax return was

17  true and correct.

18          If called upon to testify -- and, in fact, written

19  deposition testimony would show that the defendant was

20  questioned about these tax returns, and identified these

21  returns having been filed with the IRS as his for both of these

22  years and, in fact, for all three years.  And that element

23  would be met, as well as by the fact that no other returns were

24  filed in the name of the defendant for those years.

25          As noted before, the defendant engaged independent

Examination by the Court                                  37

1  accountants to prepare, among other things, preopening cash

2  statement for that year when he was applying for a gaming

3  license between 1999 and 2000.

4         With respect to Count Two, as to the tax return being

5  false, the defendant sold 490 Post Street that year.  And the

6  sale of that property or the disposition of that property does

7  not appear on that return, which would make the return false.

8         That the defendant acted willfully in filing that

9  return.  The defendant disclosed to those accountants, as part

10 of the preopening cash statement, that he did sell that

11 property, and that he sold it at a gain.

12        And those accountants were asking what the

13 disposition price was.  And, in fact, they wrote him opinion

14 letters on February 17th and February 21st of 2001, telling the

15 defendant that he needed to file or that he needed to report

16 the disposition of any property, whether it was sold or

17 exchanged, and whether or not any income was even realized.

18        And that -- that property does not appear as being

19 sold or exchanged on the 2001 federal income tax return.

20        The same is true for Count Three, in which the

21 defendant sold a subparcel at the property located 3025 South

22 Las Vegas Boulevard.  That sale took place in 2002.  The sale

23 does not appear in the defendant's 2002 federal income tax

24 return.  And, as I stated before, the accountants that he had

25 hired in 2001 told them that he needs to report the sale of any

1   business property, whether income was realized, and whether or

2   not it was a sale or an exchange.

3          And that -- that sale also does not appear on the

4   defendant's 2002 federal income tax return.

5          THE COURT:  All right.  I think I have run out of

6   questions.

7          Are there any questions that the lawyers think the

8   Court needs to ask before we conclude today?

9          MR. NEWMAN:  No, your Honor.

10         MR. TABACK:  No, your Honor.

11  BY THE COURT

12  Q.   Mr. Brugnara, are there any questions you have for the

13  Court that perhaps I could answer?

14  A.   I just want to state on that -- the last statement, that

15  was actually shown on the 2004 return, though I was doing it

16  wrong.  And I just want to make that point.

17  Q.   Well, you have acknowledged that you willfully and

18  knowingly filed false returns for those three years.  Is that

19  correct?

20  A.   As is stated here.

21  Q.   I'm not asking you how -- what the Government is alleging.

22  That's not good enough.  You need to admit.  You have already

23  done it once, but I'll let you take it back if you want.

24  A.   No.

25  Q.   I'm not going to let you plead guilty if you're just

Examination by the Court                                      39

1    saying, "Oh, the Government alleges that."

2              Let's go through it again.

3              For each of those years, did you willfully and

4    knowingly file a false return?

5    A.   The return is false, as it states here.  And I filed it

6    willfully, yes.

7    Q.   And did you know that it was false when you filed it?

8    A.   Yes, I did.

9              THE COURT:  All right.

10             MR. TABACK:  Okay.

11   BY THE COURT

12   Q.   Now, do you want more time to think about it, or do you

13   want to go forward now and plead guilty?

14   A.   No.  No.

15   Q.   You want to go forward now?

16   A.   Yeah.

17   Q.   All right.  I'm going to ask you then --

18             Does one of the lawyers want to say something?

19             MR. TABACK:  No, no.

20             THE COURT:  All right.

21   Q.   I'm going to ask you how you plead to Counts One, Two, and

22   Three in the superseding indictment that we've been discussing,

23   each of which charges you with willfully and knowingly filing

24   false federal income tax returns for the years 2000, 2001, and

25   2002.  Do you plead guilty or not guilty?

Examination by the Court                                    40

1   A.    Guilty.

2           THE COURT:  Mr. Brugnara, I'm going to do what you've

3   asked me to do.  I'm going to find that you're fully competent

4   and capable of entering an informed plea; that you are aware of

5   the nature of the charges against you, and the possible

6   consequences of pleading guilty; that your pleas of guilty are

7   supported by an independent basis in fact; that your pleas of

8   guilty are voluntary and informed.  And therefore, the Court

9   will accept your pleas of guilty, and adjudge you convicted of

10  Counts One, Two, and Three, as charged.

11          I'm now going to, as I said I would, refer you to the

12  Probation Department for preparation of the presentence report.

13          We will come back here for sentencing at what date,

14  Dawn?

15          THE CLERK:  May 4th.

16          THE COURT:  May 4th, 2:00 p.m.

17          Please cooperate in the presentence report, because

18  it's a very important document.

19          And I think we're done for today.  Am I right?

20          MR. NEWMAN:  Yes, your Honor.

21          MR. TABACK:  Yes, your Honor.  Thank you for handling

22  this plea so late in the day.  We appreciate that.

23          THE COURT:  All right.  See you soon.

24          (The proceedings were adjourned at 5:00 p.m.)

25

## CERTIFICATE OF REPORTER

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in CR. 08-0222-WHA, United States of America v. Luke Brugnara, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

/s/ Lydia Zinn, CSR 9223, RPR

Thursday, February 18, 2010

Lydia Zinn, CSR, RPR
Official Reporter - U.S. District Court
(415) 531-6587