# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

## Appeal No. 10-10286, 10-10283
_____

**UNITED STATES OF AMERICA,**

                Plaintiff/Appellee,

v.

**LUKE D. BRUGNARA,**

                Defendant/Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
District Court No. 3:08-CR-00222-WHA-1
THE HONORABLE WILLIAM H. ALSUP
District Court No. 3:08-CR-00263-MMC-1
THE HONORABLE MAXINE M. CHESNEY

_____

## APPELLANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR RELEASE PENDING APPEAL

ROBERT F. KANE
870 Market Street, Suite 1128
San Francisco, CA 94102
Telephone: (415) 982-1510
Fax:  (415) 982-1510
Email:  rkane1089@aol.com

Attorney for Appellant
LUKE D. BRUGNARA

0

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

JURISDICTION, TIMELINESS AND BAIL STATUS ....................................1

COMPLIANCE WITH RULE 9-1.2 ..................................................................2

APPELLANT IS NOT A DANGER ...................................................................3

SUBSTANTIAL ISSUES ON APPEAL .............................................................5

    A. Fish Case ..................................................................................................5

    B. Tax Case ...................................................................................................5

CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Cuyler v. Sullivan*
    446 U.S. 335 (1980) ................................................................. 6

*Ellis v. United States* (1959)
    79 S.Ct. 428 ............................................................................. 2

*Holloway v. Arkansas*
    435 U.S. 475 (1978) ................................................................. 7

*People v. Roldan*
    35 Cal.4th 646 (2005) .............................................................. 6

*Smith v. Lockhart*
    923 F.2d 1314 (8th Cir. 1999) ................................................. 6

*United States v. Castello*
    724 F.2d 813 (9th Cir. 1984) ................................................... 8

*United States v. Edward Alan Garcia*
    401 F.3d 1008 (9th Cir. 2005) ............................................... 10

*United States v. Farran*
    611 F.Supp. 602 (SD Tex. 1985) ............................................ 2

*United States v. Flores-Montano*
    424 F.3d 1044 (9th Cir. 2005) ................................................. 5

*United States v. Hurt*
    543 F.2d 162 (D.C. Cir. 1976) ................................................ 6

*United States v. Mayweather*
    623 F.3d 762 (9th Cir. 2010) ............................................... 6, 9

*United States v. Montoya*
    908 F.2d 450 (9th Cir. 1990) ................................................... 5

*United States v. Ortland*
　　109 F.3d 539 (9th Cir. 1997) ............................................................................... 5

*United States v. Ruiz*
　　257 F.3d 1030 (9th Cir. 2001) ........................................................................ 5, 6

*Wood v. Georgia*
　　450 U.S. 261 (1981) ............................................................................................ 6

**STATUTES AND RULES**　　　　　　　　　　　　　　　　　　　　　　**PAGE**

　　18 U.S.C. §3624 ................................................................................................... 1

Case 3:08-cr-00232-WHA   Document 1615   Filed 08/22/13   Page 4 of 15

## INTRODUCTION

Appellant Luke D. Brugnara ("Appellant") submits this reply memorandum to address points made in the Government's Opposition ("GO") which are not fully addressed in Appellant's Motion for Release Pending Appeal ("AM")[1]. To the extent that arguments in the Appellant's application fully address points made in the GM, appellant does not repeat those arguments herein; the lack of such repetition is not intended to be a waiver of any of those arguments.

## JURISDICTION, TIMELINESS AND BAIL STATUS

The Government admits this Court has jurisdiction over this motion for release pending appeal. (GO 2.) While the Government states that the inmate locator projects Appellant's release date to be July 2, 2012, the locator does not take into account that Appellant will have earned conduct credits at the pro rata rate of 54 days per year pursuant to 18 U.S.C. § 3624(b)(1) or that Appellant can be released from custody to a half-way house to serve the last year of his sentence pursuant to 18 U.S.C. §3624(c)(1).[2]  As a result, Warden Carvajal at Texarcana advised Appellant that he would be released from custody to a half-way house in November of 2011.[3] Consequently, Appellant will have served most, if not all, of his time before an

---

[1] The designations used below correspond to those used in the AM, rather than repeat citations to the record, Appellant will, where applicable, refer the Court to the pages of the AM wherein the underlying authority is cited.
[2] This is consistent with the representation made by Attorney Brian Getz to the court, which the Government did not dispute, that Appellant would be released in 2011. (TC Doc. # 152, p. 5.)
[3] Appellant's 15-month sentence in the Fish Case would end much earlier.

