IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LUKE D. BRUGNARA,<br><br>    Defendant.<br>                                       / | No. CR 08-0222 WHA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO CORRECT CLERICAL ERROR OR TO HOLD EVIDENTIARY HEARING** |

Defendant Luke Brugnara was sentenced on May 24, 2010, having pleaded guilty to filing false tax returns for the calendar years 2000, 2001 and 2002 in violation of 26 U.S.C. 7206(1). Defendant was ordered to pay restitution in the amount of $1,904,6253.35. The amount of restitution was based on the amount of tax loss reported in the government's sentencing memorandum, which was supported by IRS agent Charles Tonna's declaration and accompanying schedules (Dkt. Nos. 110-3–15). Following entry of judgment, defendant appealed the denial of his motion to withdraw his guilty plea and the restitution order. Our court of appeals affirmed the judgment in October 2011. Approximately one year later, defendant filed the instant motion to correct a "clerical error" in the restitution order, or to hold an evidentiary hearing pursuant to Rule 36(b). Defendant also seeks, in the alternative, for the motion to be treated as a petition for writ of habeas corpus pursuant to 18 U.S.C. 2255 "to address the restitution portion of his sentence" (Dkt. No. 169). Defendant argues that he does not owe any restitution, and that the $1.9 million amount imposed was based on a clerical error, or an intentional omission on the part of the government.

    **1.**        **DEFENDANT'S PRE-SENTENCING FILINGS.**

Prior to defendant's sentencing in May 2010, counsel for defendant, Brian Getz, filed a sentencing memorandum (Dkt. No. 111), which stated that defendant:

> has had the opportunity to employ forensic accountants for the purpose of establishing whether a tax loss occurred, and if so, how much. . . . Our expert has continued to study the loss calculation of the government and has conferred with government accountants and tax experts. As a consequence, we are in agreement with . . . the tax loss as being $1,904.625.35.

(Dkt. No. 111 at 7). Defendant, acting pro se, then filed another sentencing memorandum, requesting an evidentiary hearing based on his contention that the tax loss was zero (Dkt. No. 118). Defendant stated that "substantial deductions" were omitted, "including $20 million in [reconveyance] fees . . . , property taxes paid at escrow closings, depreciation schedules on corporate owned property and other deductions." Attorney Getz subsequently filed a submission stating that no evidentiary hearing was necessary because "[t]he request for the evidentiary hearing on the tax loss cannot be substantiated by any existing witness. There are no witnesses the defense could call in support of the position advanced by Defendant in his pro se filing" (Dkt. No. 123 at 2). By order dated May 20, 2010, defendant's motion for an evidentiary hearing was denied. The order stated that defendant's motion was not supported by any sworn declaration or other evidence. Moreover, the order noted that "defendant has repeatedly attempted to game the system in this action for purposes of delay by changing attorneys and changing his plea multiple times . . . There is no credible basis upon which to now hold an evidentiary hearing regarding the amount of tax loss" (Dkt. No. 124).

At the sentencing hearing on May 24, defendant provided the Court with a letter, attaching a handwritten document titled "Tax spreadsheet: corrections to IRS tax loss calculation" (Dkt. No. 132). The document stated that the amounts in the category labeled "operating expenses" were higher than in the IRS's schedule (Dkt. No. 10-4). As compared to the IRS's schedule, defendant's chart reports an increase in "operating expenses" in the amount of $1 million more for 1998, 1999, and 2000; $2.5 million for 2001; $1.8 million for 2002; and $1 million for 2003. Defendant asserted that he had not included property taxes in his tax returns for 1999 through 2003, and that the amount for the "missed property tax deductions" was approximately five million dollars. Defendant's belated, unsworn, and unsubstantiated submission notwithstanding, defendant was sentenced and required to pay $1.9 million in restitution.

2

## 2. **DEFENDANT'S MOTION TO CORRECT A CLERICAL ERROR OR HOLD AN EVIDENTIARY HEARING.**

Defendant now argues that approximately $4.6 million dollars in property taxes paid between 1999 to 2004 were "intentionally not deducted" by the government in calculating tax loss. Defendant contends that he did not claim the property taxes on his original tax returns, so these amounts were omitted from the government's tax loss calculation.

The government argues that defendant did, in fact, report the property taxes in his tax returns. In his tax returns for the period in question, defendant created a new category he called "operating expenses" (*see* Dkt. No. 110-4). Defendant testified in 2004 that this category — which defendant himself had created — included "the building expenses, specifically *the property taxes*, the Pacific Gas & Electric bills, the janitorial bills, the garbage, the electricity [and] any repairs" (Dkt. No. 170-1) (emphasis added). Other than defendant's current statements, which contradict his earlier testimony, defendant provides no evidence in support of his assertion that $4.6 million in property taxes was never reported on his tax returns.

Defendant has failed to establish any facts that would indicate that the restitution ordered was based on a "clerical error" that omitted deductable property taxes. Defendant's own counsel, Attorney Getz, conceded that the government's calculations were correct, and objected only as to defendant's ability to pay. Defendant's restitution order has been confirmed on appeal. Our court of appeals stated that the amount ordered "was supported by an IRS agent's declaration and accompanying schedules," and was agreed to by defendant's counsel (Dkt. No. 61-1). Now, two years after his sentencing, defendant continues to challenge the restitution order. Then, as now, defendant has set forth no evidence in support, other than his own self-serving and contradictory declaration. Defendant's request to correct a clerical error or for an evidentiary hearing is hereby **DENIED**.

## 3. **SECTION 2255 DOES NOT APPLY.**

Defendant may not challenge his restitution order under Section 2255, as that provision "is applicable only to prisoners in custody claiming the right to be released." *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999). "[B]y its plain terms, § 2255 is available only to

defendants who are in custody and claiming the right to be released. It cannot be used solely to challenge a restitution order." *Ibid.*; *United States v. Thiele*, 314 F.3d 399, 401–02 (9th Cir. 2002).

### 4. DEFENDANT'S ABILITY TO PAY.

Defendant contends that he is unable to pay the restitution. Again, defendant offers no evidence or supporting facts other than his own conclusory statements. The government asserts that defendant continues to live in an eight million dollar house and has "produced artwork that was sold for more than $3 million." Probation is hereby requested to assess defendant's financial situation and his ability to pay the restitution. Probation should submit a report to the Court regarding defendant's ability to pay by **FEBRUARY 11, 2013**.

**IT IS SO ORDERED.**

Dated: December 5, 2012.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4