Luke Brugnara, Pro Per



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

    Plantiff,

                    Case No. CR 08-222-001-WHA

      v.

LUKE D. BRUGNARA,

                    LUKE BRUGNARA'S RESPONSE
                    TO PLANTIFF'S RESPONSE TO
    Defendant           COURT'S ORDER;
                    DECLARATION OF LUKE BRUGNARA


Plantiff responded to the Court's Order regarding the Application for Writ of Execution with information which Luke Brugnara ("Luke") refutes, and a proposed order, which Luke objects to.

Luke shall address each point of refutation as it appears in Plantiff's response:

Raven Norris Declaration:
1.) On page #1 Plantiff asserts that he has "personal knowledge". This knowledge should not be misconstrued as a declaration of an informed expert in the fine art industry, but rather an attorney who has no experience in the art world.
2.) On page #2 Plantiff misguides the Court to believe that Raven Norris had direct communication with the only three reputable auction houses in the world for fine art: Sotheby's, Christies and Phillips, yet the Norris Declaration states that he only visited the websites to procure information, and only spoke to one auction house to determine costs. Oddly, Norris doesn't disclose the name of the auction house in his declaration and annonymously calls it "the auction house". As clearly stated in Luke's Opposition, there are only three legitimate auction houses

for fine art of this caliber (if authentic) and that is: Sotheby's, Christies, and Phillips, all based in Manhattan (NYC). Any other auction house, or website, is a completely inappropriate venue for these pieces of artwork and would be a negligent way to process their sale.

3.) On page #2 Plantiff states that the US Marshall does not have the ability to seize or store fine art and such task would need to be farmed out to a third party. Plantiff fails to indentify the ONLY accepted fine art handler and storage facility in the San Francisco Bay Area: Ship Art International, which handles all of Sothebys, Christies and Phillips shipping and handling, and all of the major collections privately owned, and the seven museums in San Francisco and the Bay Area. This shows that the US Attorneys were negligent in their due diligence by failing to procure the name of Ship Art International since this company secures nearly 100% of this business in the San Francisco Area. This ommission calls into question the balance of the statements made in the US Attorney's declaration due to this inexplicable oversight.

4.) On Page #3 Plantiff again fails to tell the Court the name of the "auction house" and provides a storage fee that is unrealistic, of $5 a day, as the artwork would need to be insured as well for their full potential value, including transport and kept in a temperature controlled environment; again only Sothebys, Christies, Phillip and Ship Art International would provide such proper handling, storage and insurance and the cost would certainly exceed this pricing. In fact, the proper pick up, transport and storage of nine pieces of fine art, including insurance, would run into the tens of thousands of dollars, and an additional ten thousand dollars for transport to NYC. This is clearly ineptitude on the part of the US Attorneys, or deliberate misinformation provided to this Court.

5.) On Page #3 Plantiff asserts that the "auction house" would need to authenticate the paintings prior to their sale. Luke has been advised by the top auction house in the world, Sothebys International (NYC), that the only way to get these unpublished, undocumented paintings sold at auction is to send them to the appropriate expert for each specific artist and such process takes up to a year, or more, and requires substantial fees to be paid to the appropriate scholar; furthermore, the scholars are located in Europe for the most part. For instance, only Maya Picasso can document an unpublished Picasso; only Wildenstein Institute can document an uupublished Van Dongen, etc...this process is time consuming and expensive. These scholars general charge a fee for each attribution in the tens of thousands of dollars each and take their time with the process. The US Attorneys are providing this Court with incomplete information and stating it as fact. The US Attorneys are trivializing the process of the handling, transport, sale, authentication and insuring of fine art and are woefully misinformed to have their paralegal attempt to try to undertand this complex business of the proper disposition of potentially a hundred million dollars of fine

art, without any experience or undertanding of the industry.

