Luke Brugnara, Pro Per

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FILED

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
0 1 2013

UNITED STATES OF AMERICA,

    Plantiff,

      v.

LUKE D. BRUGNARA,

    Defendant

Case No. CR 08-222-001-WHA

NOTICE OF MOTION FOR APPOINTMENT OF PROVISIONAL COUNSEL;
REQUEST FOR JUDICIAL NOTICE; DECLARATION OF LUKE BRUGNARA,
DECLARATION OF ROBERT KANE,
REQUEST TO DISMISS TITLE 12 BASED UPON GROSS MISCONDUCT

Luke Brugnara ("Luke") requests that this Court provisionally re-appoint the
Federal Public Defenders Office to represent him based upon the facts stated
herein. Luke requests this Court take Judicial Notice of the United States
Attorney Charles Parker making a felonious, knowingly false proffer to this Court
on Friday, June 28, 2013 at 10AM, to successfully induce Federal Judge Beeler
into denying Luke his right, under the Sixth Amendment of the United States
Constitution, to representation of counsel, by inducing this Court, through blatant
lies, into terminating the appointment of the United States Public Defenders
Office as Luke's provisional counsel. Luke requests that this Court dismiss with
prejudice the Title 12 due to the Gross Misconduct of the US Attorneys as

detailed herein.

FACTS

In June 11, 2013 Federal Judge Beeler appointed the Federal Public Defenders Office  to provisionally represent Luke.  On June 18, 2013 Federal Judge Beeler ordered the United States Attorneys Office to provide to the Federal Public Defenders Office all of the materials related to their claims under the Title 12 violation.  The Federal Public Defenders Office indicated to this Court that it will take several weeks, or months, to go through the voluminous amount of documentation which was provided to them, and the documents needed to be reviewed to properly represent Luke in preparation for his affadavit to be presented to this Court.

On June 28, 2013, during the scheduled hearing in this Court to appoint the Federal Public Defenders Office to represent Luke in this matter, or to extend the time of the provisional appointment of the Federal Public Defenders Office to further review the materials provided to them by the United States Attorneys Office, to properly advise Luke in the submission of his affadavit to be submitted to this Court, United States Attorney Charles Parker opposed the appointment of the Federal Public Defenders Office to represent Luke and asked this Court to terminate the provisional appointment of their representation of Luke.  The proof which was proffered by Mr. Parker to this Court to terminate Luke's representation by counsel was "an offer from a bonafide buyer to buy the two paintings (in the control of Luke) Kees Van Dongen Femme Fatale, and Andy Warhol Mona Lisas, for thirteen million five hundred thousand dollars ($13,500,000.00US)"....Mr. Parker further proffered that "they (the US Attorney) had an appraiser appraise both paintings and he agreed on this price"...and Mr. Parker continued in his proffer to Federal Judge Beeler "..in fact, the buyer for the Van Dongen is the same buyer as the buyer for the Warhol; the same buyer is willing to buy both for $13,500,000.00"....

Luke responded at the hearing to Judge Beeler that he has seen no such offer, nor has he seen the appraisal proffered by Mr. Parker.  Mr. LeBlanc, in the Federal Public Defenders Office, said he did not see the offer to purchase the two paintings, nor the appraisal, in the voluminous documents provided to him by the United States Attorneys Office a week and a half earlier.  Luke objected to this Court, that he believed no such offer existed, yet this Court was required to terminate the provisional appointment of the United States Federal Public Defender's Office to represent Luke, as allowed under the Sixth Amendement of

the United States Constitution, because, as Judge Beeler explained to Luke, "a proffer by the US Attorney is the same as a factual declaration of proof made to the Court".

Immediately after the hearing Luke went to the office of his civil attorney, Robert (Bob) Kane at 870 Market Street to explain what transpired and seek advice. Bob Kane is a well respected attorney in San Francisco for thirty five years, a California Superior Court Judge (pro-tem), a longstanding professor at Hastings Law School, and head of the Jewish Federation of the Bay Area for three decades; Bob Kane immediately called United States Attorney Tom Newman on behalf of the legal owner of the paintings to discuss the offer to buy the two paintings and Mr. Newman explained to Mr, Kane that he was not assigned to the case and needed to speak to United States Attorney Raven Norris. Bob Kane immediately called Raven Norris and stated that he was representing the owner of the two paintings and that the ownership will accept the offer of $13,500,000.00US for the Van Dongen and Andy Warhol, as proffered to this Court just an hour earlier by Charles Parker as proof to terminate Lukes right to counsel.  Ms. Norris stated to Bob Kane that there was, in fact, NO OFFER TO PUCHASE EITHER PAINTING, NOR WAS THERE AN APPRAISAL AND THAT MR. PARKER MISREPRESENTED THE FACTS TO THIS COURT JUST AN HOUR EARLIER.  Bob Kane contacted colleague Harris Taback, who has represented Luke in this case, who confirmed his legal opinion that a serious criminal act had just occurred in this Court by Charles Parker by intentionally and deleteriously proffering to Judge Beeler as proof that an offer existed to buy the Van Dongen and Warhol for $13,500,000.00US from a bonafide buyer and that the offer for both paintings was from the "same buyer"  when Mr. Parker knew this statement was absolutely false; yet Charles Parker lied directly to the face of Judge Beeler in his successful attempt to deny Luke his right to legal representation guaranteed under the Sixth Amendment of the United States Constitution. Both counsels concurred that a serious felony had occurred by Mr. Parker and could not be interpreted any other way as per the recorded Court transcript.

