

**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

MH:TGM:kpt

*Thomas Moore, Chief*
*Cynthia L. Stier*
*Thomas Newman*
*Michael G. Pitman*

*11th Floor, Federal Building*
*450 Golden Gate Avenue, Box 36055*
*San Francisco, CA 94102*

*(415) 436-6999*
*Fax: (415) 436-7009*

May 19, 2014

Brandon LeBlanc
Federal Public Defender
19th Floor Federal Bldg – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    <u>US v. Luke Brugnara</u>
             CR-08-222-WHA

    In response to your letter dated May 17, 2014, I do not believe that Mr. Brugnara has provided a sufficient accounting of the approximately $109,000 as required by the Court. At the status conference on April 22, 2014, the Court requested that the parties meet to discuss Mr. Brugnara's disposition of the $109,000. By e-mail dated May 1, 2014, you were provided with written questions regarding Mr. Brugnara's financial situation. See Exhibit 1 hereto. We agreed to meet on April 12, 2014, to discuss these issues and met with probation officer Zhuang. At that meeting we agreed that you would provide a response to the questions prior to the hearing on May 20, 2014. Your written response was received today.

    As you are aware, my introduction to this case was the hearing before Judge Cousins to determine whether Mr. Brugnara's income qualified him for representation by a federal defender. Mr. Brugnara represented to Magistrate Cousins that his wife Kay had received a loan for at most $100,000, which his family was using to live on. Mr. Brugnara had provided a financial statement to his PO stating he had received no gifts and no loans. See Monthly Cash Flow Statement dated 1/8/13.

    After many discussions, we agreed to allow Mr. Brugnara an opportunity to provide an accurate and truthful financial statement so that he could be in "compliance with the conditions of his Supervised Release, as well as making affordable restitution payments…" Our understanding was confirmed in your e-mail dated 10/21/13.

    What transpired was the government having to subpoena records which revealed that Mr. Brugnara had in fact received $267,801 in July 2013. Mr. Brugnara was repeatedly reminded by his PO that he was required to provide information on his wife's assets since ability to pay is based on an analysis of the financial condition of the household and California is a community property state. See letter from PO dated 2/5/13. Despite this reminder, both by letter and made in court before Magistrate Cousins, Mr. Brugnara failed to inform his PO about the $267,801 payment until he was caught.

    In connection with the $1.7 million loan from Saxe, Mr. Brugnara represented that the Seacliff property is not his primary residence but an investment property. In fact, he signed a Non-Owner Occupancy Rider stating that the property is not his principal residence and he has no intention of occupying it as such. See Exhibit 2. He then paid one year of mortgage payments on the Seacliff property ($332,044) and approximately 9 months of rent for a Marin County home ($60,000), with no mention to his PO.

1

Mr. Brugnara now alleges that the remaining cash of $267,801 from the $1.7 loan, was disbursed as follows:

- $98,000 to San Francisco County for property taxes;
- $60,000 for rent on a Marin county home for his wife and children.

Mr. Brugnara contends that the remaining $109,801 has gone to family expenses and less than $1,000 remains.

It was not until April 7, 2014, that Mr. Brugnara filled out another financial statement, this time showing a line of zeros for income and monthly liabilities of $3,300. After prepaying for the Seacliff and Marin County properties, and failing to disclose that these funds had been available to pay more than $50 per month toward his $1.9 restitution, he now claims the government has not lived up to its obligation to recommend that he be released early from supervised release.

It is Mr. Brugnara's inability to provide an accurate statement of his financial situation that prompted his First Rule 12 violation and is the reason that he should be continued on supervised release for the remainder of the 12 month period.

Mr. Brugnara has not provided an accounting of the $109,000 over the past 10 months as required by the court. In fact, if one reviews the Monthly Cash Outflows submitted by Mr. Brugnara himself, they are inconsistent. For example, all of these statements have varying amounts for groceries ranging from $205 to $800; transportation costs ranging from $200 to $850; utilities from $495 to $1,000 to $1,572. Monthly Expenditures from 3 financial statements to Probation submitted as Exhibit 3.

These financial statements, along with his failure to disclose any source of monies to probation, evidence Mr. Brugnara's efforts to navigate probation with paying as little restitution as he can possibly get away with, all while funding 2 separate households.

While we cannot undo the past by forcing Mr. Brugnara to pay funds he has already spent, it is insulting to suggest that Mr. Brugnara has been exemplary in his financial disclosures to probation over the past 6 months.

The court has required Mr. Brugnara to provide an accounting of at least the $109,000 over the past 10 months. That requires him to account for $10,900 per month. None of his financial statements account for living expenses that justify that amount.

In conclusion, Mr. Brugnara continues to be employed by Brugnara Properties and receive no wages, salary or other verifiable income. Mr. Brugnara should be able to obtain some type of verifiable employment while he is on supervised release and to make meaningful restitution payments to the United States.