1

appellate adjudication and thus "his appeal would be of little benefit to him even if he should prevail." *Ellis v. United States* (1959) 79 S.Ct. 428, 3 L.Ed.2d 565 [Chief Justice Warren's chamber's decision overturning district and appellate court's denial of bail on appeal]. Thus, this Court can and should rule on Appellant's motion.

## COMPLIANCE WITH RULE 9-1.2

Judge Alsup clearly stated at the time of sentencing that he would not grant bail pending appeal. (AM 13.) The Government used this in opposing Appellant's request for the promised self-surrender. (TC Doc. #152, p. 3, 8-9.) In granting self-surrender, the same criteria that governed motions for release pending appeal were considered, except for the existence of a substantial appealable issue. (TC Doc. #152, p. 9.) Specifically, the court had to find by clear and convincing evidence that Appellant was not likely to flee or pose a danger to others. (TC Doc. #152, pps. 9-16; see *United States v. Farran,* 611 F.Supp. 602, 605 (S.D. Tex. 1985), aff'd without opinion, 784 F.2d 1111 (5th Cir. 1986).[4] Since Judge Alsup had already determined that Appellant should not be granted release pending appeal, the issue is ripe for appeal and this Court can determine whether a "fairly debatable" appealable issue exists.

---

[4] The parties believed Appellant would have at least 9 weeks to surrender to Lompoc Camp in California pursuant to the recommendation of the district court. (TC Doc. #152, p. 13; FC Doc. #113, pps. 38-39.) Within days of filing these appeals, Appellant was advised late on Friday afternoon, June 11, 2010 that he had to self-surrender to the FCI in La Tuna, Texas the following Monday. (AM 13.) When Appellant learned his attorney was unable to secure a short extension, Appellant and his custodian immediately drove to Texas and Appellant surrendered the morning of June 15th, not several days later as the Government's asserts. (Compare AM 13-14 with GO 9.)

2

Apart from the foregoing, the Government recognizes this Court's jurisdiction to address this issue in the first instance. (GO 11-12.) Appellant had made a detailed showing of the issues to be raised on appeal. Since Judge Alsup has already made up his mind, this Court is in a better position to address whether any "fairly debatable" issue exists.[5]

## APPELLANT IS NOT A DANGER

Appellant is a businessman, involved in real estate investments, who has been married for over 20 years with four children. He is not a danger to others.

From the outset of this action, Appellant was out of custody without incident until the weekend before Fish Case trial when the Government had him arrested outside the courtroom for allegedly threatening a witness; allegations which turned out to be unfounded. (AM 3-5, 9-10.) After the Government entered into the global resolution including Appellant's release from custody, it used the fact that Appellant had stopped at his home on the way back to his mother's home as a basis to revoke Appellant's release. (AM 6, 9.) In conjunction with this they dredged up stale allegations against Appellant, which he denied. (TC Docs. #111, pps. 5-8, #119, pps. 2-6, #120 pps. 6-9.)

---

[5] The case of *United States v. Montoya,* 908 F.2d 450 (9th Cir. 1990), cited by the Government, acknowledges that where the appealable issues are set forth in the application before this Court, this Court can evaluate whether a fairly debatable issue exists.

3

After Judge Spero detained Appellant in March of 2010, there were a series of hearings[6] that resulted in Appellant being released to self-surrender. During that time the Government's mental health expert had finally completed his report dated April 10th that found Appellant not to be a danger to others. (AM 13.) When the Government brought up these matters at sentencing, claiming Appellant to be both an economic danger and a danger to others, Judge Alsup appeared skeptical and referred the matter to Judge Spero to give Appellant another opportunity in light of the Government's promise to allow self-surrender. (Ex. B, pps. 98-100, 102-104.) Thereafter, Judge Chesney indicated she had no objection to Judge Spero releasing Appellant. (FC Doc. #113, p. 8.)

At the hearing before Judge Spero on self-surrender, the Government objected and brought up the issue of future dangerousness, including claims of misconduct in jail. (TC Doc. #152, pps. 6-15.) Judge Spero rejected these claims, finding that Appellant was not likely to flee or present a danger[7] and released Appellant to self-surrender. (TC Docs. #130, #152, pps. 15-16.) Thus, Appellant has established that he is not a danger to others.