Mark Bowie Declaration:
1.) This declaration, as well as Norris's, fails to address the obvious information requested by, and required from, this Court:  What are the costs required for the proper handling, pick-up, transport, crating, shipping, insuring, authentication and sale of undocumented fine art?:
a.)  Who will Sothebys, Christies and Phillips accept an attribution letter from (for each artist) to include each piece in their auction as an "autograph" (authentic) piece?
b.)  What is the cost and to insure, handle, crate and transport these art pieces to each respective art expert as identified by Sothebys, Christies and Phillips?
c.)  How much will each expert/scholar charge for each art piece to be authenticated, and what is the timing for this process as well as the costs to ship, insure and store at the scholar's location?
d.)  What is the costs to ship the art pieces back to the auction houses after attribution, including insurance, handling, storage and crating.
e.)  What are the costs to insure and store the pieces prior to the auction at Sothebys, Christies or Phillips, and the costs to sell the art pieces at auction with proper attribution?
f.)   If the expert/scholar rejects the attribution of that art piece that money is LOST/GONE; as unattributed art pieces are worth NOTHING. In the world of fine art this is referred to as a painting being "burned"; meaning it has been rejected by the respected scholars and is worthless...so this is a huge gamble and very expensive.

RESPONSE
1.) On page #1 Plantiff states that Luke has possession of the art pieces.  This is false. As stated in the Opposition to the Writ of Execution, Luke does not own the art pieces, nor does he own the property where they are located.
2.) On Page #2 Plantiff misleads the Court to believe that Bowie had meaningful dialogue with Sothebys, Christies and Phillips, which is false.
3.) On Page #2 and #3, Plantiff again hides the identity of the "auction house" from this Court, as it clearly is not a proper venue, or Plantiff engaged in unmeaningful dialogue.  Sothebys, Christies and Phillips will only sell a valuable art piece after the piece is authenticated and would never waive or discount any fees until such piece is proven as being authentic.  There are thousands of "auction houses" in the United States which claim to be repuatble however none of them sell paintings worth millions of dollars each except for Sothebys, Christies and Phillips.
4.) Sothebys, Christies and Phillips DO NOT accept "appraiser's opinions" on

multi-million dollar art pieces...they only accept the opinion from the scholarly expert for each artist that they all deem approved and accepted. This is for undocumented and published art pieces, which these art pieces are.

5.) On Page #4, Plantiff discusses online auction sites, which is ridiculous...these art pieces will sell for nothing ($0-a few hundred dollars) without proper authentication from the respected scholars designated by Sothebys, Christies and Phillips becuase they are undocumented and unpublished...to sell these art pieces under any other venue other than the proper venue and proper protocol is the same as throwing the paintings in the trash as they are worth nothing without the authentication and that will take significant time, energy and resources to complete the authentication process, which is an absolute requirement to achieve the value for each painting.

6.) On Page #5, Plantiff tries to expand on the Proposed Writ of the nine paintings by including other "unnamed, unidentified paintings" in the Defendant's possession and relevant documentation relating to ownership of the nine paintings.....Luke does not posses nor own the paintings, nor any other items described. In fact, the art documentation was seized in April and has not been returned, so further seizure is moot and is in further violation of the civil rights of the occupants and owner of the house and the paintings. Furthermore, two rhino heads which are documented pre-1973, and a mountain lion pre-1990, were illegally seized by Plantiff April 5th and not returned despite repeated requests. These were legally obtained by Brugnara Properties and in conformance with all Federal Laws and such items are even mentioned in the pre-sentence filings by the Plantiff in 2010. Luke requests that the Court require the Plantiff's to return these rhino heads and mountain lion to Brugnara Properties as they were illegally obtained by the Plantiff for use as their own office wall ornaments.

7.) On Page #5, Plantiff asks to be allowed "reasonable force" to seize these paintings. The Plantiff's have already engaged in outrageous conduct using 31 agents to ransack and storm the Brugnara Properties house with four minor children getting ready for school at 8AM on April 5th...such a display of force was a disgrace and indicative of the violation of civil rights that have occurred throughout this case. Judge Alsup and Judge Chesney both ordered Luke to the very safe LOMPOC CAMP with a 96 day self surrender, but Luke was sent to LA TUNA Disciplinary Medium PRISON in Texas - 80 murders in the prison the prior years- four days after the the sentencing because Luke filed an appeal. Luke inquired with his Unit Manager at La Tuna Prison why he was placed in a disciplinary Medium Prison by the BOP instead of a Camp as Ordered by the Federal Judges and the Unit Manager explained that the US Attorneys provided the Bureau of Prisons with inaccurate information about Luke to greatly increase Luke's score to put Luke into the dangerous disciplinary prison instead of a camp. Specifically, the US Attorneys provided inaccurate information to the Bureau of