Luke requests that this Court dismiss with prejudice the Title 12 violation notice based upon the Gross Misconduct which has occurred by the US Attorneys in this Court as stated herein, notwithstanding the opposition filed to this Court by Luke to the claims made by the US Attorneys in the Title 12, impeaching each of their claims.  Is is clear by the facts stated herein, and the opposition papers filed by Luke in this Court, that the Northern California US Attorneys Office is unfairly and illegally targeting Luke with their powers, including: engaging in felonious acts in this Federal Court by proffering blatant lies to Federal Judges to deny Luke his

Constitutional Rights; obtaining unlawfull search warants from Federal Judges based upon proffered lies about "valuable" paintings, "owned by Luke", when they have no knowledge of any value, nor proof of ownership, yet represent deleteriously to the Court that they have bonafide value and proof of ownership (and a "bonafide buyer for $13,500,000US for two paintings"); lying and providing false information and documentation to the Bureau of Prisons prior to Luke's designation, that Luke has "pending charges" and is "not self surrendering" in order to raise Lukes points from 8 to 22 - when both were blatant and deleterious lies in order to have Luke sent to a dangerous disciplinary medium prison in Texas, rather than the "easy" camp in Santa Barbara as ordered by Judges Alsup and Chesney (Luke received serious life threatening injuries - fractured skull from nazi skinheads before the BOP corrected the "error/intentional misinformation" provided to them by the US Attorneys) --- this was done as retaliation by the US Attorneys because Luke filed an appeal;  and harassment of the Brugnara family, a longstanding well-respected fourth generation San Franciscan family, including four minor children who have been terrorized by the US Attorneys during the course of this financial case, including 31 armed agents breaking down the Brugnara family's front gate at 7AM during a school day on April 5th 2013, and scaring and terrorizing 9 and 11 year old girls getting dressed in their underwear for school, fully armed in swat gear... a disgracefull and outrageous showing of force reserved for serious drug and terrorist cases (the warrant had a ten day window to enforce, yet they chose to enfore it on a school day when 9 and 11 year old girls are getting dressed for school in their underwear, fully dressed for armed combat with swat gear and weapons.).  Such warrant was illegally obtained by lies proffered by the US Attorney to the Federal Magistrate Judge that the paintings were authentic and worth millions, when neither statement was true; such warrant would have certainly never been issued by the Federal Magistarate Judge if the the facts about the paintings were presented truthfully by the US Attorneys...i.e., that the legal ownership of the paintings have yet to be determined and that the authenticity of the painitngs have yet determined, as the paintings may very well be be worth $0....further to this point is that Luke, prior to the search, gave the US Probation the name of the director at Sothebys who sent the paintings to New York in 2007 and Sothebys refused to sell the paintings because they don't have any proof that they are authentic--none are pubished, or in any archives of the artists, and therefore need to be authenticated by scholarly experts). Luke showed all the paintings to Jennifer James of US Probation several times and was always transparent regarding these items.  US Probation does not want to spend the required time and money to authenticate the paintings (including costs of transport, crating, storage, insurance, payments to the scholarly experts to authenticate...etc..) which would cost several tens of thousands of dollars, or perhaps hundreds of thousands of dollars; a financial risk

not worth taking if the paintings are possibly worth nothing.  I provided the name of the Sothebys director for her to call if she wanted.

Luke has been fully compliant for the entire term of his Supervised Release and has had a very good relationship with the United States Probation Office during the course of his supervision.  Lukes superived release expires in a approximately 40 days and the US Attorneys are using felonious lies proffered to Federal Judges to try to extend this date to allow them to continue to trample on Luke's Constitutional Rights and terorize his family including four innocent minor children. Only this Court can put an end to this insanity being perpetuated by this Gross Misconduct by the US Attorneys Office.