MELINDA HAAG
United States Attorney

/s/ Cynthia Stier
CYNTHIA STIER
Assistant United States Attorney
Tax Division

Luke Brugnara – submit information and answer questions
<u>Responses due by May 9, 2014</u>

1. With respect to the $267,801 you received in July 2013, please answer the following:

   A. Identify each disbursement, including the date, amount and payee.

   B. For any remaining funds that you have not identified in (A) above, identify every location where any of the remaining funds are being held.

2. Submit financial institution statements from September 1, 2013 through April 30, 2014 for all accounts titled in the name of Luke Brugnara, Katherine (or Kay) Brugnara, Brugnara Properties VI, Brugnara Properties VII, and any other entity owned or controlled by Luke or Katherine Brugnara that are currently open or were open during that period.

3. In response to #39 on the U.S. DOJ financial statement (received April 8, 2014), the mortgage balance is identified as "$10M +." As of July 2013, the Wells Fargo modified mortgage balance was $6,154,953 and the Saxe Mortgage second trust deed balance was $1.7 million for a total debt of $7,854,953. What represents the difference between the sum of the two outstanding known mortgage debt balances and the reported $10 million debt balance?

4. Provide documentation that Wells Fargo Bank required the prepayment of 12 months of debt service on its loan through the close of escrow in July 2013. If Saxe Mortgage/Yeva Inc. required the prepayment of 12 months of debt service on the Wells Fargo Bank mortgage, provide documentation that evidences this requirement.

5. Through what month is rent prepaid on the Corte Madera house? The copy of the rental agreement obtained by the government shows rent is paid through June 11, 2014 while the answer to #54 on the U.S. DOJ financial statement (received April 8, 2014) indicates rent is prepaid through August 2014. Does Kay Brugnara intend to extend the lease on the Corte Madera residence?

6. As prepaid debt service to Wells Fargo Bank and Saxe Mortgage/Yeva Inc. will end within the next 2-3 months, what plans does Brugnara Properties VI have to either continue making debt service payments or to pursue other options for the property?

7. Given the approaching end of the prepaid debt service, does Mr. Brugnara have plans to relocate to less expensive housing which would allow Brugnara Properties VI to lease the property?

EXHIBIT ___1___

**SAXE MORTGAGE COMPANY**
950 JOHN DALY BLVD., #200,
DALY CITY, CA 94015
TEL. (650) 755-7293 FAX (650) 755-7064

Borrower Name: BRUGNARA PROPERTIES VI, a California Corporation By LUKE D. BRUGNARA, President
Loan Number: 20130625

## NON-OWNER OCCUPANCY RIDER

Borrower is taking out a loan from Saxe Mortgage Company in the amount of $1,700,000.00 secured by a second deed of trust on the property known as 224 Seacliff Ave., San Francisco, CA 94121
Borrower attests that the subject property is not his principle residence and he has no intention of occupying it as such.

Dated 7/5/13

Borrower _____
BRUGNARA PROPERTIES VI By LUKE D. BRUGNARA, President

State of California
County of Alameda

On 7/5/2013 before me, Jennifer Senhaji, notary public, personally appeared Luke D. Brugnara
_____,
Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____ (Seal)
Signature   Jennifer Senhaji

JENNIFER SENHAJI
Commission # 1971420
Notary Public - California
Alameda County
My Comm. Expires Mar 8, 2016

EXHIBIT 2

PROB 48B
(9/00)

Page 3 of _____

| Last Name - BRUGNARA | |
|---|---|
| **Necessary Monthly Cash Outflows** | **Amount** |
| Rent or Mortgage (List monthly rental payment or mortgage payment.) MARIN $5400 / SEACLIFF 54K — PREPAID | — |
| Groceries (List the total monthly amount paid for groceries and number of people in your household.) # | 800. |
| Utilities (List the monthly amount paid for electric, heating oil/gas, water/sewer, telephone, and basic cable.) | |
| Electric                                                                                  SF — MARIN — | 265 |
| Heating Oil/Gas                                                                           SF — | 300 |
| Water/Sewer                                                                              MARIN — | 192 143 |
| Telephone                                                                                  ATT | 377 |
| Basic Cable (no premium channels)                                                          DIRECTV | 75 |
| Transportation (List monthly amount paid for gasoline, motor oil, necessary auto repairs, or the cost of public transportation.) | 850 |
| Insurance (List the monthly amount paid for auto, health, homeowner/rental, and life insurance.) | |
| Auto            GEICO           — PREPAID — | ~~XXXXX~~ |
| Health          KAISER          — PREPAID — | ~~XXXXX~~ |
| Homeowner/Rental — PREPAID — | — |
| Life            CHRISTMAS — HOLIDAY GIFTS — | — |
| Clothing (List the monthly amount actually paid for clothing.) HOUSEHOLD ITEMS (QTR) | 670 |
| Loan Payments (List all monthly amounts paid toward verified loans, other than loans to family members, which are non-allowable expenses.) | |
| Credit Card Payments (List all monthly credit card or charge card payments.) | |
| Medical (List all monthly payments for necessary medical care or treatment.) | 100 |
| Alimony/Child Support (List all alimony or child support payments made each month.) | — |
| Co-payments (List the total monthly payments made for electronic monitoring and drug and mental health treatment.) | — |
| Other (specify) (List all other necessary monthly amounts paid each month not yet reported.) | |
| Other Factors That May Affect Monthly Cash Flow (Describe) GOVT PYMT | 100 |
| **TOTAL** | 4307 |