---

[6] A history of the Government placing Appellant back in custody on March 5 is set forth by Appellant's trial counsel in TC Doc. #102.

[7] Judge Spero specifically stated: "I suppose in any case there's always a remote chance that he'll flee, but all he has to prove is by convincing – clear and convincing evidence that he's not likely to flee, and I think that he's not likely to flee or pose a danger based on the showing – if I can come up with sufficiently restrictive conditions. (TC Doc. #152, p. 16.)

4

## SUBSTANTIAL ISSUES ON APPEAL

A.  **Fish Case**

The Fish Case was resolved as part of a "global resolution" or "package deal." (FC Doc. #79, pps. 39, 47.) As such when Appellant's motion to withdraw his plea in the Tax Case was denied and he was sentenced in the Tax Case on May 24, 2010, his motion to withdraw his plea in the Fish Case became moot, because his sentence in the Fish Case would run concurrently to and be shorter than his sentence in the Tax Case. (FC Doc. #113, pps. 30-34.)

Nothing in *United States v. Ortland,* 109 F.3d 539 (9th Cir. 1997), cited by the Government, is to the contrary. (GO 15.) While generally the failure to raise an issue at trial results in a waver on appeal, under certain circumstances, an appellate Court can address that issue. *United States v. Flores-Montano,* 424 F.3d 1044, 1047 (9th Cir. 2005) Such circumstances exist here since the issue regarding the withdrawal of pleas is the same in both cases. Consequently, if this Court reverses and allows Appellant to withdraw his pleas in the Tax Case, the pleas in the Fish Case would likewise be subject to withdrawal due to the global nature of the settlement.

B.  **Tax Case**

The Government does not dispute that motions to withdraw should be "freely allowed in the interests of justice." *United States v. Ruiz,* 257 F.3d 1030, 1032 (9th

5

Cir. 2001) (*en banc*). In fact, the recent case of *United States v. Mayweather,* 623 F.3d 762 (9th Cir. 2010), relied upon by the Government, recognizes that a defendant neither has to prove that his plea is invalid or to proclaim his innocent to establish a fair and just reason for withdrawal. *Id.* at 767. "[E]ven a perfect Rule 11 colloquy does not preclude a later plea withdrawal." *Id.* at 769. Here, contrary to the Government's position, the issues raised by Appellant are "substantial."

First, with respect to the conflict of interest, contrary to the Government's position, ample evidence was produced to establish a conflict of interest. The right to effective assistance of counsel includes the right to representation that is free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271 (1981). Conflicts of interest may arise in various factual settings; they "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened … *by his own interests*." *People v. Roldan,* 35 Cal.4th 646, 673 (2005) (emphasis in original).

In a criminal case, a conflict may exist "whenever counsel is so situated that the caliber of his services may be substantially diluted." *United States v. Hurt,* 543 F.2d 162, 166 (D.C. Cir. 1976); *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir. 1999). In assessing conflicts of interest, "trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel." *Cuyler v. Sullivan,* 446 U.S. 335, 347 (1980). Thus, a criminal defense attorney "is in the best position professionally and ethically to determine when a conflict of interest exist or will

6

probably develop in the course of trial." *Holloway v. Arkansas,* 435 U.S. 475, 485 (1978).

In the case at bar, Appellant's prior attorney, Harris Taback, advised the trial courts in November 2009 of such a conflict between Appellant and "his own interests" in receiving money for his representation. (AM 2-3.) In November Appellant did not believe that Taback's representation would, in fact, be compromised. Taback's subsequent conduct, however, reflected the conflict, as Taback did not communicate with Appellant, did not properly prepare for trial, and failed to use the money he received from Appellant for investigation and experts, but instead encouraged Appellant to plead guilty in both cases. (AM 3.)

Thus, on the eve of trial in the Fish Case, Appellant's will was overborne by the effects of unexpected incarceration by the Government and an unprepared attorney. Under these conditions, Appellant believed he had no choice but to enter into a global resolution of the two cases. (AM 3-9, 20-24.) Since the pleas in the Tax Case were part of a global settlement, Taback's deficiencies in the Fish Case, which was to be tried first, clearly are relevant to Appellant's decision to enter pleas in the Tax Case. As the record reflects, by the time Appellant was pleading in the Tax Case, he had committed to a global resolution and just wanted to conclude the matter so he could be released from custody. (AM 7-9; FC Doc. #113, pps. 30-32.)