Prisons that Luke Brugnara had various pending charges (false), did not self surrender (false), and had threat charges pending (false). Once these errors were corrected, the Unit Manager realized Luke's points were that of a Camp, as Judge Alsup and Chesney Ordered. Not coincidentally the US Attorneys provided this false information to Bureau of Prisons after Luke filed the Notice of Appeal. Again, further miscarriage of justice and trampling of the civil rights of the Brugnara family. Because of this gross misconduct by the US Attorneys LUKE ALMOST DIED AT LA TUNA FROM SUSTAINING TWO SKULL FRACTURES FROM ATTACKS BY FIVE NAZI SKIN HEADS BECAUSE HE WAS PLAYING CHESS WITH BLACKS AND JEWS. Further to this misconduct, the US Attorneys, not the US Marshalls/BOP, faxed Luke the 24 hour Self-Surrender Notice to La Tuna; this is clearly outside the scope of the duties of the US Attorneys and further proves the intentional nature of the misconduct by the US Attorneys.

8.) On Page #5 Plantiff requests further inventoring of property...yet they already inventoried everything on April 5th for 10 hours with 31 agents. This house IS NOT OWNED BY LUKE BRUGNARA and the Plantiffs continue to infer that this is Luke's house, yet it is not. The owner of the house DOES NOT want the Plantiff and their agents near her minor children.

9.) On Page #5, Plantiff again discusses appropriate venue and mentions "internet auction"..this is grossly negligent and deprives the owners of the paintings the full value which they are entitled to, which will require proper authentication as detailed above. The paintngs have no value without the proper expert authenticating them as determined by the proper auction houses (Sothebys, Christes, Phillips).

10.) On page #5 Plantiff again continues to request access to the Brugnara Properties house occupied by a woman and four minor children, without any regard for their dignity or civil rights. If any further inspection or evaluation needs to be done it CANNOT be done at this house. Kay Brugnara does not want anyone in her house scaring and violating her children and her any more. Kay Brugnara was accosted in a shower at 8AM on April 5th by armed agents. This is no way to live and violation of her civil rights guaranteed under the US Constitution.

## ADJUDICATION OF ARTWORK

1.) On Page #6 Plantiff requests identification of the owner of the art pieces...That has already been provided to this Court in the Opposition to the Writ of Execution..

The California and Federal Rules of Evidence clearly state that the burden of proof is upon the moving party under Fed. #502; CA Evidence Code #500, #550

(People v. Lopez, 1997, 52 CA Ap 4th. 233, p#251; "burden of proof of ownership upon moving party").  Luke has declared under penalty of perjury that he does not own the nine art pieces and they are owned by his wife Kay.  These pieces are her sole and separate property and were given as presents to her by Luke during their marriage as sole and separate property. Plantiff has provided no documentation to the contrary and hs not met the simplest standard of proof that is required to assert their claim.


Luke Brugnara requests that this Court deny the Application for Writ of Exceution because Luke does not own the artwork and the Plantiff did not follow the Order of this Court to provide a professional and proper expense statement of the true costs to authenticate, insure, pick-up, transport, crate, ship, store and sell the nine art pieces (individual detailed costs for each piece).  Plantiff provided no declarations from any art experts, nor did Plantiff even identify any art expert or auction house to assert costs, and in fact, was intentionally evasive and not transparent with this Court's request . Plantiff continues to trivialize the proper process to authenticate, transport, insure, store and sell fine art, yet infers the art pieces are authentic in the motions to this Court and the Magistrate to induce the courts to give them what they want, without any proof, and declarations to the contrary.  The Plantiff is completely autonomous and can literally conduct itself in any manner it feels, with absolutely no consequences, or checks or balances, as detailed above.  Luke has detailed the actual costs that this Court requested in its Order, and these costs can be easily verified by contacting Ship Art International (SF) and Sothebys International (NYC).  These necessary costs for the nine paintings will certainly exceed one hundred thousand dollars, quite likely much more (exclusive of sales fees) once all of the scholars/experts are paid for full authentication.  For these reasons the Writ of Execution should be denied, as detailed in this Court's Order.


Respectfully Submitted

_____

Luke Brughara

## DECLARATION OF LUKE BRUGNARA

I declare under perjury the following to be true and correct:

1.) I do not own the art pieces/paintings that are the subject of the proposed Writ of Execution

2.) I do not own the house where these items are located.

3.) I am familiar with these art pieces and I am familiar with the world of fine art.

4.) I sold all of my paintings and all of the corporate paintings over the last six years to payoff commercial debt and have significant experience with this process.