Accordingly, based upon the facts stated herein, Luke respectfully requests dismissal of the Title 12.

Respectfully Submitted:

_____

Luke Brugnara

DECLARATION OF LUKE BRUGNARA

I, Luke Brugnara, declare under penalty the following to be true and correct:

1.) Prior to the hearing of June 28, 2013 in front of Federal Judge Beeler, Federal Defender Brandon LeBlanc explained to me that he would be asking to extend the time to review the documents provided to him so he can properly advise me on the content of the affadvit to be filed with this Court regarding finances. Mr. Le Blanc asked me a few questions about a few of the documents he reviewed and I provided exact, specific answers, which satisfied him. Mr. Le Blanc explained that he saw nothing thus far in his review of the documents and my explanations, that would prevent the Federal Public Defender from continuing in their representatation of me, but wanted more time to thoroughly review all the

documents prior to filing my affadavit and would be asking the Court for the additional time for this review.

2.) During this hearing in front of Judge Beeler, US Attorney Charles Parker proffered as proof to induce Judge Beeler to terminate Luke's appointment of provisional counsel, blatant delterious lies; specifically that he had an offer from a bonafide buyer to buy the Andy Warhol painting Four Mona Lisas and Kees Van Dongen Femme Fatale, and that the buyer was the same buyer for both paintings, and the buyer is willing to pay thirteen million five hundred thousand dollars ($13,500,000.00US).

3.) Judge Beeler terminated my provisional counsel based upon Charles Parker's proffer of proof of a bonafide buyer of these two paintings for $13,500,000.00US.

4.) I protested in the hearing that I did not believe Charles Parker, but was educated by Judge Beeler that the US Attorney is an officer of the court and a proffer of proof is the same as a declaration of fact and truth. Based upon this proffer by Charles Parker, Judge Beeler had no choice but to terminate the provisional appointment of counsel.

5.) I immediately went to my civil attorney Bob Kane after the hearing and explained what occured during the hearing. Bob Kane called US Attorney Tom Newman and Mr. Newman directed Bob Kane to US Attorney Raven Norris who was handling the matter. Bob Kane called Ms. Norris and told her that he represented the ownership of the two paintings (Warhol and Van Dongen) and the owners will absolutely accept the offer of $13,500,000.00US for these two paintings, which were proffered as proof in the hearing to Judge Beeler. Ms. Norris told Bob Kane that no such offer existed, nor any appraisal, and that Charles Parker did not state the truth when he stated there was an offer and an appraisal.

6.) My Constitutional Rights were violated by Charles Parker's felonious lies to Federal Judge Beeler proffered as truth.

7.) I currently have no counsel in this matter as a result of Charles Parker's felonious lies to Federal Judge Beeler proffered as truth.

8.) My four minor children, including two girls 9 and 11, were terrorized and scared and have nightmares to this day about the disgracefull raid on their house on a school day. A warrant was issued with a ten day window to execute for two

paintings (Van Dongen and Warhol - in full view and seen many times by Jennifer James of US Probation) and back up documentation. The US Attorney feloniously and knowingly lied to the Magistrate Judge that the paintings are worth millions and authentic, and owned by Luke. The US Attorneys knew this to be false when they made these representations to the Federal Judge. These lies were proffered to the Judge to illegally obtain a warrant to terorize 9 and 11 year old girls and the Brugnara Family and to go on a ten hour "witch hunt" to try to find anything on Luke; why else would they storm the house with 31 armed agents and break down the front gate on a school day when the warrant had a ten day window??...it was intentional, deleterious Gross Misconduct and an illegal abuse of power; a gross showing of force and intimidation; just like the felonious lie to Judge Beeler that there is a $13,500,000.00US offer to buy the Warhol and Van Dongen when no such offer has ever existed.

9.) The US Attorney engaged in further gross misconduct in this case by providing to the Bureau of Prisons intentionally false documentation that Luke had "pending charges" and was "not a self surrender", both lies, in order to have the Bureau of Prisions designate Luke to a dangerous prison instead of the easy camp as ordered by Judge Alsup and Chesney. The US Attorney provided this false documentation to the Bureau of Prisons as retaliation for Luke filing a Notice of Appeal. Further misconduct included the US Attorneys using their powers to expedite the self surrender from 96 days (as ordered by Judge Alsup) to only 24 hours. This is evidenced by the Self Surrender Notice which was sent to Luke by the US Attorneys NOT the US Marshals...this, coupled with the false documentation provided to the Bureau of Prisons, showed that the US Attorneys were maliciously and intentionally having Luke placed in the dangerous medium disciplinary prison in Texas and not the safe camp in Santa Barbara, as only the US Marshall gives the Self-Surrender Notices NOT the US Attorneys. In fact the US Attorneys are not supposed to be involved at all in the designation process or the self surrender, yet they had a keen interest in hurting Luke, as evidenced by this inexplicable gross misconduct which almost killed Luke.