NET MONTHLY CASH FLOW: $ <4,807.> (CASH INFLOWS LESS NECESSARY CASH OUTFLOWS)
MONTHLY CRIMINAL MONETARY PENALTY PAYMENT: $ 50.
PROSPECT OF INCREASE IN CASH INFLOWS (Give a general statement of the prospective increase of the value of any cash inflows reported.)

— NONE —     NEGATIVE CASH FLOW MONTHLY IS PAID FROM BORROWED FUNDS AS DETAILED IN PERSONAL LOANS SUBMITTED TO COURT.

Signature _____    Date 12/13/13

EXHIBIT 3

PROB 48B
(9/00)

Page 3 of [?]

*haven't made mortgage payments in over 3 years*

Last Name - BRUGNARA, LUKE

## Necessary Monthly Cash Outflows

| | Amount |
|---|---|
| **Rent or Mortgage** (List monthly rental payment or mortgage payment.) | ∅ |
| **Groceries** (List the total monthly amount paid for groceries and number of people in your household.) # 6 | 205 |
| **Utilities** (List the monthly amount paid for electric, heating oil/gas, water/sewer, telephone, and basic cable.) | |
|     Electric | 240 |
|     Heating Oil/Gas | incl. |
|     Water/Sewer | 220 |
|     Telephone | 35 |
|     Basic Cable (no premium channels) | N/A |
| **Transportation** (List monthly amount paid for gasoline, motor oil, necessary auto repairs, or the cost of public transportation.) | 200 |
| **Insurance** (List the monthly amount paid for auto, health, homeowner/rental, and life insurance.) | N/A |
|     Auto | N/A |
|     Health | N/A |
|     Homeowner/Rental | N/A |
|     Life | N/A |
| **Clothing** (List the monthly amount actually paid for clothing.) | NONE |
| **Loan Payments** (List all monthly amounts paid toward verified loans, other than loans to family members, which are non-allowable expenses.) | NONE |
| **Credit Card Payments** (List all monthly credit card or charge card payments.) | NONE |
| **Medical** (List all monthly payments for necessary medical care or treatment.) | NONE |
| **Alimony/Child Support** (List all alimony or child support payments made each month.) | NONE |
| **Co-payments** (List the total monthly payments made for electronic monitoring and drug and mental health treatment.) | NONE |
| **Other** (specify) (List all other necessary monthly amounts paid each month not yet reported.) | NONE |
| **Other Factors That May Affect Monthly Cash Flow** (Describe) | NONE |
| **TOTAL** | 900 |

**NET MONTHLY CASH FLOW:** $ ∅     (CASH INFLOWS LESS NECESSARY CASH OUTFLOWS)

**MONTHLY CRIMINAL MONETARY PENALTY PAYMENT:** $ —

*my contribut...*

**PROSPECT OF INCREASE IN CASH INFLOWS** (Give a general statement of the prospective increase of the value of any cash inflows reported.)

NONE

Signature: [signed]  Date: 1/8/2013

|  |  |  |  |  |
|--|--|--|--|--|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

** If you have submitted a financial statement to anyone or any entity within the last (3) years, please sign and date the last page to indicate you agree to have those persons or entities release a copy of the financial statements to the United States Attorney's Office.

## LIABILITIES

### 54. Fixed Monthly Expenses

| | | | |
|---|---|---|---|
| Rent/Mortgage $ | 0̸ — PREPAID THRU 8/14  *(COULD MATOUA RENT)* | Home Insurance & Taxes $ | 0̸ |
| Car Payment $ | — | Car Insurance $ | 100 |
| Gasoline $ | 200 | Water $ | 200 |
| Electricity $ | 200 | Telephone $ | 400 |
| Natural Gas $ | 100 | Other Utilities (Specify) $ | — |
| Cable TV $ | 100 | Public Transportation $ | — |
| Food $ | 800 | Other *MEDICAL INSUR* (explain on back of page) $ | 1200 |
| Subtotal $ | 1400 | Subtotal $ | 1900 |
| | Grand Total | $ 3300 | |

### 55. List Your Credit Card Debts, Bank Loans, Other Installment Payments
(If additional space needed, use back of page.)

| Type of Account or Card | Name and Address of Financial Institution | Balance Due | Minimum Monthly Due | Monthly Payments |
|---|---|---|---|---|
| | N/A | | | |
| | | NONE | | |
| | | | | |
| | | | | |

### 56. List Your Other Debts Not Included Elsewhere in This Financial Statement
(If additional space needed, use back of page.)

| Owed to | Amount Owed | Monthly Payments |
|---|---|---|