7

Second, while this may have been referred to in legal jargon as an "open plea," the parties considered this to be a global resolution. (FC Doc. #79, pps. 18, 39; TC Doc. #76, p. 4.) Although the district court judges indicated that they were not bound to follow the Government's recommendations, it was understood that the Government had made certain promises. (FC Doc. #79, p. 40; TC Doc. #76 p. 8.) As noted more fully below, the Government violated these promises.

Third, not only did Appellant maintain his innocence, his testimony at the plea hearings were far from clear admissions. In *United States v. Castello,* 724 F.2d 813, 815 (9th Cir. 1984), cited by the Government, the defendant repeatedly admitted under oath that she had committed the acts for which she was charged and that at the subsequent hearing on the motion to withdraw her plea chose not to testify. Nothing similar occurred here.

When Appellant first pled in the Tax Case in May 2009, in exchange for a recommended sentence of almost half of what was initially imposed, Appellant did not admit that he understood that he had knowingly and willfully violated the tax law despite the court's persistent questioning. (GO Ex. L, pps. 14, 27-30.) Similarly, when he entered his pleas in January 2010, his admission to a knowing and willful violation was forced. (TC Doc. #76, pps. 31-36.) Thus, these "admissions" should not undermine Appellant's claim of innocence.

8

Fourth, the Government contends Appellant's failure to write out the factual basis for the pleas on the application as required was insubstantial. (GO 19.) Contrary to the Government's position, the plea colloquies, as noted in the preceding paragraph, evidence that Appellant's admissions were far from clear. Consequently, this omission cannot be deemed insubstantial.

Fifth, the Government does not address Appellant's claim for relief under rule 11, subdivision (d)(2)(A) based on the prosecution's failure to perform as promised. (See AM 28-29.) Such breached promises included the increase in the amount of the tax loss, seeking to reincarcerate Appellant five weeks after he stopped at his home on the way back from an authorized trip, and opposing self surrender. These promises were independent of the amount of time, if any, the district courts could impose pursuant to the "open plea."

Finally, the Government, relying on *Mayweather,* claims Appellant's motion to withdraw his pleas should be denied because Appellant knew of the reasons for his motion before he entered his pleas. (GO 19.) In *Mayweather,* a defendant's pro per motion based on his counsel's failure to file a suppression motion was properly denied because the defendant acknowledged that prior to pleading guilty he was aware that such a motion could but would not be filed and he still decided to plead guilty. *Mayweather,* 623 F.3d at 767-769. In so ruling, however, the *Mayweather*

9

court recognized it was inappropriate for the district court to place any reliance on the failure of the defendant to deny guilt and assert his or her innocence. *Id.* at 769.

In the case at bar, although Appellant continued to maintain his innocence, it was not until he consulted with attorney Getz that it was determined that Appellant had meritorious grounds to withdraw his pleas. (AM 10.) More importantly, here, the district court failed to credit Appellant's maintenance of his innocence, contrary to *United States v. Edward Alan Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005). The court further compounded that error by denying the motion because it did not believe Appellant was innocent, despite the subjective intent element for these crimes. (AM 11, 25.)[8] Thus, Appellant has not only maintained his innocence, but advanced a number of other grounds, whether viewed individually, or in combination, that constitute a fair and just reason for the withdrawal of his pleas.

## CONCLUSION

Since there are substantial questions on appeal as to whether Appellant should have been allowed to withdraw his plea, this Court should order Appellant released pending appeal on appropriate conditions set by this Court or the district court.

DATED: March 1, 2011  ROBERT F. KANE

_s/_____
Counsel for Appellant
LUKE D. BRUGNARA

---

[8] Prior to making this ruling, the court had stated that it sees people and "when they're truly innocent, they win their cases. The Government can't prove somebody guilty when they're not guilty." (FC Doc. #76 pps. 6-7.)

10

CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d)(2), I certify that the foregoing Reply to Opposition to Defendant's Motion for Release Pending Appeal is proportionately spaced, has a typeface of 14 points or more and contains no more than 10 pages.

Dated: March 1, 2011                              ROBERT F. KANE


                                                                                      _/s_____
                                                                                      Counsel for Appellant
                                                                                      LUKE D. BRUGNARA