5.) These nine paintings are not authenticated, with the exception of the Naomie Kremer.

6.) The costs to have Ship Art International insure, pick up, transport to their facility near the SF Airport, crate and send to Sothbeys  the nine paintings will cost around $20,000.

7.) Sothebys (NYC) has already looked at some of these paintings in NYC and determined that they cannot be sold until they are authenticated by the respected expert for each of the artists because these paintings are not published, nor are they in the archives/raisonnes.

8.) The cost to get the Picasso authenticated will be in excess of ten thousand dollars because it must be sent to Maya Picasso in Spain for authentication and she wil charge a fee...additional costs include shipping, insurance, transport and crating, in addition to the scholarly attribution fee.

9.) The cost to get the van Dongen authenticated will be more than the Picasso, because the Wildenstein Institute (France) is the only authenticator of Van Dongen and is notorious for charging a large stipiden for their attribution.

10.) The costs to get the other paintings authenticated has not yet been investigated because of the lack of funds by the owner, but one can ascertain the costs are close for each piece-- in the tens of thousads of dollars including the insurance, shipping, crating and attribution "donation/stipiden/fee".

11.) These painting are currently worth nothing, or close to nothing ($0), because they are unattributed (with the exception of the Kremer)

12.) If these paintings were authenticated they would be worth close to $100M

13.) These painitgs may not be authenticated by the experts, and in such case they would be worth nothing ($0)

14.) In my expert opinion, based upon millions of dollars of art transactions, the costs to ship, store, insure, transport and authenticate these pieces will costs a couple of hundred thousand dollars; or more, depending on how much the

experts want for their authentication letter. This is a highly subjective and "political" process to successfully get the respective expert of each artist to give the authentication letter. There is no guarantee that any of the paintings will be authenticated and it is a risk that would need to be taken in order to obtain the $100M value. The most expensive cost will be the "donation/stipiden" to be given to the designated scholar/expert to give the documentation required by Sothebys/Christies/Phillips.

15.) There is no "short cut" to this process and to try to get unaccepted "apprasiers/experts" or "auction houses" other than Sothebys. Chrisies or Phillips to have the paintings sold and authenticated will be the same as achieving no value because no repuatble buyer will buy a piece of fine art from any other venue because these three major auction houses have the highest standard of authentication and GUARANTEE the authenticity of their paintings sold at auction...that is why they (Sothbeys, Christies, Phillips) only use the very best scholars to attribute unpublished, undocumented paintings.

16.) The Brugnara family, including a mother and four children (9 years old, 11 years old, 14 years old and 17 yrs old) have had their civil rights violated by the Plantiffs and their disregard for these children and woman in the pursuit of money.

17.) My wife Kay has told me that she doesnt care about these paintings and does not want her children terrorized any further by these proceedings. She agreed to let US Probation take possession of the paintings and I told US Probation that they could take them as long as proper procedure was used to sell them (including authentication as detailed above), but US Probation decided not to take them an incur the risk/expense.

18.) Plantiff has not met any burden of proof required under Federal and CA Rules of Evidence to seize anything. The US Attorneys continue to use their position of authority to exact a personal adjenda against Luke Brugnara; including almost killing him by providing false information to the Bureau of Prisons that had him placed in a dangerous disciplinary prison which resulted in critical injuries, as detailed above.

19.) The owner of these paintings would have no objection to the proper handling, authentication, insuring, storing, crating and selling of these paintings, however such costs are well in excess of a hundred thousand dollars, as stated above, and the owner has no funds to endeavour this process. For Plantiffs to assume this responsibility will be very expensive but potentially very lucrative, however the downside will be that they all are unauthenticated after spending a couple of hundred thousand dollars. That is why there is risk and reward in the free enterprise system.

20.) Irrespective of the ownership, if the US Govt. sold these paintings through an improper venue, without proper authentication from the accepted expert for

each of the artists, for little-to-nothing, and these paintings were deemed authentic and valuable at a later date because the subsequent owner proceeded through the proper protocol, as stated herein, to achieve value, in the millions of dollars, then the US Govt will be civilly liable for not proceeding through the proper protocol, as stated herein, to obtain proper value for each painting and the US Government will be liable for the economic loss incurred by the owner of these paintings for the negligence and intentional tort of proceeding through an improper sales process knowing what the standardized process and protocol is for a potential multi-million dollar painting.

Submitted as true and correct

Luke Brugnara