10.) I received heinious injuries at the dangerous prison from Nazi skinheads for playing chess with "black and jews", including two fractures to my skull from five nazi skin heads. This was a direct result of the Gross Misconduct by the US Attorneys in this case by providing false documentation to the Bureau of Prisons to elevate my designation points from 8 points to 22 points...the Bureau of Prisons discovered the false documentation immediately but it takes months to get transferred back to the camp, and sadly I was attacked by the Nazis very soon thereafter...everyone in that medium disciplinary prison was violent and had 10-40 year sentences. The US Attorneys were trying to get me killed or maimed

by providing false documentation to the Bureau of Prisons, and I almost got killed. I still have loud ringing in my ears 24/7 from the skull fractures, vision problems, and constant headaches which I never had before the fractured skull.

11.) I have complied with all of the requests and terms of my Supervised Release and it ends in approximately a month. There is no reason to extend my Supervised Release. Proof was provided by Bob Kane in the Appeal and Rule 36 Motion that no restitution should be owed because property taxes on six office buildings, paid through escrow at the title company, were not deducted from the IRS spreadsheet, and such additional deductions totalled over $6M and offset the $1.9M civil restitution; nevertheless the final ruling has been made (that ruling was that defense counsel Getz (erred when he) concurred with the $1.9M IRS spreadsheet, notwithstanding the fact that the evidence provided by Bob Kane, after sentencing, proved no taxes were ever due for those years by Luke because of these missed deductions of property taxes on the buldings.).

12.) Because the final ruling has been made on the restitution, the $1.9M is due by Luke, and Luke accepts the legal finality of the obligation due, however the restitution is ordered by Judge Alsup to be paid over 15 years, at $10,000 per month, so Luke only currently owes $100,000, not $1.9M, under the restitution schedule.

13.) I am currently working on several major commerical real estate deals which will position me to bring the restitution current, however these insane raids that disrupt my minor children mentally for months, and this contant harrassment of me by the US Attorneys makes it almost impossible to conduct business. No one is served by their gross felonious misconduct except their deviant intentions to hurt and harm me as objectively detailed herein.

13.) I have violated none of the terms of my Supervised Release. The paintings that are claimed to have tens of millions of dollars of value by the US Attorneys have been looked at by Sothebys in 2007 and 2012 and are far from being fully attributed, which is an absolute requirement for them to be properly sold. Sothebys will not sell these paintings because they are not published in any books nor in any archives, and they need to be sent to the specific scholarly expert designated by the established auction houses (Sothebys, Christies, Phillips) for each artist to be fully attributed before Sothebys, Christies or Phillips will sell them.

14.) As of today, June 30, 2013 I have no liquidity and cannot hire private counsel to represent me in this matter. I do have a limited legal backround and

am marginally adept at representing myself, but would prefer provisional counsel until such time that I can pay for private representation.

15.) Based upon the felonious gross misconduct by the US Attorneys in this case, I respectfully request that this Court dismiss the Title 12.


I declare under penalty the above to be true and correct:


_____

Luke Brugnara

## DECLARATION OF ROBERT F. KANE

I, ROBERT F. KANE, declare:

1.     I am an attorney duly licensed to practice law before this Court and in the state of California since 1976.   I represented defendant Luke Brugnara on the appeal of his convictions in the actions entitled U.S. v. Brugnara USDC NC Nos. CR-08-222-001 WHA and CR-08-038-001 MC.  I no longer represent him in these criminal matters.

2.     On Friday, June 28, 2013, I was advised by Mr. Brugnara that Mr. Brugnara had provisional appointed counsel terminated because assistant U.S. Attorney, Charles Parker, had proffered to the Court that the U.S. Attorneys office had received a bonafide offer from a single buyer of 13.5 million dollars to purchase two paintings, Andy Warhol "Mona Lisa Four Times" and Kees Van Dongen "Femme Fatal."  Mr. Brugnara asked me to contact the U.S. Attorney's office to confirm the offer and determine how such a sale could be consummated.

3.     As a result that day, I contact assistant U.S. Attorney Thomas Newman and he referred me to assistant U.S. Attorney Raven Norris, in the civil division.   Ms. Norris told me that they did not have such an offer, but wanted appraisers look at the paintings that were in the home where Mr. Brugnara lives.

I declare the foregoing to be true and correct under penalty of perjury this 1st day of July 2013 at San Francisco, California.

ROBERT F. KANE

DECLARATION OF ROBERT F. KANE